# EXHIBIT "A"



United **Sovereign** Americans

# Texas 2022 General Election Validity Scorecard

## ★ 1. Were the voter rolls accurate, as required by the National Voter Registration Act of 1993?

| Ineligible or Uncertain Registration Type | Number of Instances* |
|---|---|
| Illegal duplicates | 166,983 |
| Invalid address | 105,922 |
| Age discrepant | 7,714 |
| Names embedded with numerals and symbols | 494 |
| Voters listed in the county voter roll but not in the state voter roll ** | 10,350 |
| Edit without an Effective Date of Registration change | 755,982 |
| Related edit with an Effective Date of Registration change | 277,598 |
| Cancelled and then activated | 26,815 |
| Transposed names same address | 344 |
| **APPARENT REGISTRATION VIOLATIONS:** | **1,352,202** |

## ★ 2. Were the votes counted from eligible voters, as required by the US Constitution?

| Ineligible or Uncertain Registration Type that Voted in 2022 GE | Votes cast in 2022 GE |
|---|---|
| Illegal duplicates | 37,167 |
| Invalid address | 29,847 |
| Age discrepant | 620 |
| Names embedded with numerals and symbols who voted | 179 |
| Transposed names same address | 122 |
| Unique Voter registrations that cast multiple votes according to the state voter roll | 142 |
| Unique Voter registrations that cast multiple votes according to the county voter roll | 1,715 |
| Voters listed in the county voter roll with state voter ID of zero | 7 |
| Voters listed in the state voter roll with an unidentified voting method | 13,229 |
| Voters recorded in county voter roll, missing from state voter roll, or vice versa | 113,386 |
| Voting method discrepancy between county and state voter rolls | 244 |
| **APPARENT VOTING VIOLATIONS:** | **196,658** |

## ★ 3. Was the number of votes counted equal to the number of voters who voted?

| Official Source | Reported Total |
|---|---|
| Official **state-certified** result from state election results webpage | **Votes counted: 8,102,908** |
| Official **state** voter roll vote count (September 2023)** | **Voters who voted: 8,120,067** |
| **TOTAL DIFFERENCE:** | **LESS votes counted than voters who voted:  17,159** |
| Official Source | |
| Official **state-certified** result from state election results webpage | **Votes counted: 8,102,908** |
| Official **county** voter roll vote count (September 2023)*** | **Voters who voted: 8,084,602** |
| **TOTAL DIFFERENCE:** | **MORE votes counted than voters who voted:  18,306** |

## ★ 4. Was the number of ballots in error valid according to the Help America Vote Act of 2002?

| | |
|---|---|
| Ballots with apparent voting violations in the 2022 GE according to TX raw data | 196,658 |
| Allowable machine error rate is 1/125,000 ballots | 65 |
| **Provable accuracy fails to meet any protective legal standard** | **Unresolved vote errors: 196,593** |

*"Congress seeks. . . .to guard the election of members of Congress against any possible unfairness by compelling, under its pains and penalties, everyone concerned in holding the election to a strict and scrupulous observance of every duty devolved upon him while so engaged. . . . The evil intent consists in disobedience to the law." —In re Coy, 127 U.S. 731 (1888)*

*\* Voter registration data is an official copy of the registration database from 09/26/2023 and was sourced directly from the Texas Secretary of State (SOS).*
*\*\* The calculation for voters who voted included the 13,229 unidentified voting method votes.*
*\*\*\* County vs State Voter Rolls: The "state voter roll" and "county voter roll" are both official lists of voters who voted in the November 2022 General Election. Both were sourced directly from the SOS. The state roll comes from the official state database, while the county roll is originally uploaded by each county and then reported on the SOS website. The county voter lists are aggregated together from each county and the result is a secondary view of who voted in this election.*

Unite4Freedom.com   ★   info@Unite4Freedom.com

© United Sovereign Americans, Inc.

07242024

# EXHIBIT "B"




Texas Chapter United Sovereign Americans (USA)
Todd Lindstrom
Daniel and Debra Boehm,
Susan Miller
14055 Red Wood Cir N
McKinney, TX 75071

February 11, 2024

Texas Election Division
Secretary of State
James E. Rudder Bldg.
1019 Brazos St.
Austin, TX 78701

To whom it may concern:

I and the others listed on the enclosed complaint are citizen volunteers with United Sovereign Americans. We have reviewed election data for the 2022 General election that was purchased from the State of Texas, and we are alarmed with what we found. We are limited by the amount of information that we as citizens have been allowed to access. We are not accusing any particular person or entity of doing anything illegal. However, it appears that there is an abundance of illegal, invalid and questionable voter registration records in the Texas voting database, and therefore in county voting records as well.

As can be seen from the attached report, it appears that there are serious breaches of statutory standards on both the Federal and state level required by the law.  In some cases, hundreds of thousands of potential voter irregularity/registration cases would either need to be explained or classified as illegal votes, obviously affecting:

      1) compliance with Federal and state vote procedure requirements,

      2) reflecting election results certified as legal but which in fact were illegal and

      3) reflecting possible election fraud in Texas since the 2022 elections and possibly dates prior to
        2022.

Let us stress that this is not a vague complaint of election fraud conspiracy. It is not an attempt to overturn any particular election result.  It is intended, however, to point out what may be ongoing illegal procedures and a failure to follow the Texas Election Code. If this is the case it must be identified and remedied.

If you choose to dismiss the facts forming the basis of this inquiry, further action will be pursued. We would hope, however, that the factual anomalies are investigated and satisfactorily explained.

While this is the first formal complaint lodged from the Texas Chapter of the United Sovereign Americans Organization, this is not the first complaint that has been registered by Texas citizens. In fact, many times the petitions of the people of Texas have been met with indifference and disrespect, not just by this Office of the Secretary of State but by county election officials and other governmental leaders. PIR requests for information have been ignored even as we were seeking clarifications concerning the details of this report.

With the data you will find in this report, there are hundreds of thousands of potential violations of state and Federal laws, rules and procedures. While we do not know who is responsible for these potential violations, we know that there are county level commissioners who are certifying elections for which there is no basis that the county or the state can say with certainty what the "will of the people" was in the election. You will see data which, when drilled down to the county level, puts close races at the county level at levels of magnitude beyond the margin of victory.

Our concern, obviously, is that the resulting election certifications apparently were made despite objective, factual data raising concerns that the State may have compromised systems, and that the certifications may represent serious disregard of the voters' civil and constitutional rights within the state.

We have attached our summary report, and a report of all of the seemingly illegal or suspect registrations in the Texas voter rolls. This analysis used public data provided by State of Texas websites, and a formal paid PIR which purchased the election data from your office.

We would be happy to meet with you and answer any questions you may have and explain in further detail how we arrived at our conclusions.

We ask for a response of intentions from the Elections Division of the Texas Secretary of State within ten business days of receipt of this communication.

Sincerely,

| Todd Lindstrom | Susan Miller | Debra Boehm | Daniel Boehm |

# EXHIBIT "C"

# INVESTIGATIVE REPORT

## EVALUATING REGISTER OF BALLOTS AND TABULATION DATA

### November 2020 - November 2023



---

*This report is predicated on the understanding that any information provided is derivative of public information requested from the Collin County Elections office under the Texas Public Information Act. The government–provided information included, or any inferences drawn from the lack of information provided or available may also be replicated by the general public to draw their own conclusions and findings.*

# TABLE OF CONTENTS

Purpose of Report .................................................................................................... 3

Background and Summary ......................................................................................... 4

Factual Findings ........................................................................................................ 5

Problems and Issues Presented With Certification of Elections ............................... 10

    November 2020 General Election ........................................................................ 10

    May 2021 Joint Election ..................................................................................... 10

    June 2021 Joint Election ..................................................................................... 11

    November 2021 General Election ........................................................................ 11

    January 2022 City of Mckinney Special Election ................................................. 12

    January 2022 City of Frisco Special Election ...................................................... 12

    March 2022 City of Frisco Special Runoff Election ............................................. 13

    May 2022 Joint Election ..................................................................................... 13

    November 2022 General Election ........................................................................ 14

    May 2023 Joint Election ..................................................................................... 14

    November 2023 General Election ........................................................................ 15

Opinions and Solutions ............................................................................................ 16

    A.    Compliance With Receipt, Certification, and Retention of Election Records. ............. 16

    B.    Compliance With the Texas Public Information Act ...................................... 16

    C.    Return to Elections Officials Elected by the Voters ...................................... 17

    D.    Utilize the County Election Commission for Appropriate Oversight ............... 18

    E.    Conduct an Investigation Into the Facts Presented ...................................... 19

Conclusion ............................................................................................................... 20

Relevant Legal Authorities Glossary of Relevant Election Terms ............................ 21

Relevant Legal Authorities ....................................................................................... 25

# PURPOSE OF REPORT

Citizens Defending Freedom-USA ("CDF") is a nonpartisan grassroots organization committed to resolving breaches of freedom and liberty through local awareness, local light, and local action. One of the core missions of CDF is devoted to supporting the rule of law and the right of every lawful voter to participate in free, fair, and transparent elections.

CDF defends fair, reasonable, common-sense election measures that give confidence to those casting their ballots that the reliability of the voting process is protected.  Confidence in election outcomes is due to the accumulation of laws, rules, and practices aimed at guarding the fairness and accuracy of elections, which in turn makes them more trustworthy in the process.

Through public engagement, advocacy, and education, CDF seeks to ensure that elections are carried out with duly enacted election law and shed light on ambiguity for our citizens to maintain trust and confidence in our election outcomes. CDF thus has a significant interest in this investigative report as an important matter not only for all citizens in Collin County, but also everyone throughout the State of Texas, regardless of party affiliation.

The purpose of the report is to inform and educate key stakeholders and local/state government officials about the findings of the investigation and shed light on what appear to be deficiencies, errors, and other activities that cause the general public to lose faith in the accuracy of election outcomes. Based on the findings of this report, further investigation into the matter should be initiated, and policies and procedures should be reviewed and corrected to resolve any deficiencies, and restore trust, faith, and transparency to the elections process.

This report is the opinion of the drafter and created with all publicly available information for the purposes of highlighting discrepancies in Collin County Elections. The facts, opinions, and recommendations based on the available county provided data herein is not represented as complete, and it should not be relied upon due to questions on the accuracy and completeness of the data provided due to persistent missing and inaccurate data associated with responses to Public Information Act requests. The report is not meant to besmirch, embarrass, or provide factually inaccurate information.  Due diligence and good faith were taken in the development of this investigation. As a result, best efforts were taken to provide comprehensive sources to establish and support all assertions made without the benefit of information missing or withheld by the Collin County elections office.

With this report, CDF Collin County seeks to identify problem areas with the administration of elections, suggest areas for improved training, enable elected officials to provide appropriate oversight with any needed investigations, identify policies and procedures for correction, and to increase accountability of those that have not met the standards expected of the general public.

◼ CITIZENS DEFENDING FREEDOM

## BACKGROUND AND SUMMARY

In recent years, Texas has implemented various measures to bolster election transparency and accuracy. Spurred by increases in reported cases of election fraud and election validity concerns, legislative activity and public awareness on election oversight has increased to ensure that due diligence and transparency are the foundation for a properly administered election.  Public trust in elections comes down to whether voter registration systems accurately record those eligible to vote, voter information systems accurately assign voters to voting districts, voting machines accurately record votes, election-night reporting systems accurately aggregate and communicate election results to officials and the public, and post-election audit and canvassing procedures proceed impartially and in accordance with the law. Of utmost importance to the elections process is that records are properly maintained and protected as public information from deterioration, alteration, mutilation, loss, or unlawful removal.  When mistakes are made, transparency and accountability is paramount to properly address citizen concerns.

An elected leader's response to issues surrounding the administration of an election is paramount to properly address real and perceived matters of fraudulent election activity or lack of government accountability. Elected leaders must act with diligence and transparency to correct a breakdown of established election processes and procedures. When valid concerns are raised, it is the duty and responsibility of elected officials with oversight to review, investigate, and communicate with the public in a transparent manner to ensure accountability and due diligence.  When transparency and accountability of the administration of elections is conducted accordingly, voter participation and overall public trust in elections will only increase with all citizens, no matter what political affiliation they may identify with.

As part of the process to review elections processes and procedures, CDF Collin County conducted a two-year investigation into the Collin County Register of Ballots and Tabulation Results for election day records from November 2020 until November 2023. The investigation gathered publicly available documents, reviewed statutory and regulatory authorities, and Collin County policy and procedures, among others.   This report is the product of the gathered information and information that was requested, should have been available, but was not provided.

First, the CDF investigation discovered that during the course of multiple elections, missing Register of Ballots forms connected to various polling locations were not properly completed, gathered, or retained, and status of unused ballots are unknown to this day.

Second, as a matter of record, the Collin County Elections Administrator certified and reconciled the Register of Ballots.  However, based on the available information provided by election officials, the facts provide that certification of elections conducted in 2020 and thereafter were conducted with unaccounted for and incomplete Register of Ballots forms at the time of certification.  For example, polling locations with ballot discrepancies should include, on their Register of Ballots, an explanation of why there is a discrepancy between the number of ballots received and the number used and returned.  Additionally, the Texas Election Code ("Election Code or TEC") §127.156 deals with the procedure for conducting a recount and when a discrepancy of more than three ballots exists, that the official tabulation of those ballots shall be conducted at a central counting station.  Based on our investigation these required recounts appear not to have been accomplished. As a result, it appears that elections were certified without complete election records, and that records are not being maintained in accordance with the law.

# FACTUAL FINDINGS

1. Texas conducts elections in its 254 counties and more than 1,200 cities pursuant to the Texas Election Code. By default, the Election Code provides that the county tax assessor-collector and county clerk manage voter registration and election administration. The Election Code alternatively permits counties to appoint a "county elections administrator" and transfer all voter registration and election administration duties to the appointed individual.

2. For Collin County, the Office of Elections Administrator was created by the Collin County Commissioners Court on August 18, 1980, as authorized under Election Code §31.031. Without creation of this position, Collin County would follow the default rule in Texas to run elections through the elected county clerk and tax assessor-collector.

3. The current Collin County Elections Administrator is Mr. Bruce Sherbet.[1]

4. The Elections Administrator fulfills the duties and responsibilities traditionally assigned to the county clerk, including preparing a proposed schedule of polling places and times for approval by the county commissioners court, hiring and training poll workers, allocating voting equipment to ensure adequate coverage for all polling places and the canvassing of election results, among others.[2]

5. The Elections Administrator duties also include overseeing the conduct of elections, providing information on early voting to individual voters, and distributing official vote-by-mail applications to eligible voters.[3]

6. A majority vote of the county election commission—a body that comprises the county judge, the county clerk, the county tax assessor-collector, and the county chairs of qualifying political parties—appoints a county elections administrator.[4]

7. Unlike a county clerk, who must answer the voters for poor performance, an Elections Administrator is not directly accountable to the voters through an election process. As a result, and after appointment by the County Election Commission, an Elections Administrator can be removed in only two ways. First, they may be removed "for good and sufficient cause on the four-fifths vote of the county election commission and approval of that action by a majority vote of the commissioners court."[5] Second, in a county with a population of more than 4 million, they may be removed by the Secretary of State, but only upon a finding of a "recurring pattern of problems with election administration or voter registration" that

---

[1] See Collin County | Elections Home (collincountytx.gov).

[2] Texas Election Code §31.043.

[3] Texas Election Code §31.043–31.045, 83.002, 85.007.

[4] Texas Election Code §31.032.

[5] Texas Election Code §31.037(a).

CITIZENS DEFENDING FREEDOM

has "not [been] rectified or continues to impede the free exercise of a citizen's voting rights"—and even then only at "the conclusion of administrative oversight of the county elections administrator's office."[6]

8.  The general custodian of election records is the county clerk or the elections administrator of each county wholly or partly situated in the territory covered by the election for an election ordered by the governor or by a county authority or for a primary election.[7]

9.  Under Texas law, election records must be preserved for at least 22 months after election day.[8]

10. Election records include election returns, voted ballots, and other records of an election that are assembled and distributed under Chapter 66 of the Texas Election Code.[9]

11. According to the Texas Election Code, after an election, the presiding judge at each polling place is responsible for assembling and distributing the precinct election records. The judge places these records into four envelopes and two ballot boxes.[10]

12. Envelope No. 1, addressed to the presiding officer of the local canvassing authority, contains the original election returns and a tally list. Envelope No. 2, addressed to the general custodian of election records, holds a copy of the precinct returns, tally list, original poll list, signature roster, precinct early voting list, affidavits, and certificates of appointment of watchers.[11]

13. Envelope No. 3, kept by the presiding judge, has a copy of the precinct returns, poll list, and ballot register. Envelope No. 4, delivered to the voter registrar, includes the precinct list of registered voters, registration correction list, statements of residence, and affidavits related to voter identification.[12] In Collin County, the Elections Administrator is also the voter registrar.

14. Ballot Box No. 3 holds the voted ballots, a copy of precinct returns, tally list, and poll list. Ballot Box No. 4 contains the original ballot register, register of spoiled ballots, spoiled ballots, mail ballots returned at the polling place, defectively printed ballots, an envelope containing cancellation requests and cancelled ballots, and other unused ballots.[13]

---

[6] Id. at Texas Election Code §31.037(b).

[7] Texas Election Code §66.001, 31.043.

[8] Texas Election Code §66.058.

[9] Id. at Texas Election Code §66.002.

[10] Texas Election Code §66.003, 66.025, 66.026.

[11] Id. at Texas Election Code §66.021.

[12] Id. at Texas Election Code §66.021–§66.026.

[13] Id. at Texas Election Code §66.021–§66.026.

CITIZENS DEFENDING FREEDOM

15. The presiding judge personally delivers these envelopes and ballot boxes to the appropriate authorities. The voted ballots must be preserved securely for at least 22 months after the election. The presiding judge also delivers the key to Ballot Box No. 3 to a designated custodian, such as the sheriff, chief of police, or constable, depending on the type of election.[14]

16. According to the United States Election Assistance Commission, an audit trail is information recorded during election activities to reconstruct steps followed or to later verify actions taken with respect to election procedures and voting systems.[15]

17. The audit trail election officials create to track supplies, voting equipment, and ballots is central to the integrity of the election. A properly completed audit trail provides strong evidence of a trustworthy election.[16]

18. During the canvass, election officials review compliance with chain of custody procedures and assess the completeness and accuracy of documentation completed by staff and poll workers during in-person and mail voting. This includes reviewing: (1) Poll worker and early voting staff reconciliation of voters checked in and ballots cast; (2) Mail ballot applications received, rejected, and accepted, (3) Late arriving mail ballots and provisional ballots received, accepted, and rejected; (4) Chain of custody documentation for ballots, voting equipment, and supplies.[17]

19. The canvass provides an opportunity for election officials to scrutinize the audit trail - including chain of custody documentation and reconciliation paperwork - to verify proper procedures were followed and all materials are accounted for. A thorough audit trail supports the accuracy and integrity of the final certified election results.[18]

20. On August 23, 2022, a Public Information Request (PIR) for the 2020 General Ballot Images was submitted to Collin County within the 22-month statutory preservation period.[19]

21. On September 6, 2022, the PIR was supplemented to request the additional records of the Incident Manager Reports, All Standard Affidavit Forms, and All Register of Ballot Forms for all elections from November 2020 through the end of 2022.[20]

---

[14]Id. at Texas Election Code §66.051.

[15]United States Election Assistance Commission Website. (2022). Guide to the Canvass.

[16]Id.

[17]Id.

[18]Id.

[19]Exhibit 1:  Email Correspondence re 2020 General Ballot Images (08/23/2022-09/1/2022).

[20]Exhibit 2:  Email Correspondence to request additional records re 2020 General (09/06/2022).

CITIZENS DEFENDING FREEDOM

22. Precinct election records include precinct election returns, voted ballots, and other records of an election that are assembled and distributed under Chapter 66 of the Texas Election Code.[21]

23. Under Texas law, precinct election records must be preserved for at least 22 months after election day.[22] Electronic records created as part of an election must also be preserved for at least 22 months after election day.[23]

24. On September 19, 2022, a request for clarification was received by the Collin County Elections office on the PIRs submitted for the election records requested.[24]

25. On September 26, 2022, a clarification was provided in the response with examples provided from Williamson County.[25]

26. On October 6, 2022, a County-appointed Attorney requested an opinion from the Attorney General's office on whether the precinct election records met an exception for public release.[26]

27. On December 21, 2022, the Attorney General issued Opinion OR2022-39841, which required Collin County to release the precinct election records.[27]

28. On December 22, 2022, following the statutory deadline of 45 business days after the request for opinion had been sent the County-appointed Attorney was contacted for a status on releasing the records.[28]

29. On December 22, 2022, the County-appointed Attorney replied via email stating he had not received a response, and that the AG's office was running behind when in fact, the Attorney General had already issued Opinion OR2022-39841.[29]

30. On January 6, 2023, a notification of the AG's opinion from the county-appointed Attorney was received.[30]

---

[21] Id. at Texas Election Code §66.002.

[22] Texas Election Code §66.058.

[23] Texas Election Code §66.058(g).

[24] Exhibit 3: Request for Clarification (09/19/2022).

[25] Exhibit 4: Clarification with Examples (09/26/2022).

[26] Exhibit 5: Request for AG Opinion (10/06/2022).

[27] Exhibit 6: AG Opinion OR 2022_39841 (12/21/2022).

[28] Exhibit 7: Request for Status on Releasing Records (12/22/2022).

[29] Exhibit 8: Response from County Attorney Alleging No Receipt of AG Opinion (12/22/2022).

[30] Exhibit 9: Notification of AG Opinion from County Attorney Received (01/06/2023).

CITIZENS DEFENDING FREEDOM

31. On January 10, 2023, an email was sent to the Elections office to arraign the retrieval of the requested election records.[31]

32. On January 12, 2023, the Elections Office responded that they were in the process of digitizing the documents and would need time to complete that process.[32]

33. On March 8, 2023, Register of Ballots forms were received approximately six months from when the initial PIR was submitted for the precinct election records.[33]

34. To account for all ballots received for each polling location on election day, the presiding judge shall prepare a ballot register.  The ballot register must state the total number of ballots received, the number of defectively printed ballots received, the number of ballots provided to voters as indicated by the poll list, number of spoiled ballots, and the number of unused ballots.[34]

35. The 2020 General Election records received by Collin County are organized and tabulated in an excel spreadsheet to reconcile used and unused ballots against the total ballots issued for each polling place. Only (31) Register of Ballots forms were received for the 2020 General Election, leaving 71 missing.[35]

36. On July 12, 2023, a request was made to the Collin County Elections Office for the missing election records required for retention to account for all polling locations.[36]

37. On July 13, 2023, Collin County responded they did not have the missing documents and were not certain if they were missing during the SOS Forensic Audit or if the polling location never filled them out.[37]

38. The Collin County Election Administrator is the custodian of information, data and records of Collin County elections, including without limitation, as a Department Head, the agent for the officer of public information related to elections, pursuant to Title 5 Chapter 552 of the Texas Government Code.

39. Pursuant to § 552.203(2) of the Code, Collin County Election Administrator is required to "carefully protect public information from deterioration, alteration, mutilation, loss, or unlawful removal." Further, willful destruction or alteration of public information may constitute a misdemeanor offence pursuant to § 552.351 of the Code.

---

[31]Exhibit 10: Arranging to Retrieve Public Records Requested (01/10/2023).

[32]Exhibit 11: Notification from Elections Office of Digitizing Documents (01/12/2023).

[33]Exhibit 12: Records received 6 months from initial PIR (03/08/2023).

[34]Texas Election Code §66.026.

[35]Exhibit 13: Election Day Ballot Register Reconciliation (11/03/2020), based upon all information received under the TPIA.

[36]Exhibit 14: Request to Elections Office for Missing Records (07/12/2023).

[37]Exhibit 15: Elections Office Responds with No Additional Records (07/13/2023).

CITIZENS DEFENDING FREEDOM

40. Each election from November 2020 through November 2023 was compiled and analyzed. The data resulted in an index chart.  Based on this information, 78,341 ballots are unaccounted for (20.06%) and only 42.37% of the polling locations reconciled during that timeframe.[38] A legend which explains how to read the spreadsheet was created.[39]

## PROBLEMS AND ISSUES PRESENTED WITH CERTIFICATION OF ELECTIONS

**Each Election from November 2020 through November 2023[40] has an accompanying spreadsheet and the certifying documents.  A different legend was created to interpret this spreadsheet[41].**

### November 2020 General Election Canvass Certification and Acceptance of Precinct Returns[42]

- On November 3, 2020, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2020 election.  The document **was incorrectly dated November 10, 2018.**

- The canvassing certification document states of November 3, 2020, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[43]

- In accordance with Texas Local Government Code section 67.002, the Collin County Commissioners Court accepted the canvass results of the November 3, 2020 elections on Wednesday, November 11, 2020, under court order 2020-1136-11-11.[44]

- The election records were certified for the Collin County Commissioners Court, but based on the information received, those records were incomplete, or not calculated.

### May 2021 Joint Election Canvass Certification and Acceptance of Precinct Returns[45]

- On May 7, 2021, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2021 Joint election.

---

[38] Exhibit 16: Index-Available Election Data & Ballot Reconciliation (06/07/2024), based upon all information received under the TPIA.

[39] Exhibit 17: Register of Ballots Reconciliation Summary Legend.

[40] With the exceptions of the 2022 Primary and Primary Runoff Elections.

[41] Exhibit 18: Election Day Ballot Reconciliation Report Legend.

[42] Exhibit 13: Election Day Ballot Register Reconciliation (11/03/2020), based upon all information received under the TPIA.

[43] Exhibit 19: Canvass Certification 2020 General (11/03/2020).

[44] Exhibit 20: Court Order Canvass (11/11/2020).

[45] Exhibit 21: Election Day Ballot Register Reconciliation (05/01/2021), based upon all information received under the TPIA.

CITIZENS DEFENDING FREEDOM

- The canvassing certification document states of May 1, 2021, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[46]

- In accordance with Texas Local Government Code section 67.002, the City of Frisco accepted the canvass results of the May 1, 2021 elections on Monday, May 10, 2021, under city ordinance 2021-05-34.[47]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## June 2021 Joint Election Canvass Certification and Acceptance of Precinct Returns[48]

- On June 11, 2021, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2021 election.

- The canvassing certification document states of June 5, 2021, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[49]

- In accordance with Texas Local Government Code section 67.002, the City of Frisco accepted the canvass results of the June 5, 2021 elections on Monday, June 14, 2021, under city ordinance 2021-06-39.[50]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## November 2021 General Election Canvass Certification and Acceptance of Precinct Returns[51]

- On November 15, 2021, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2021 election.

---

[46]Exhibit 22: Canvassing Document (05/2021).

[47]Exhibit 23: City of Frisco Accepted the Canvass Results (05/10/2021).

[48]Exhibit 24: Election Day Ballot Register Reconciliation (06/05/2021), based upon all information received under the TPIA.

[49]Exhibit 25: Canvass Certificate for the City of Frisco General Runoff Election (06/2021).

[50]Exhibit 26: Frisco Ordinance (06/2021).

[51]Exhibit 27: Election Day Ballot Register Reconciliation (11/02/2021), based upon all information received under the TPIA.

CITIZENS DEFENDING FREEDOM

- The canvassing certification document states of November 2, 2021, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[52]

- In accordance with Texas Local Government Code section 67.002, the Collin County Commissioners Court accepted the canvass results of the November 2, 2021 elections on Monday, November 15, 2021, under court order 2021-1170-11-15.[53]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## January 2022 City of McKinney Special Election Canvass Certification and Acceptance of Precinct Returns[54]

- On January 21, 2022, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2022 election.

- The canvassing certification document states of January 15, 2022, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[55]

- In accordance with Texas Local Government Code section 67.002, the City of McKinney accepted the canvass results of the January 15, 2022 elections on Tuesday, January 25, 2022, under city ordinance 2022-01-019.[56]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## January 2022 City of Frisco Special Election Canvass Certification and Acceptance of Precinct Returns[57]

- On February 7, 2022, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2022 election.

---

[52]Exhibit 28: Canvassing Certification (11/2021).

[53]Exhibit 29: Court Order (11/15/2021).

[54]Exhibit 30: Election Day Ballot Register Reconciliation (01/15/2022), based upon all information received under the TPIA.

[55]Exhibit 31: McKinney Special Canvassing Document (01/2022).

[56]Exhibit 32: McKinney Ordinance Unsigned (01/2022) and Exhibit 33: McKinney Minutes with Discussion of Ordinance (01/2022). The ordinance on the city website was not signed, so we included the Minutes for the City Council Meeting.

[57]Exhibit 34: Election Day Ballot Register Reconciliation (01/29/2022), based upon all information received under the TPIA.

◼ CITIZENS DEFENDING FREEDOM

- The canvassing certification document states of January 29, 2022, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[58]

- In accordance with Texas Local Government Code section 67.002, the City of Frisco accepted the canvass results of the January 29, 2021 elections on Tuesday, February 8, 2022, under city ordinance 2022-02-04.[59]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## March 2022 City of Frisco Special Runoff Election Canvass Certification and Acceptance of Precinct Returns[60]

- On April 4, 2022, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2022 election.

- The canvassing certification document states of March 26, 2022, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[61]

- In accordance with Texas Local Government Code section 67.002, the City of Frisco accepted the canvass results of the March 26, 2022 elections on Tuesday, April 5, 2022, under city ordinance 2022-04-18.[62]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## May 2022 Joint Election Canvass Certification and Acceptance of Precinct Returns[63]

- On May 16, 2022, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2022 election.

---

[58]Exhibit 35: Canvassing Document (01/2022).

[59]Exhibit 36: Frisco Ordinance (02/04/2022).

[60]Exhibit 37: Election Day Ballot Register Reconciliation (03/26/2022), based upon all information received under the TPIA.

[61]Exhibit 38: Frisco Special Runoff Canvassing Document (03/2022).

[62]Exhibit 39: Frisco Ordinance (04/18/2022).

[63]Exhibit 40: Election Day Ballot Register Reconciliation (05/07/2022), based upon all information received under the TPIA.

CITIZENS DEFENDING FREEDOM

- The canvassing certification document states of May 7, 2022, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[64]

- In accordance with Texas Local Government Code section 67.002, the City of Melissa accepted the canvass results of the May 7, 2022 elections on Tuesday, May 17, 2022, under city ordinance 2022-44.[65]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## November 2022 General Election Canvass Certification and Acceptance of Precinct Returns[66]

- On November 21, 2022, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2022 election.

- The canvassing certification document states of November 8, 2022, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[67]

- In accordance with Texas Local Government Code section 67.002, the Collin County Commissioners Court accepted the canvass results of the November 8, 2022 elections on Monday, November 21, 2022, under court order 2022-1269-11-21. This order included an error on the day of the week.[68]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## May 2023 Joint Election Canvass Certification and Acceptance of Precinct Returns[69]

- On May 15, 2023, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2023 election.

---

[64]Exhibit 41: Canvassing Document (05/2022).

[65]Exhibit 42: Special City Council Agenda Packet Ordinance and Certificate (05/17/2022). Note: The minutes and ordinance from the website were not signed.

[66]Exhibit 43: Election Day Ballot Register Reconciliation (11/08/2023), based upon all information received under the TPIA.

[67]Exhibit 44: Notice of Canvass Certification (11/08/22).

[68]Exhibit 45: Court Order (11/2022).

[69]Exhibit 46: Election Day Ballot Register Reconciliation (05/06/2023), based upon all information received under the TPIA.

CITIZENS DEFENDING FREEDOM

- The canvassing certification document states of May 6, 2023, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[70]

- In accordance with Texas Local Government Code section 67.002, the City of Frisco accepted the canvass results of the May 6, 2023, elections on Tuesday, May 16, 2023, under city ordinance 2023-05-27.[71]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

## November 2023 General Election Canvass Certification and Acceptance of Precinct Returns[72]

- On November 14, 2023, the Collin County Elections Administrator Bruce Sherbet signed a canvassing certification document for the 2023 election.

- The canvassing certification document states of November 7, 2023, "I Bruce Sherbet, the undersigned Elections Administrator of Collin County, do hereby certify that I have made an actual check and comparison of all the ballots tabulated as voted with the Return Sheets, and the unused ballots as recorded on the Register of Official Ballots."[73]

- In accordance with Texas Local Government Code section 67.002, the Collin County Commissioners Court accepted the canvass results of the November 7, 2023 elections on Monday, November 20, 2023, under court order 2023-1131-11-20. This order included an error on the day of the week.[74]

- The election day records were certified, but based on the information received, those records were incomplete, or not calculated.

---

[70]Exhibit 47: Municipal Canvassing Document (05/2023).

[71]Exhibit 48: Frisco Municipal Ordinance (05/27/2023).

[72]Exhibit 49: Election Day Ballot Register Reconciliation (11/07/2023), based upon all information received under the TPIA.

[73]Exhibit 50: Canvassing Certification (11/07/2023).

[74]Exhibit 51: Court Order (11/2023).

# OPINIONS AND SOLUTIONS[75]

A. *Compliance With Receipt, Certification, and Retention of Election Records.*

The data collected and complied in this report uncovered a disturbing trend that multiple elections were certified based on incomplete records that should have been considered election records, retained and available under the 22-month retention schedule and thereafter in some circumstances. The administration of elections requires that the custodian of records carefully protect public information from deterioration, alteration, mutilation, loss, or unlawful removal.  This includes election information to ensure data and records of Collin County elections are gathered and available for inspection by the public. The Elections Administrator is delegated governmental duties and responsibilities that are reserved for elected officials. This included duties and responsibilities traditionally assigned to the county clerk, including preparing a proposed schedule of polling places and times for approval by the county commissioners court, hiring and training poll workers, allocating voting equipment to ensure adequate coverage for all polling places, and overseeing the conduct of the election and the canvassing of election results, among others.

Title 14 of the Election Code establishes procedures for an election contest.[76] In such proceedings, the relevant tribunal hearing the contest must ascertain whether the outcome of the election is inaccurate due to "an election officer or other person officially involved in the administration of the election: (A) prevent[ing] eligible voters from voting; (B) fail[ing] to count legal votes; or (C) engag[ing] in other fraud or illegal conduct[.]"[77] If the tribunal "cannot ascertain the true outcome of the election," it "shall declare the election void" and order a new election.[78]  To this point, the certification of elections that includes inaccurate or incomplete information in election records poses legal and financial  risk to Collin County should an election contest be initiated.

B. *Compliance with the Texas Public Information Act*

The Texas Legislature has charged the Attorney General with maintaining "uniformity in the application, operation, and interpretation" of the Public Information Act. Tex. Gov't Code § 552.011. The Attorney General has an interest in maintaining a uniform application of the Public Information Act and in obtaining compliance with his open records decisions.

During the course of this investigation, a series of PIA requests were made starting on August 23, 2022, for information about Collin County elections.[79] Collin County has responded to some requests but not all. They have sought Attorney General opinions on whether some requested information falls under PIA exceptions.

---

[75]Based upon information received.

[76]Id. at Texas Election Code §221.001–243.013.

[77]Id at Texas Election Code §221.003(a).

[78]Id. at Texas Election Code §221.012(b); see also Id. at §221.014(a) (allocating costs of a new election ordered by a tribunal).

[79]Exhibit 21: Election Day Ballot Register Reconciliation.

Missing documents present litigation risk to Collin County. The apparent lack of election record retention requires additional oversight, transparency, and accountability.

C. _Return to Elections Officials Elected by the Voters by Elimination of the Position of Collin County Elections Administrator_

The seemingly systemic failures and deficiencies uncovered by this investigative report make clear that the current structure of election administration is in need of fundamental reform. The Elections Administrator, an appointed bureaucrat with minimal accountability to the electorate, has presided over a period of what appears to be mismanagement and negligence that has shattered public confidence in the integrity of our elections.

To restore faith in our democratic processes and ensure that the will of the people is respected, we believe bold action is required. Namely, the appointed position of Elections Administrator should be eliminated entirely, with its duties and responsibilities transferred back to elected officials who are directly accountable to the citizens they serve.

Under the Texas Election Code, elections can be conducted by either the County Clerk or the County Tax Assessor-Collector, both of whom are duly elected by the people. These officials, who must face the voters every four years, have a much greater incentive to carry out their critical duties with the utmost professionalism, transparency and fidelity to the law.

Eliminating the unelected intermediary of an Elections Administrator will cut out an unnecessary layer of bureaucracy and help ensure that any improprieties or failures in the administration of elections can be dealt with swiftly and decisively at the ballot box. The voters of Collin County deserve the ability to hold their election officials directly accountable.

To facilitate this important reform and realign election duties with elected offices, we propose the following steps:

1. The Collin County Commissioners Court should move expediently to dissolve the position of Elections Administrator and transfer all election responsibilities to the County Clerk and Tax Assessor-Collector.

2. A transition plan should be developed to ensure the smooth transfer of duties, records and institutional knowledge between offices. During the transition, the County Clerk and Tax Assessor should work to identify and rectify the deficiencies noted in this report.

3. To bolster transparency and accountability, election policies and procedures should be reviewed to incorporate additional checks and balances, including regular audits of election records and vote counts overseen by the Commissioners Court and/or citizen review panels.

4.  The County Clerk and Tax Assessor should commit to making election integrity their highest priority and to operating in a manner that is transparent, communicative and responsive to the concerns of the citizenry.

By eliminating the Elections Administrator and vesting authority in accountable elected offices, the county will send a strong signal that the integrity of the ballot box is paramount and that the people's interests must always come before the entrenched interests of any unelected bureaucrat.

D.  *If the Election Administrator Position Remains, Utilize the County Election Commission for Appropriate Oversight*

The findings of this investigative report highlight seemingly significant deficiencies, errors, and concerning activities related to the administration of elections in Collin County. The failure to properly complete, gather, and retain critical election records such as the Register of Ballots forms, as well as the certification of incomplete election records by the Elections Administrator, have eroded public trust and confidence in the accuracy and integrity of Collin County's election outcomes.

To address these serious issues and restore faith in the elections process, further investigation and corrective action is warranted. The Collin County Election Commission, which is responsible for appointing and overseeing the Elections Administrator, must exercise its statutory authority to provide greater scrutiny and accountability.

We recommend that the Election Commission take the following steps:

1.  Convene regular open meetings to review the Elections Administrator's compliance with all applicable laws, rules and procedures related to the proper administration of elections. This should include a thorough examination of practices around ballot accounting, election record retention, and the certification process.

2.  Solicit public comment and input to gain a fuller understanding of citizen concerns around election irregularities and transparency. The right of citizens to have confidence in free and fair elections is fundamental and must be protected.

3.  Work with the Elections Administrator to identify root causes of the problems identified in this report and develop concrete plans to address deficiencies and implement any needed policy, process or personnel changes.

4.  Provide a public report of findings and corrective actions to promote transparency and accountability to the citizens of Collin County.

The proper functioning of our democracy depends on election processes that are transparent, accurate and compliant with the law. The Collin County Election Commission has both the authority and the responsibility to ensure effective oversight of election administration in the county. Taking prompt action

to investigate and rectify the issues raised in this report must be a top priority to restore public trust and prevent further erosion of our most fundamental right as citizens.

E. _Conduct an Investigation into the Facts Presented and Determine Accountability for Any Negligent Administration of Elections_

It is incumbent upon the Collin County Commissioners Court, as the primary governing body charged with overseeing the operations of county government, to thoroughly investigate the facts presented herein and determine the extent to which the Elections Administrator and/or other county personnel may be culpable for negligent or improper administration of duties.

We specifically call on the Commissioners Court to:

a. Undertake a comprehensive audit of the Elections Department's practices related to ballot reconciliation and chain of custody, records retention, and the reconciliation and certification of vote totals and election results.

b. Interview all relevant county staff, poll workers and other witnesses to ascertain how and why the required election protocols and statutes were circumvented.

c. Consult with legal counsel to determine if any laws were violated and whether the infractions rise to the level of civil or criminal offenses that should be referred to the District Attorney or Attorney General.

d. Based on the findings, remove and replace any personnel found to be responsible for the negligent administration of election duties, including the Elections Administrator if deemed appropriate.

e. Develop and implement a remedial plan and additional oversight to ensure that the proper procedures are followed and records maintained for all future elections in the county.

Transparent, secure and accurate elections are the bedrock of our representative government. When the public servants entrusted with administering this most fundamental democratic process violate that trust through negligence or malfeasance, they must be held accountable. The people of Collin County deserve no less. We urge the Commissioners Court to exercise its oversight authority to fully investigate this matter, restore regulatory compliance and integrity to the county's election operations, and take appropriate actions to rebuild public confidence in the sanctity of our elections.

# CONCLUSION

The findings of this investigative report expose a troubling pattern of potential mismanagement, negligence, and malfeasance in the administration of elections in Collin County. The failure to properly maintain and retain essential election records, including key documents like the Register of Ballots forms, represents an alarming breach of both legal obligations and public trust. Even more concerning, the certification of incomplete and inaccurate election results by the County Elections Administrator, as detailed herein, raises serious questions about the integrity and credibility of the electoral process.

These deficiencies and irregularities are unacceptable. Free and fair elections are the bedrock of our representative democracy, and the citizens of Collin County deserve to have the utmost confidence that their sacred right to vote is being protected and respected. The systemic issues uncovered by this investigation underscore the urgent need for meaningful reform, greater transparency, and stronger oversight of the county's election operations.

To that end, we believe a multi-faceted approach is warranted. First and foremost, the Collin County Commissioners Court, as the governing body ultimately responsible for the conduct of elections, must launch a thorough investigation into the specific lapses and potential wrongdoing identified in this report. All relevant county personnel, including the Elections Administrator, should be held accountable for any failures to properly discharge their duties under the law.

Furthermore, to restore public trust and prevent such failures from recurring in the future, serious consideration should be given to fundamentally reforming the structure of election administration in Collin County. Namely, we believe the appointed, and largely unaccountable, position of Elections Administrator should be eliminated, with its responsibilities transferred back to the elected offices of the County Clerk and Tax Assessor-Collector, in accordance with the Texas Election Code. By placing election duties back under the purview of officials directly accountable to the people, the county can strengthen democratic oversight and better ensure that the integrity of the ballot box is protected.

In addition to these structural reforms, the county should act to strengthen accountability and transparency around election procedures. This should include implementing more robust systems for tracking and preserving election records, with regular audits and oversight by the Commissioner's Court and citizen review panels. The Secretary of State's office should also be engaged to provide additional guidance and support in bringing the county's electoral processes into full compliance with all applicable laws and regulations.

The integrity of our elections is far too important to be left to chance or human error. The deficiencies and failings documented in this report must be addressed forcefully and without delay. The people of Collin County deserve elections that are transparent, trustworthy, and fully compliant with the law. It is now up to county leaders to take decisive action to investigate these issues.

CITIZENS DEFENDING FREEDOM

**RELEVANT LEGAL AUTHORITIES GLOSSARY OF RELEVANT ELECTION TERMS**[80]

**Automatic Tabulating Equipment:** Equipment, other than a voting machine, that compiles vote totals by ballot sorting, ballot reading, ballot scanning, or electronic data processing.

**Ballot:** Either in paper form or electronic, the mechanism for voters to show their vote preferences.

**Ballot Box Nos. 1, 2, 3, & 4:** A ballot box is a container for ballots that can be locked (double-locked in case of a ballot box used for early voting by personal appearance) and sealed.  Ballot boxes no. 1 and no. 2 are used for the deposit of voters' marked ballots; ballot box no. 3 is used for delivering the voted ballots to their custodian after they are counted and for storing the voted ballots during the preservation period; and ballot box no. 4 is used for delivering defectively printed, spoiled, and unused ballots to their custodian after the election.  Ballot boxes no. 1 and no. 2 must each have a slot in the top just large enough to receive a ballot. Ballot boxes no. 3 and no. 4 are not required to have a slot, but if a slot is provided, it may not be larger than that prescribed for boxes no. 1 and no. 2.

**Branch Early Voting Location:** Either Permanent or Temporary – a location other than the main early voting site where voters can vote early by personal appearance.

**Canvass:** The procedure performed by the governing body of the political subdivision whereby the election results become official.  At the time set for convening the canvassing authority for the local canvass, the presiding officer of the canvassing authority shall deliver the sealed precinct returns to the authority. The authority shall open the returns for each precinct and prepare a tabulation stating for each candidate and for and against each measure the total number of votes received in each precinct and the sum of those precinct totals (the tabulation must also show the total number of voters who cast a ballot).  Two members of the authority constitute a quorum for purposes of canvassing an election.

**Central Counting Station:** A centralized location at which ballots cast during the election are tabulated and election reports generated based on those tabulations.  The authority adopting an electronic voting system for use in an election may establish one or more central counting stations for counting the ballots if the voting system is designed to have ballots counted at a central location.

**Certificate of Election:** After the completion of a canvass, the presiding officer of the local canvassing authority shall prepare a certificate of election for each candidate who is elected to an office for which the official result is determined by that authority's canvass.  A certificate of election is then issued to each winning candidate.

**Combination Form:** A form used at the polling place during early voting and election day that combines multiple functions and requirements into a single form.  For example, the form contains the poll list and signature roster, space for election workers to add the name and address of a voter's assistant, and notations that a voter is voting provisionally, is not on the list of registered voters, or has a similar name issue.  The form also includes the "similar name" and "voter not on list" affidavits to be initialed by voters.  The form has multiple carbon copy layers, with one copy each going into Envelopes 2, 3, and 4, and one copy in with ballot box #3.

---

[80]Unless otherwise noted, references are primarily reproduced from the Texas Secretary of State Website, available at: Glossary of Elections Terminology.

**County Clerk:** Administers elections at the county level, unless that county has an Elections Administrator.

**County Election Commission:** The group that appoints, monitors, and may fire a county Elections Administrator (EA).  Board membership is composed of the county judge, county clerk, county tax assessor-collector, and the county chair of each political party.  Given the role of the board, the county clerk is not replaced by the EA once an EA is appointed (unlike with the County Election Board).

**County Election Precinct:** The county commissioner's court divides all territory of the county into county election precincts; each precinct must not contain territory from more than one county commissioner's precinct, justice precinct, congressional district, state representative district, state senatorial district, or state board of education district.  The precincts must be compact and contiguous. A voter is registered in the county election precinct that contains the voter's residence address.  In elections other that the general election for state and county officers, and with certain limitations, county election precincts may be combined or consolidated so that multiple precincts vote at a single polling location.

**Countywide Polling Place Program:** Also referred to as Vote Centers.  A polling place system in which the county election precinct polling places are eliminated and instead any registered voter eligible to vote in the county-run election may vote at any polling place open on election day; similar to the way an early voting polling place is used.  A county must meet the following minimum requirements: (1) exclusive use of direct recording electronic (DRE) voting systems at all polling places; (2) implementation of a computerized voter registration list that allows instantaneous verification that a voter has not already voted at another polling place; and (3) if the county has not participated in one of the previous countywide election precinct programs, it must hold a public hearing to inform and solicit opinions from voters, minority organizations, and other interested parties. For an election held in the first year in which the county holds an election under the program, the total number of countywide polling places may not be less than 65% of the number of precinct polling places that would otherwise have been used in the last equivalent election. For subsequent elections, this number drops to 50%.

**Custodian of Election Records:** The individual responsible for maintaining for the required retention period the records from an election. In an election ordered by the governor, a county authority, or the primary election, this is the county clerk/elections administrator. For a city, it is the city secretary; for all other elections, it is the secretary of the political subdivision's governing body (or if no secretary, then to governing body's presiding officer).

**Duplicate Ballot:** A ballot substituted for a damaged or partially invalid optical scan ballot; each duplicate ballot must be clearly labeled "duplicate" and must bear the serial number of the original ballot.

**Elections Administrator (EA):** An appointed official who performs the election duties of the county clerk and the voter registrar.

**Election Clerk:** Individuals appointed by the presiding judge to assist in running the election. The presiding judge shall designate the working hours of and assign the duties to be performed by the election clerks serving under the judge.

**Election (Day) Precinct:** The phrase commonly used to refer to the area served on election day by a single polling place.  It could be a single county election precinct, combined county election precincts, or consolidated county

CITIZENS DEFENDING FREEDOM

election precincts (counties); or the precincts created by a local authority (May elections).  Contrast "county election precinct."

**Election Judge:** Also, "Presiding Election Judge" or "Presiding Judge."  The presiding judge is in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves.

**Electronic Voting System:** A voting system in which the ballots are automatically counted and the results automatically tabulated by use of electronically operated apparatus; i.e., a method of voting using either optical scan ballots (which are counted either at the precinct using a precinct ballot counter or at the central counting station using tabulator machines) or Direct Recording Electronic voting machines.

**Envelope Nos. 1, 2, 3 & 4:** Four envelopes shall be furnished to each polling place for use in assembling and distributing the precinct election records; the envelopes shall be labeled and addressed as follows: (1) "Envelope No. 1," addressed to the presiding officer of the local canvassing authority; (2) "Envelope No. 2," addressed to the general custodian of election records; (3) "Envelope No. 3," addressed to the presiding judge; and (4) "Envelope No. 4," addressed to the voter registrar.  Envelope No. 1 must contain: (1) the original of the election returns for the precinct and result(s) taps, if applicable; and (2) a tally list (for paper ballots counted at the precinct only). Envelope No. 2 must contain: (1) printout of result(s) tapes; (2) a copy of the precinct returns, if applicable; (3) a tally list (for paper ballots counted at the precinct only); (4) the original of the poll list (or combination form); (5) the signature roster; (6) the precinct early voting list; (7) any affidavits completed at the polling place except affidavits required to be placed in envelope no. 4; (7) any Reasonable Impediment Declarations; (8) any certificates of appointment of watchers; (9) original copy of Statement of Compensation and Oaths (in some circumstances); (9) notice of the number of voters who voted during the day; (10) notice of improper delivery; (11) oaths of election officers; (12) oaths of assistance and oaths of interpreters, and (13) list of provisional voters. Envelope No. 3 must contain: (1) printout of result(s) tapes; (2) a copy of the precinct returns, if applicable; (3) a copy of the poll list (or combination form); (3) a copy of the ballot register; (4) a copy of the ballot and seal certificate; and (5) a copy of the Statement of Compensation and Oaths. Envelope No. 4 must contain: (1) the precinct list of registered voters and supplemental list, if any; (2) the registration correction list, if any; (3) any Statements of Residence; and (4) copy of Combination Form, if used instead of individual affidavits. Note, provisional ballot affidavits/envelopes should not be put in envelope No. 4 but should be kept in a secured location while at the polling place and being transferred to the central counting station or voter registrar.

**Final Canvass (see also, Canvass):** The canvass from which the official result of an election is determined.

**General Election:** As used when applied to political subdivisions other than counties, the regularly-scheduled election to fill the full terms of a political subdivision's governing body; held on a uniform election date (second Saturday on May or first Tuesday after first Monday in November).

**General Election for State and County Officers:** The general election at which officers of the federal, state, and county governments are elected; held on the first Tuesday after the first Monday on November of each even-numbered year.

**Governing Body:** The term used to describe the group of individuals elected to formulate the policy and direct the affairs of a political subdivision. Examples include a city council, school board, water district board of directors, etc.

CITIZENS DEFENDING FREEDOM

**Local Canvass:** The canvass of the precinct election returns.

**Official Ballot:** The vote in an election is by official ballot.  If an official ballot is unavailable at a polling place, the presiding election judge shall provide an emergency or other ballot allowed by law.

**Polling Place:** The room or building in which voting is being conducted. The governing body of each political subdivision authorized to hold elections shall designate the location of the polling place for each of its election precincts; all polling places used in Texas must be accessible to voters with disabilities.

**Poll Watcher:** A person appointed by a candidate or political action committee to observe the conduct of an election on behalf of a candidate, a political party, or the proponents or opponents of a measure.

**Primary Election:** An election held by a political party under Chapter 172 of the Texas Election Code to select its nominees for public office, and, unless the context indicates otherwise, the term includes a presidential primary election. The winning candidates from each party will later go up against each other in the general election. A primary may be either "open" — allowing any registered voter in a state to vote for a candidate to represent a political party, or "closed" — allowing only registered voters who belong to a particular political party to vote for a candidate from that party. Texas has an open primary, but voters affiliate with a political party by voting in that party's primary.

**Retention Period:** Generally speaking, the precinct election records must be preserved by the authority to whom they are distributed for at least 22 months after election day. Some records, including the local election register, are kept permanently.

**Tabulation:** The action of creating a chart or table showing the votes cast in a given precinct for the candidates and for or against propositions voted on in that precinct; also the table showing the results from each precinct for each candidate and for and against each proposition in the political subdivision as a whole. Also refers to the process of adding up the numbers that are put in the chart or table.

**Texas Administrative Code:** A compilation of all state agency rules in Texas. The rules usually are put in place to clarify conflicting laws or to give procedural guidance on how comply with various aspects of state statutes. There are 16 titles in the TAC. Each title represents a subject category, and related agencies are assigned to the appropriate title. The section of the TAC that contains rules promulgated by the elections division of the SOS is in Title 1, Part 4, Chapter 81.

**Texas Legislature:** The legislature is a bicameral (2 chamber) body composed of a 31-member Senate and a 150-member House of Representatives. The legislature is a lawmaking institution and possesses the traditional legislative power of the purse (to tax, spend, and borrow money for public purposes), and to organize and confer powers on the executive and the judiciary not otherwise provided for or prohibited in the Texas Constitution. The Texas Legislature meets at the Capitol in Austin, Texas.

**Voting System:** A method of casting and processing votes that is designed to function wholly or partly by use of mechanical, electromechanical, or electronic apparatus and includes the procedures for casting and processing votes and the programs, operating manuals, tabulating cards, printouts, and other software necessary for the system's operation.

**Voting System Ballot:** A ballot designed for use with a voting system.

CITIZENS DEFENDING FREEDOM

**Voting System Certification:** Before a voting system or voting system equipment may be used in an election, the system and a unit of the equipment must be approved by the secretary of state.

**Voting System Equipment:** Any kind of mechanical, electromechanical, or electronic apparatus for use in a voting system.

## RELEVANT LEGAL AUTHORITIES[81]

**Texas Election Code § 1.012:** Except as otherwise provided by this code or Chapter 552, Government Code, all election records are public information. anything distributed or received by government under this code; anything required by law to be kept by others for information of government under this code; or a certificate, application, notice, report, or other document or paper issued or received by government under this code.

**Texas Election Code §§ 12.001, 43.002, 67.007, 83.002:** If a Texas county does not create or utilize an election administrator position, the county elections are administered through their elected county clerks and tax assessor-collectors.

**Texas Election Code § 12.001:** The county tax assessor-collector is the voter registrar for the county unless the position of county elections administrator is created, or the county clerk is designated as the voter registrar. In Collin County, the EA is designated as the voter registrar.

**Texas Election Code § 31.004:** (a) The Secretary of State shall assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside of this code.

**Texas Election Code § 31.031:** (a) The commissioners court of a county with a population of 3.5 million or less by written order may create the position of county elections administrator for the county.

**Texas Election Code § 31.032:** (a) The Elections Administrator position is appointed by the County Election Commission, which as a matter of state law consists of the County Judge, the County Clerk, the County Tax Assessor-Collector, and the county chair of each political party that made nominations in the last general election.

**Texas Election Code § 31.037:** An Elections Administrator can be removed in only two ways. First, they may be removed "for good and sufficient cause on the four-fifths vote of the county election commission and approval of that action by a majority vote of the commissioners court."  Second, they may be removed by the Secretary of State, but only upon a finding of a "recurring pattern of problems with election administration or voter registration" that has "not [been] rectified or continues to impede the free exercise of a citizen's voting rights"— and even then, only at "the conclusion of administrative oversight of the county elections administrator's office.

**Texas Election Code § 31.043:** The county elections administrator shall perform: (1) the duties and functions of the voter registrar; (2) the duties and functions placed on the county clerk by this code; (3) the duties and functions

---

[81]References are reproduced from sections of the Texas Election Code, Texas Government Code, and Texas Penal Code.

CITIZENS DEFENDING FREEDOM

relating to elections that are placed on the county clerk by statutes outside this code, subject to Section 31.044; and (4) the duties and functions placed on the administrator under Sections 31.044 and 31.045.

**Texas Election Code § 31.044:** Outlines the division of election-related responsibilities between Texas County Clerks and Elections Administrators. County Clerks handle Commissioners Court meetings, while Election Administrators manage election-specific tasks. Both collaborate on various election matters as required by statute.

**Texas Election Code § 31.045:** Authorizes the Texas Secretary of State to establish rules clarifying duty allocation between county clerks and elections administrators. Includes procedures for creating, distributing, and implementing these rules, with provisions for emergency rule-making.

**Texas Election Code § 31.049:** A statute prescribing a criminal penalty against the county clerk or the clerk's deputies or other employees for conduct relating to duties or functions transferred to the county elections administrator applies to the administrator or to the administrator's deputies or employees as appropriate.

**Texas Election Code § 31.129:** An election official may be liable to the State of Texas for a civil penalty if (1) the election official is employed by or is an officer of the state or a political subdivision of the state, and (2) violates a provision of the Election Code. Section 31.129 makes clear that "[a] civil penalty ... may include termination of the person's employment and loss of the person's employment benefits.

**Texas Election Code § 65.013:** (a) Each presiding judge shall prepare a ballot register as provided by this section. (b) The register must state: (1) the total number of ballots received for conducting voting at the polling place; (2) the number of defectively printed ballots received; (3) the number of ballots provided to voters as indicated by the number of voters on the poll list; (4) the number of spoiled ballots returned by voters; and (5) the number of unused ballots that are not accounted for as defectively printed ballots. (c) The ballot register shall be prepared as an original and one copy, and on completing the register, the presiding judge shall sign each one to certify its accuracy.

**Texas Election Code § 66.001:** The general custodian of election records is: (1) the county clerk of each county wholly or partly situated in the territory covered by the election, for an election ordered by the governor or by a county authority or for a primary election; (2) the city secretary, for an election ordered by a city authority; and (3) the secretary of the political subdivision's governing body or, if the governing body has no secretary, the governing body's presiding officer, for an election ordered by an authority of a political subdivision other than a county or city.

**Texas Election Code § 66.002:** In this chapter, "precinct election records" means the precinct election returns, voted ballots, and other records of an election that are assembled and distributed under this chapter.

**Texas Election Code § 66.0021:** (a) This section applies only to a primary election or the general election for state and county officers. (b) The general custodian of election records for a primary election or the general election for state and county officers shall maintain a list that states the total number of votes cast in each precinct by personal appearance on election day that is available for public inspection not later than the day after election day. (c) Each vote total shall be maintained in a downloadable format approved by the secretary of state and

posted on the Internet website of the secretary of state. (d) The secretary of state shall create a system for an early voting clerk for a primary election or the general election for state and county officers to provide the information to the secretary of state for posting on the secretary of state's Internet website under Subsection (c).

**Texas Election Code § 66.003:** (a) Four envelopes shall be furnished to each polling place for use in assembling and distributing the precinct election records. (b) The envelopes shall be labeled and addressed as follows: (1) "Envelope No. 1," addressed to the presiding officer of the local canvassing authority; (2) "Envelope No. 2," addressed to the general custodian of election records; (3) "Envelope No. 3," addressed to the presiding judge; and (4) "Envelope No. 4," addressed to the voter registrar.

**Texas Election Code § 66.022:** Envelope No. 1 contains original election returns for the precinct and a tally list.

**Texas Election Code § 66.023:** Envelope No. 2 contains a copy of precinct returns, tally list, original poll list, signature roster, precinct early voting list, certain affidavits, and watcher appointment certificates.

**Texas Election Code § 66.024:** Envelope No. 3 contains a copy of precinct returns, copy of poll list, and copy of ballot register.

**Texas Election Code § 66.0241:** Envelope No. 4 contains the precinct list of registered voters, registration correction list, statements of residence, and certain affidavits.

**Texas Election Code § 66.025:** Ballot Box No. 3 contains voted ballots, copy of precinct returns, tally list, and copy of poll list (alternative placement for poll list copy if approved by Secretary of State).

**Texas Election Code § 66.026:** Ballot Boc No. 4 contains original ballot register, register of spoiled ballots, spoiled ballots, mail-in ballots returned at polling place, defectively printed ballots, envelopes with cancellation requests and canceled ballots, and other unused ballots.

**Texas Election Code § 66.051:** (a) The presiding judge shall deliver envelope no. 1 in person to the presiding officer of the local canvassing authority. If the presiding officer of the local canvassing authority is unavailable, the envelope shall be delivered to the general custodian of election records who shall then deliver it to the local canvassing authority before the time set for convening the local canvass. (b) The presiding judge shall deliver envelope no. 2, ballot box no. 3, and ballot box no. 4 and its key in person to the general custodian of election records. (c) The presiding judge shall retain envelope no. 3. (d) The presiding judge shall deliver envelope no. 4 in person to the voter registrar. If the voter registrar is unavailable, the envelope shall be delivered to the general custodian of election records, who shall deliver it to the voter registrar on the next regular business day.

**Texas Election Code § 66.058:** Precinct election records shall be preserved by the authority to whom they are distributed for at least 22 months after election day.

**Texas Election Code § 83.002:** The county clerk is the early voting clerk for the county in (1) the general election for state and county officers and any other countywide election held at county expense; (2) a primary election; and (3) a special election ordered by the governor.

■ CITIZENS DEFENDING FREEDOM

**Texas Election Code § 85.007:** (a) The election order and the election notice must state: (1) the date that early voting will begin if under Section 85.001(d) the early voting period is to begin later than the prescribed date; (2) the regular dates and hours that voting will be conducted under Section 85.005(b); and (3) the dates and hours that voting on Saturday or Sunday is ordered to be conducted under Section 85.006(a). (b) The early voting clerk shall post notice for each election stating the dates and hours that voting on a Saturday or Sunday is ordered to be conducted under Section 85.006(b). (c) Notice under Subsection (b) shall be posted continuously for at least 72 hours immediately preceding the first hour that the voting to which the notice pertains will be conducted. The notice shall be posted on: (1) the bulletin board used for posting notice of meetings of the commissioners court if the early voting clerk is the county clerk of a county that does not maintain an Internet website, or of the city governing body if the early voting clerk is the city secretary; or (2) the county's Internet website if the early voting clerk is the county clerk of a county that maintains an Internet website. (d) Any notice required under this section must also be posted: (1) on the Internet website of the authority ordering the election, if the authority maintains a website; and (2) for a primary election or the general election for state and county officers, by the secretary of state on the secretary's Internet website. (e) The authority ordering an election shall forward its election notice to the secretary of state in a manner that affords the secretary of state sufficient time to comply with Subsection (d)(2).

**Texas Election Code § 123.001:** Before a voting system can be used in elections, it must be officially adopted by the appropriate authority, which varies depending on the type of election. Once adopted, the system must be used according to the specified terms and relevant laws. The text also specifies which authorities are responsible for different types of elections.

**Texas Election Code § 127.156:** If a discrepancy of more than three exists between the number of ballots recorded on the ballot and seal certificate and the number of ballots cast on the tape containing the ballot tabulation that is produced by the automatic tabulating equipment, the official tabulation of those ballots shall be conducted at a central counting station.

**Texas Election Code § 221.003:** In an election contest, the tribunal examines whether the official outcome is incorrect due to illegal votes or misconduct by election officials, such as preventing eligible voters from voting, failing to count legal votes, or engaging in fraud. The law defines an "illegal vote" as one that cannot be legally counted, and allows for other statutes to expand the scope of inquiry.

**Texas Election Code § 221.012:** The tribunal handling an election contest must declare the true outcome if it can be determined. If the true outcome cannot be ascertained, the tribunal is required to declare the election void.

**Texas Election Code § 221.014:** When a tribunal orders a new election due to a contest, expenses are typically paid by the same source as the original election. However, there are specific exceptions for local option elections, cases involving petitioner deposits, and court-ordered primary elections, each with different payment arrangements.

CITIZENS DEFENDING FREEDOM

**Texas Election Code § 276.018:** A person commits an offense if, with the intent to deceive, the person knowingly or intentionally makes a false statement or swears to the truth of a false statement previously made while making an oath, declaration, or affidavit.

**Texas Election Code § 276.019:** A public official or election official may not create, alter, modify, waive, or suspend any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by this code.

**Tex. Gov't Code § 552.001(a):** An officer for public information of a governmental body shall promptly produce public information for inspection, duplication, or both on application by any person to the officer. In this subsection, "promptly" means **as soon as possible** under the circumstances, that is, within a reasonable time, without delay.

**Tex. Gov't Code § 32.46:** is about Securing Execution of Document by Deception. A person commits an offense if, with intent to defraud or harm any person, he, by deception, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person.

**Texas Penal Code § 37.02:** Perjury. A person commits an offense if, with intent to deceive and with knowledge of the statement 's meaning makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath.

**Texas Penal Code § 37.10:** Tampering with a Governmental Record: A person commits an offense if he:(1) knowingly makes a false entry in, or false alteration of, a governmental record;(2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record;(3) intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record;(4) possesses, sells, or offers to sell a governmental record or a blank governmental record form with intent that it be used unlawfully;(5) makes, presents, or uses a governmental record with knowledge of its falsity.

CITIZENS DEFENDING FREEDOM

**EXHIBIT "D"**

To: Christina Adkins, Acting Director of Elections,
Texas Secretary of State's Office
Elections Division Secretary of State
P.O. Box 12060
Austin, Texas 78711-2060

And

To: County Judges, Election Administrators, and All Other Recipients of this
Declaration of Truth and Petition for a Redress of Grievances

### Declaration of Truth Regarding Blatant Violations of Voter Privacy and Ballot Secrecy in Counties Participating in the Texas Secretary of State's Countywide Polling Place Program

I, Barry Wernick, the undersigned, make this Declaration of Truth of my own free will, as a member of the voting population of the Great State of Texas, and I hereby affirm, under the laws of the United States of America, and of this state, that I am of legal age and of sound mind and hereby attest that the statements, averments and information outlined in this Declaration of Truth are true and correct to the best of my knowledge.

This Declaration of Truth is lawful notification to you, and is hereby made and sent to you pursuant to the national Constitution, specifically, the Bill of Rights, in particular, Sections I, IV, V, X, and the Bill of Rights of the Texas Constitution, in particular, Article I, Section I, II, VIII, XXIX, XXX, and pursuant to potential violations of Article 6, Section 2(c) of the Texas Constitution, and requires your written rebuttal to me, in kind, specific to each and every point of the subject matter stated herein, within 10 days, via your own sworn or notarized affidavit using true fact, valid law and evidence to support your rebuttal of the specific subject matter in this Declaration.

1) I was a candidate in the Republican Primary election of March 5, 2024. I requested a recount which began on Tuesday April 2, 2024 at the Dallas County Elections Department located in Dallas County at 1520 Round Table Drive Dallas, Texas 75247.

2) Throughout the recount process, as a candidate on the ballot whose race for HD108 was directly affected by the joint primary election system conducted countywide by the Dallas County Elections Department, I carefully and lawfully observed and reported on election irregularities.

3) During my observations, I witnessed a series of documents being provided by Dallas County Elections Administrator Heider Garcia and his staff being laid out on each counting table by Recount Supervisor Jennifer Stoddard-Hajdu's appointed recount committee chairs and assistants.

4) These documents included: "Voter Rosters" by location, a "Batch Report by Polling Location" showing how many HD 108 ballots per precinct were contained in each ballot box, and the paper ballots cast at each location. All of these records are now publicly available at the Dallas County Election website (https://dallascountyvotes.org ) and the Texas Secretary of State website (Welcome to Texas Elections (state.tx.us).

5) Due to this county's participation in the Texas Secretary of State's Countywide Polling Place Program, ballots are no longer required to be cast in-precinct but must still be reported by precinct, even though the ballot may be cast in another precinct within the county of the election being held. This necessitates the creation of a database showing all precincts from which a vote was cast, and how many votes from each precinct were cast at each polling location. This document is referred to as the "Batch Report by Polling Location" by Dallas County Election Administrator Heider Garcia. This document is printed from the Dallas County Central Election Management Server (EMS) and is accessible by elections department staff as well as any state or private entity who requests the data.

6) The "Voter Roster" is simply the record of every voter who casts a ballot, the location where he casts a ballot, and his assigned voting precinct.

7) Simple visual comparisons of the Voter Roster, the Batch Report by Polling Location, and the paper ballots now publicly available facilitate an improper breach of voter privacy, without the voter's prior knowledge or agreement, via the creation of the "Batch Report by Polling Location" document.

8) Creation of this document allows for any state or private entity to match ballots and ballot selections to voters in polling locations where a voter is the only voter from a precinct to cast a ballot in a particular polling location, or where more than one voter registered in the same house from a certain precinct voted together, i.e. married couples, roommates, caregivers, etc.

9) I witnessed ballot boxes from different polling locations opened and presented alongside "Batch Report by Polling Location" documents and the hand-written "Voter Roster" check-in sheets. I watched the recount committee members pull ballots that could immediately, decisively, certainly determine many voter selections from their very ballot, being that many "Batch Reports

by Polling Location" showed one, ten, and even over 30 voters who were the only voters from their precinct to vote at that polling location.

10) Blocking access to these paper records, which are part of an auditable paper trail mandated federally by the HELP AMERICA VOTE ACT and by State law, does NOT alleviate the severe violations witnessed. No state or private entity should be able to identify a ballot with a voter. To protect the secrecy of the ballot, you must immediately advise to OPT OUT of the Countywide Polling Place Program and return to in-precinct voting, or at the very least, to combined precinct voting, IMMEDIATELY.

11) VOTING SYSTEM STANDARDS of the Help America Vote Act (HAVA) provide for audit capacity requirements per U.S. Code Title 52 Sec. 21081 (a) (2).

    a. *In general*
       *The voting system shall produce a record with an audit capacity for such system.*
    b. *Manual audit capacity*
       i. *The voting system shall produce a permanent paper record with a manual audit capacity for such system.*
       ii. *The voting system shall provide the voter with an opportunity to change the ballot or correct any error before the permanent paper record is produced.*
       iii. *The paper record produced under subparagraph (A) shall be available as an official record for any recount conducted with respect to any election in which the system is used.*

12) Texas Government Code Sec. 552.001 POLICY: CONSTRUCTION.
    a. *Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people, it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees. **The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know.  The people insist on remaining informed so that they may retain control over the instruments they have created.**  The provisions of this chapter shall be liberally construed to implement this policy.*
    b. ***This chapter shall be liberally construed in favor of granting a request for information.***

13) <u>**Texas Election Code Sec. 122.001. VOTING SYSTEM STANDARDS.**</u>
    a. *A voting system may not be used in an election unless the system:*
          10. *is capable of providing records from which the operation of the voting system may be audited.*

14) No in-person voter has been made aware, or been offered a waiver to sign, waiving his right to cast his ballot in secret and free from potential intimidation and exposure. The following Constitutional Law and corresponding state statutes outline the severe violations uncovered in Dallas County and confirmed to be occurring in each of the 96 counties who have opted in to the Texas Secretary of State's Countywide Polling Place Program.

15) <u>**Texas State Constitution Article 6, Sec. 2 (c)**</u>:

    *The privilege of free suffrage shall be protected by laws regulating elections and **prohibiting** under adequate penalties **all undue influence in elections from power, bribery, tumult, or other improper practice**.*

16) <u>**Texas Election Code Sec. 1.0015. LEGISLATIVE INTENT.**</u>

    ***It is the intent of the legislature that the application of this code and the conduct of elections** be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, **protect the secrecy of the ballot**, promote voter access, and ensure that all legally cast ballots are counted.*

17) <u>**Texas Election Code Sec. 62.0115. PUBLIC NOTICE OF VOTERS' RIGHTS.**</u>
    a. *The secretary of state shall adopt rules providing for publicizing voters' rights as prescribed by this section. The rules must require that a notice of those rights be publicized:*
        1. *by being posted by an election officer in a prominent location at each polling place;*
        2. *on the Internet website of the secretary of state;*
        3. *through material published by the secretary of state; or*
        4. *in another manner designed to give voters notice of their rights.*
    b. *Except as revised by the secretary of state under Subsection (d), the notice must state that a voter has the right to:*
        1. *vote a ballot and view written instructions on how to cast a ballot;*
        2. *vote in secret and free from intimidation;*

18) <u>Texas Election Code Sec. 62.009. DISARRANGING BALLOTS FOR VOTERS' SELECTION.</u>
   a. *As needed for voting, an election officer shall disarrange a supply of the ballots so that they are in random numerical order.*
   b. *The disarranged ballots shall be placed face down on a table in a manner preventing an election officer or other person from ascertaining the number of a ballot selected by a voter.*

19) <u>Texas Election Code Sec. 122.001. VOTING SYSTEM STANDARDS.</u>
   a. *A voting system may not be used in an election unless the system:*
      i. **preserves the secrecy of the ballot;**

20) This immediate reversal to in-precinct voting must include the EARLY VOTING period as well.

21) <u>Texas Election Code 81.002. APPLICABILITY OF OTHER CODE PROVISIONS.</u> *The other titles of this code apply to early voting except provisions that are inconsistent with this title or that cannot feasibly be applied to early voting.*

22) All 96 Texas counties approved to participate in the Countywide Polling Place Program are aware of this phenomenon, but not one has alerted its citizens to the concerns outlined in this Declaration of Truth. The Texas Secretary of State and all 96 participating Texas county Elections Departments are aware of this violation and are sitting in violation of their oaths and citizens' rights.

23) The Texas Secretary of State is mandated by law to report on complaints or concerns regarding the Countywide Polling Place Program in <u>Texas Election Code 43.007 COUNTYWIDE POLLING PLACE PROGRAM.</u>

   *(j) Not later than January 1 of each odd-numbered year, the secretary of state shall file a report with the legislature. The report must include any complaints or concerns regarding a specific election that have been filed with the office of the secretary of state before the preparation of the report and any available information about voter turnout and waiting times at the polling places. The report may include the secretary of state's recommendations on the future use of countywide polling places and suggestions for statutory amendment regarding the use of countywide polling places.*

Violation of the above stated statutes may facilitate undue influence in Texas Elections, by obfuscating the lawful process and thereby rendering any attempt at an audit totally ineffective. You have taken an oath to support and uphold the Constitutions and are constitutionally mandated to abide by that oath in the performance of your official duties.

You have no constitutional authority, or any other form of valid, lawful authority, to oppose, and violate the very documents to which you swore or affirmed your oath and under which you were delegated by the people the limited authority to conduct the duties of your office.

The above stated positions are true, factual, lawful, and constitutionally ordained.

The issues arising from these violations of State statute are apparent, blatant, and egregious. I attest that the above listed State statutes have been violated, that you are standing in violation of Federal and State Laws, and violations of said statutes are inherently violations of my right to free suffrage, as above-stated election and ethics codes were drafted and codified in order to protect our elections from undue influence as outlined in the Article 6 Section 2(c) of the Texas State Constitution.

A lawful notification has been provided to you stating that if you do not rebut the statements, charges, and averments made in this declaration of truth, then, you tacitly agree with and admit to them. Pursuant to that lawful notification, if you disagree with anything stated under oath in this declaration of truth, then rebut to me that with which you disagree, with particularity, within 10 days of receipt thereof, by means of your own written, notarized declaration of truth, based on specific, true, relevant fact and valid law to support your disagreement, attesting to your rebuttal and supportive positions, as valid and lawful, under the pains and penalties of perjury under the laws of the United States of America and this Great State of Texas.

An unrebutted declaration of truth stands as truth and fact before any court.

**US v Tweel, 550F2d. 297.** *"Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading."*

Your failure to respond, as stipulated, is your tacit agreement with and admission to the fact that everything in this declaration of truth is true, correct, legal, lawful, and is your admission attesting to this, fully binding upon you in any court of law in America, without your protest, objection and that of those who represent you.

Declarant further sayeth naught.

All rights reserved.

*Barry Wernick*                                          x *Bary Wers*

Signed and sworn before me, a Notary Public, ___Barry Wernick___ personally appeared before me, and proved to me on the basis of satisfactory evidence to be the man whose name is subscribed herein. In the State of Texas, County of Dallas swear and affirm that on this day, May 16, 2024, the above named declarant, Barry Wernick, personally appeared before me, and of his own free will, sworn and signed before me this Declaration of Truth regarding issues found in the Countywide Polling Place Program of the March 5, 2024 Primary in the Great State of Texas. I swear under PENALTY OF PERJURY under the Laws of the State of Texas that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

_____
Notary Public/ Jurat

My Commission Expires: _10/12/2026_____          Seal:



FRANCES ARIANNE V PERALTA
Notary Public, State of Texas
Comm. Expires 10-12-2026
Notary ID 13401186-1

**EXHIBIT "E"**


**UNITED SOVEREIGN AMERICANS**

# Texas's 2022 General Election Validity Reconciliation

| GROUP | DESCRIPTION | REGISTRATIONS | 2022 GENERAL ELECTION VOTES |
|-------|-------------|---------------|------------------------------|
| Eligible | Records appear valid so voters are presumed **eligible** to vote. Results can be certified. | 16,417,118 | 7,949,992 |
| Uncertain | Records contain illogical and/or invalid information, so it is **uncertain** whether voters are eligible to vote. Investigation is required before results can be certified. | 1,234,740 | 155,630 |
| Ineligible | Records appear to violate black letter election laws, so voters are presumed **ineligible** to vote. Investigation is required before results can be certified. | 68,874 | 14,445 |
| Deadwood* | Deadwood in the registration roster for Texas includes all of the cancelled registrations. | 1,388,559 | 0 |
| **TOTAL** | Total Database Records / Total Votes Counted per official published tallies | **19,109,291** 19,109,291 | **8,120,067** ** 8,102,908 |
| **DIFFERENCE: (fewer votes counted than number of voters who voted)** | | **0** | **17,159** *** |

Registration Error Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6.8%**
Vote Error Rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2.1%**
Margin of Victory for Nov. 2022 Harris Co. District Judge (534,460 / 534,011) . . . . . . . . . . **1.0%**
Legal Standard of Allowable Error for Mixed Elections**** . . . . . . . . . . . . . . . . . . . . . . . . . **0.0008%**

United Sovereign Americans ©2024 All Rights Reserved.   08012024

# Texas's 2022 General Election Validity Reconciliation

**The measured error rate of the electoral process in Texas, from registration through certification, makes it impossible to legally certify any election in Texas.** Whether due to ignorance, arrogance or malice, the error rate simply outstrips the margins of victory. Countless unique investigations were required by law before certification could proceed. Election officials may never be able to prove that those granted the privilege of writing laws for the nation legitimately represented the will of eligible citizen voters.

The registration and voting error rates reported here represent minimums. We have ample reason for concern, after two years of careful study, that the actual error rates are higher.

## 2022 Mixed Elections in which the error rate exceeded the margin of victory:

- **All races were impacted by this unacceptably high error rate.**
- **The error rate in the 2022 General Election was 8,500 times the legal standard for system accuracy.**

*\* "'Deadwood' allows for fraudulent ballots, which can be used to stuff the ballot box." Federal Prosecution of Election Offenses, Eighth Edition, 2017, US Department of Justice Public Integrity Section, Chapter 2 Corruption of the Election Process (B)(5)(a), Richard C. Pilger, ed., p. 28.*

*\*\* The total votes is indicated by the official state record but includes the invalid voting methods that were specified since that is the official record of the state. See Section 2 line 13 (unidentified voting method)*

*\*\*\* 17,159 fewer votes were counted than there were voters who voted. No one knows what happened to these votes.*

*\*\*\*\* "This rate is set at a sufficiently stringent level such that the likelihood of voting system errors affecting the outcome of an election is exceptionally remote even in the closest of elections." Voting System Standards, Volume I: Performance Standards. April, 2002, Federal Election Commission, United States of America. The accuracy requirement of the voting system is predicated on the voter rolls being accurate as required by the National Voter Registration Act, 1993.*

*Source: 09/26/23 Texas Secretary of State (SOS)*

United Sovereign Americans ©2024 All Rights Reserved.    08012024

**EXHIBIT "F"**





# Texas 2022 General Election Validity Scorecard

# SUPPLEMENTAL DATA AND ANALYSIS

# Contents

Data Sources ........................................................................................................................... 4

Special Statements ................................................................................................................ 5

    Statement Concerning Cancelled Voter Registrations ................................................. 5

    Statement Regarding Voter Registration Negligence at State and County Levels ....... 6

  Abbreviations Used in this Document ................................................................................ 7

  Quick Reference ............................................................................................................... 8

  Detailed Data Field Documentation .................................................................................. 9

    ADDR-1 ......................................................................................................................... 9

    ADDR-23 ..................................................................................................................... 10

    ADDR-24 ..................................................................................................................... 10

    ADDR-25 ..................................................................................................................... 11

    ADDR-4A ..................................................................................................................... 12

    ADDR-4B ..................................................................................................................... 12

    ADDR-5A ..................................................................................................................... 13

    ADDR-5B ..................................................................................................................... 13

    AGE-1 .......................................................................................................................... 14

    AGE-2 .......................................................................................................................... 15

    AGE-3 .......................................................................................................................... 15

    DUP-1 .......................................................................................................................... 16

    DUP-2 .......................................................................................................................... 17

    DUP-3 .......................................................................................................................... 17

    NCOA-1 ....................................................................................................................... 18

    OTH-1 .......................................................................................................................... 18

    OTH-2 .......................................................................................................................... 19

    SUS-1 .......................................................................................................................... 19

    SUS-2 .......................................................................................................................... 20

    VLIST-1 ........................................................................................................................ 21

    VLIST-2 ........................................................................................................................ 21

    VLIST-3-1 ..................................................................................................................... 22

    VLIST-3-2 ..................................................................................................................... 22

  APPENDIX A: NON-RESPONSIVENESS TO TEXAS AUDITS ...................................... 23

  2020 Audit ....................................................................................................................... 23

  Were There Any Benefits from the Audit? ....................................................................... 23

  Voter Count Then and Now .............................................................................................. 23

  Verified Suspended or Cancelled Common Sense .......................................................... 23

  The Practical Result of the Audit ..................................................................................... 24

  2022 Audit of Harris County ............................................................................................ 24

  APPENDIX B: AVERAGE AGE OF APPARENT REGISTRATION VIOLATIONS ............ 25

How to read this chart .......................................................................................................... 26

One more interest item: OTH-2 invalid voting method .............................................................. 26

Black Letter Law .................................................................................................................. 26

APPENDIX C: FEDERAL LAW TEXT ...................................................................................... 27

APPENDIX D: TEXAS ELECTION CODE ................................................................................. 29

APPENDIX E: TEXAS VOTER REGISTRATION APPLICATION ................................................. 30

APPENDIX F: VOTING ROSTERS ARE MOVING TARGETS .................................................... 31

Step One: Download data regularly from the SOS website .......................................................... 31

Step Two: Look for changes between roster snapshots ............................................................... 32

## Data Sources

All of the data sources that were used in performing our analysis have full chain of custody in terms of the download and data conversion. Essentially, four primary sources of data were used in this report:

1. **PIR-20230338** – Texas Voter Registration List – from 26 SEPT 2023.
   a. The file consists of 254 County files with Harris and Dallas spilling into a second file for a total of 256 TXT files.
   b. The CD was opened forensically, inserted into the drive, copied and MD5 check summed.
   c. The files were also downloaded from the SOS and verified that the MD5 checksums matched.
   d. The TXT files were converted to CSV files and imported into a Postgres database named **pb2023**.
   e. This data came with a serious price tag and a subsequent complaint to the Texas Attorney General's office was filed to protest the outrageous price for this data.

2. **PIR-20230348** – Texas Voter History for November 08, 2022 General Election
   a. This is a 254-county voter history for the 2022 General Election.
   b. Of importance, it contains all of the information from the voter registration list, but also includes the method of voting.
   c. Only those who voted in that election are present in this list.
   d. These files were retrieved from the same CD as the voter list above and the same forensics apply.
   e. These files were converted to CSV and then imported into a database table called: **txg1122**.

3. **G1122** Official Early Voting and Election Day Rosters from TX SOS Website.
   a. There is a disclaimer on this page that states that the data on this page originates from county election officials.
   b. This data is downloaded by running a computer program to gather 34 days of early voting, and one day of election day voting per county. This amounts to the download of 254x35 files which are then aggregated together and stored in the database table **vg1122**.
   c. Chain of custody is documented by video, packet capture, MD5 checksums on download, and affidavit of authenticity.

4. **NCOA DATA**
   a. The National Change of Address Data ultimately comes through the BCC Software group and from Cause for America as clerical interface.
   b. The data comes with a DSP Certification and a CASS Certification, and the files have an MD5 checksum prior to delivery to us to ensure validity.
   c. The data comes as 12 packets of county data in zip files.

**Special Statements**

<div style="background:#1a2a6c;color:white;padding:4px;">

### Statement Concerning Cancelled Voter Registrations
</div>

In response to a Public Information Request (PIR) the elections office of the Texas Secretary of State (SOS) informed us of the following rules regarding voter registration and cancellation thereof. This is a commentary of state election laws with links to the Texas Election Code (TEC).

https://www.sos.state.tx.us/elections/vr/index.shtml

More than 60 references to the Texas Election Code are in this analysis report. However, the key takeaway is this: if someone were to successfully argue they should not have been cancelled, the remedy is to be **REINSTATED** – **not** to be provided with a new registration.

```
Sec. 16.037. REINSTATEMENT OF REGISTRATION. (a) If the registrar determines after
cancellation of a registration that the registration should not have been canceled, the
registrar shall reinstate it. [emphasis added]
```

Additionally, a PIR was submitted to the SOS and the response indicates that there is no mechanism in the law which allows **an election judge** to overwrite a CANCELLED status and let a person vote. However, there is a mechanism for a CANCELLED status to be reinstated, and given this fact, we included cancelled voters as potential voters (or deadwood as defined in Department of Justice documents).

Note there is also a conflict with Federal law where voting identification numbers must be unique. Please see the DUP-1 details below for a discussion of the same person having different voter IDs – one cancelled and one verified.

Given these clarifications from the state, we used two approaches to these cancelled votes:

1. Any person who appears to be on the voter rolls more than once, and where we can show the multiple registrations are likely for the same person – a person who has a CANCELLED VUID **and** a VERIFIED VUID – that person's registration was not handled according to federal law. We counted those as two invalid registrations since we cannot be certain if either entry is valid. This is labeled DUP-1 in the discussion below and is presented on line 1 in Sections 1 and 2 on the scorecard.

2. We generally included cancelled voters in the other queries since there is a mechanism to vote and since the extra registration gives an opportunity to make modifications, vote, then modify again to cover up an illegal vote. We are not saying this took place – we are saying that deadwood in the registration is an opportunity for fraud as defined by the DOJ.

## Statement Regarding Voter Registration Negligence at State and County Levels

This negligence is highlighted in three areas.

1. APPENDIX A: NON-RESPONSIVENESS TO TEXAS AUDITS

   Texas Governor Greg Abbott called for an audit of the 2020 elections in four key Texas counties. Part of the findings resulted in a listing of commercial UPS stores where voters claimed to reside. Please see Appendix A for the details. Of the stores identified in the audit, there are still registrations from the same UPS stores on the books a year after that audit was completed.

2. APPENDIX B: AVERAGE AGE OF APPARENT REGISTRATION VIOLATIONS

   It is one thing to make a mistake. It is another thing to let a mistake fester in the system for many years.

   The data in Appendix B shows a very telling history of the apparent registration violations. It is bad that we have apparent violations, but what makes it worse is that the violations have been in the system for years. This indicates that the state level and county level voter registrars are not taking their Constitutional, federal, and state laws seriously.

3. APPENDIX F: VOTING ROSTERS ARE MOVING TARGETS

   The county voting roster is an official document of the state, and yet it is changing over time with insertions and deletions. This is something that needs an explanation.

**Abbreviations Used in this Document**

| Acronym | Definition |
|---------|------------|
| ADDR | Address |
| AGE | Age |
| DOJ | Department of Justice |
| DUP | Duplicate |
| EDR | Effective Date of Registration |
| G1122 | General Election of November 8, 2022 |
| HAVA | Help America Vote Act, 2002 |
| NCOA | National Change of Address database |
| NEG | Negligence |
| NVRA | National Voter Registration Act, 1993 |
| OTH | Other |
| PII | Personally Identifiable Information |
| PIR | Public Information Request |
| SOS | Secretary of State |
| SUS | Suspicious |
| TEC | Texas Election Code |
| USC | US Code |
| VLIST | Voting lists used in this report:<br>• State of Texas Voter Registration list (PIR-20230338)<br>• Texas Voter History for November 08, 2022 General Election County List (PIR-20230348)<br>• Official Early voting and Election Day Rosters from the Texas SOS website (G1122) |
| VUID | Voter Unique ID |

## Quick Reference

*Field IDs are hyperlinked to the appropriate table in the next section.*

**Field ID Color Key**

- Red = Illegal records
- Orange = suspicious records

| Field ID | Field Description | Scorecard Section | Scorecard Line # |
|---|---|---|---|
| ADDR-1 | Incomplete concise residential address | 1 | 2 |
| | | 2 | 2 |
| ADDR-23 | Suspicious unit number | 1 | 3 |
| | | 2 | 3 |
| ADDR-24 | Apartments with no number | 1 | 3 |
| | | 2 | 3 |
| ADDR-25 | Invalid mailing address | 1 | 3 |
| | | 2 | 3 |
| ADDR-4A, ADDR-4B | Commercial residential address US Post Office residential address | 1 | 4 |
| | | 2 | 4 |
| ADDR-5A, ADDR-5B | Totally blank permanent address Address with only a city | 1 | 5 |
| | | 2 | 5 |
| AGE-1 | Too old to be living | 1 | 7 |
| | | 2 | 7 |
| AGE-2 | Registered to vote before or on date of birth | 1 | 8 |
| | | 2 | 8 |
| AGE-3 | Registered before allowed age | 1 | 9 |
| | | 2 | 9 |
| DUP-1 | Full duplicates by name and DOB | 1 | 1 |
| | | 2 | 1 |
| DUP-2 | Duplicate VUIDs voted (state roll) | 2 | 11 |
| DUP-3 | Duplicate VUIDs voted county aggregate | 2 | 12 |
| NCOA-1 | No longer living at registered address | 1 | 6 |
| | | 2 | 6 |
| OTH-1 | VUID is zero (from aggregated county rolls) | 2 | 13 |
| OTH-2 | Invalid database voting method | 2 | 14 |
| SUS-1 | Non-alpha characters in names | 1 | 10 |
| | | 2 | 10 |
| SUS-2 | Deleted registrations | 1 | 11 |
| VLIST-1 | Discrepancies between voting lists | 2 | 15 |
| VLIST-2 | Voting method discrepancies | 2 | 16 |

| ADDR-1 | Incomplete Concise Residential Address |
|---|---|
| **Description** | A valid residential address is a requirement for voter registration. However, Texas very loosely defines what is required for a residential address. If a voter doesn't have a RESIDENTIAL address recognized by the USPS, then the voter must provide a "concise" description of where they live. A Rural Route number is not considered to be a residential address in the State of Texas.<br><br>These addresses were manually validated since this is an imprecise ruling from the law.<br><br>Here are some samples of entries that were supposed to be a concise description of a voter's residence:<br><br>• HWY 71 SULPHUR SPRINGS 75482 \| COUNTY: 112 – PRECI<br>• HWY 380<br>• 4TH ST<br><br>In these cases, the supposed address identifies a street, but this is not concise since it could be anywhere along the street.<br><br>Our working definition of "concise description" is that it resolves to a point on the earth, not an area. A voter registration recorded like this does not meet the demands of the law. It is the responsibility of the applicant AND the registrar of voters to adhere to the law, so all of these types of addresses have been flagged as ILLEGAL. |
| **Severity** | Illegal    A valid residence address is required by law. If the "concise address" is not concise, then the registration form was not correctly filled out and we marked these as illegal. |
| **Location** | Section 1: Line 2<br>Section 2: Line 2 |
| **Black Letter Law** | TEC 13.002<br><br>Application Required<br><br>```(7) the applicant's residence address or, if the residence has no address, the address at which the applicant receives mail and a concise description of the location of the applicant's residence;```<br><br>What is an insufficient address?<br>https://www.usglobalmail.com/blog/usps-insufficient-address/ |

| ADDR-23 | Suspicious Unit Number | |
|---|---|---|
| Description | An address has component parts, and when it is an apartment or other example of a single address with multiple units, then a mailing distinction must be made. When there is a unit type, there needs to be a valid unit number as well, with some exceptions.<br><br>We looked for unit numbers like these:<br><br>• "XX" or "XXX" or "XXXX"<br>• "?"<br>• "_" *(underscore)* | |
| Severity | Suspect | It is possible that "XXX" might be a real unit number, but it is suspicious. |
| Location | Section 1: Line 3 (aggregated ADDR-23, 24, & 25 together)<br>Section 2: Line 3 (aggregated ADDR-23, 24, & 25 together) | |
| Black Letter Law | APPENDIX E: TEXAS VOTER REGISTRATION APPLICATION<br><br>The registration form specifically requires the apartment number in both residence and mailing address.<br><br> | |
| Discussion | These have been marked SUSPECT in case there is a real apartment with a unit number of "XX". However, we generally interpreted "XX" or "XXX" or "XXXX" as incomplete. | |

| ADDR-24 | Apartments With No Number | |
|---|---|---|
| Description | When someone who lives in a multi-family residence registers to vote, an apartment or unit number must be provided for the registration to be legal. | |
| Severity | ILLEGAL | An apartment number must be provided for those living in multifamily residences, or the registration is illegal. |
| Location | Section 1: Line 3 (aggregated ADDR-23, 24, & 25 together)<br>Section 2: Line 3 (aggregated ADDR-23, 24, & 25 together) | |
| Black Letter Law | APPENDIX E: TEXAS VOTER REGISTRATION APPLICATION<br><br>The registration form specifically requires the apartment number in both residence and mailing address.<br><br> | |

| ADDR-25 | Invalid Mailing Address |
|---|---|
| **Description** | When a mailing address is provided by the registrant, it needs to be a valid mail-deliverable address. |
| **Severity** | Illegal | A complete mailing address that is recognized by the USPS must be entered if it is different from the residence address. |
| **Location** | Section 1: Line 3 (aggregated ADDR-23, 24, & 25 together)<br>Section 2: Line 3 (aggregated ADDR-23, 24, & 25 together) |
| **Black Letter Law** | APPENDIX E: TEXAS VOTER REGISTRATION APPLICATION<br><br>Note: A valid mailing address is required if mail cannot be delivered to the residential address. |



3 **Residence Address:** Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address)

| ADDR-4A ADDR-4B | Commercial Residential Address US Post Office Residential Address |
|---|---|
| **Description** | A UPS Store, a Post Office box or a commercial mail scanning and forwarding center does not represent where a person actually lives. |
| **Severity** | Suspect · A valid residence address is required by law. The voter registration form specifically instructs the applicant NOT to use "P.O. Box", "Rural Route" or a "Business address". So typically, we would flag these as ILLEGAL, however a provision exists that allows certain protected classes of people to register at their place of work. This will be a large minority of these results, but we marked these as SUSPECT in deference to that legal caveat. |
| **Location** | Section 1: Line 4 Section 2: Line 4 |
| **Black Letter Law** | TEC 13.002<br>Application Required<br><br>(7) the applicant's residence address or, if the residence has no address, the address at which the applicant receives mail and a concise description of the location of the applicant's residence;<br><br>APPENDIX E: TEXAS VOTER REGISTRATION APPLICATION<br><br>**3** Residence Address: Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address)<br><br>Additionally, the formal 2020 Audit listed this as an issue to be resolved. See page 47 in the document accessed by using below.<br>https://www.sos.state.tx.us/elections/fad/2020-Audit-Full.pdf |
| **Approach** | The NCOA data was obtained through the BCC Software group and from Cause for America as the clerical interface. First, using NCOA data we used the codes to find addresses that were Commercial Mail Handling addresses. This list was transferred to an excel spreadsheet and duplicates were manually removed.<br><br>Then volunteers looked at the google map street view for each and every location to make sure it was a mail handling location. |
| **Discussion** | There is a provision in Texas law where elected officials, law enforcement, or specially protected people such as domestic abuse victims can register at their place of work. It is possible that a UPS store or mail handling facility might have some of these specially handled people, but it is unlikely that this rises to the levels we are seeing. Accordingly, the names in this metric are not classified as illegal – just suspect.  Nonetheless, this requires and explanation for each instance from state election officials. |

| ADDR-5A ADDR-5B | Totally Blank Permanent Address Address With Only a City |
|---|---|
| **Description** | A permanent address is required by the registration form, at least a concise description, but totally blank is not allowed. |
| | In the second portion (5B) if the residential address does not have a house number or a street name, then a mailing address is required. |
| | So, these addresses are all illegal. |
| **Severity** | Illegal · A valid, legal residence address must exist in order to know if the applicant actually lives in the jurisdiction in which he or she wants to vote. |
| **Location** | Section 1: Line 5<br>Section 2: Line 5 |
| **Black Letter Law** | TEC 13.002 |
| | Application Required |
| | (7) the applicant's residence address or, if the residence has no address, the address at which the applicant receives mail and a concise description of the location of the applicant's residence; |
| | APPENDIX E: TEXAS VOTER REGISTRATION APPLICATION |
| | **3** **Residence Address:** Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address) |

| AGE-1 | Too Old To Be Living |
|---|---|
| **Description** | At the time this analysis was completed, the oldest known human residing in the US is Edie Ceccarelli, born Feb. 8, 1908. Anyone older than this is not a valid registration. It might be a record of a person with a mistake or error in the date of birth field, but this is not a valid voter registration. |
| **Severity** | **Illegal** — No one who claims to be older than 115 years of age should be allowed to vote; their registration should not be entered into the voter rolls. |
| **Location** | Section 1: Line 7 <br> Section 2: Line 7 |
| **Black Letter Law** | **TEC 13.001** <br><br> Must be 17 years and 10 months of age <br><br> (b) To be eligible to apply for registration, a person must, on the date the registration application is submitted to the registrar, be at least 17 years and 10 months of age and satisfy the requirements of Subsection (a) except for age. <br><br> **Title 52 USC Ch. 205: § 20507** <br><br> Requirements with respect to administration of voter registration. <br><br> (a)(4) Voting and Elections <br> In the administration of voter registration for elections for Federal office, each State shall: <br> (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; |
| **Discussion** | The oldest person in the United States was born on 2/8/1908. If a voter on the voter roll shows the birthdate is prior to 2/8/1908, then either the DOB is wrong or the "voter" is almost certainly deceased. <br><br> Many of the entries that claim the voter is older than 115 years old have been exactly set at 1900-01-01. <br><br> There are a few reasons as to why this number is present.  One is that there was a brief time in Texas law where the birthdate was not a required field. In such a case, it is said that 1900-01-01 was used as a placeholder in the system. <br><br> Frankly it does not matter – the data is wrong, it is NOT accurate, and it needs to be fixed. <br><br> It would be so easy to fix this statewide; it is not a large number. Simply mail a postcard to everyone on this list and ask them to respond and update their registration data. This is the same process used when the state uses the US Postal Service information to identify when a person moves. |

| AGE-2 | Registered To Vote Before or On Date of Birth | |
|---|---|---|
| **Description** | It is not legally possible to register to vote on or before the date of being born. | |
| **Severity** | Illegal | The election official should not have allowed these types of registrations to be entered into the system. |
| **Location** | Section 1: Line 8<br>Section 2: Line 8 | |
| **Black Letter Law** | [TEC 13.001](#)<br>Must be 17 years and 10 months of age<br><br>(b) To be eligible to apply for registration, a person must, on the date the registration application is submitted to the registrar, be at least 17 years and 10 months of age and satisfy the requirements of Subsection (a) except for age. | |
| **Discussion** | If the effective date of registration is less than or equal to the birthdate, then it is not valid. | |

| AGE-3 | Registered Before Allowed Age | |
|---|---|---|
| **Description** | It is not legal for someone to register to vote more than two months prior to their 18th birthday. Doing so is illegal. However, it is possible that the person had originally registered illegally, but today they are no longer in violation. | |
| **Severity** | Suspect | Given the above situation we mark these as suspect since it's not clear if the person is currently illegal. |
| **Location** | Section 1: Line 9<br>Section 2: Line 9 | |
| **Black Letter Law** | [TEC 13.001](#)<br><br>Must be 17 years and 10 months of age<br><br>(b) To be eligible to apply for registration, a person must, on the date the registration application is submitted to the registrar, be at least 17 years and 10 months of age and satisfy the requirements of Subsection (a) except for age.<br><br>[TEC 13.143](#)<br><br>Voter Qualifications and Registration<br><br>Sec. 13.143.  EFFECTIVE DATE OF REGISTRATION;PERIOD OF EFFECTIVENESS.<br>(a)  Except as provided by Subsections (b) and (e), if an applicant's registration application is approved, the registration becomes effective on the 30th day after the date the application is submitted to the registrar or on the date the applicant becomes 18 years of age, whichever is later.<br>(b)  A registration is effective for purposes of early voting if it will be effective on election day.<br>(c)  A registration is effective until canceled under this code. | |

| DUP-1 | Full Duplicates by Name and DOB |
|---|---|
| **Description** | We searched the roster for an exact match for the first, middle, and last name along with the date of birth looking for duplicate entries. |
| **Severity** | Suspect — Duplicates by name and date of birth could possibly catch two people with the same name, especially when names are very common and when middle name is absent. We flag these as suspect due to this uncertainty. The SOS has more details available to determine false positives that are not available to the public. |
| **Location** | Section 1: Line 1<br>Section 2: Line 1 |
| **Black Letter Law** | **Title 42 Chapter 20 Subchapter I-H Section Sec. 1973gg § (c)(2)(b)**<br>(2) The voter registration application portion of an application for a State motor vehicle driver's license<br>    (B) may require only the minimum amount of information necessary to –<br>        (i) prevent duplicate voter registrations; and<br>        (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process<br><br>**Title 52 USC Ch. 209 § 21083 (a)**<br>(a) Computerized statewide voter registration list requirements<br> (1) Implementation<br>    (A) In general<br>        Except as provided in subparagraph (B), each State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State<br><br>**TEC 13.072 Action on Application (in violation of HAVA act)**<br><br>  (b) After approval of an application by an applicant who was registered in another county at the time of application, the registrar shall deliver written notice of the applicant's change of residence to the other county's registrar and include in the notice the applicant's name, former residence address, and former registration number, if known.<br><br>**TEC 64.012: Illegal Voting**<br><br>  Sec. 64.012. ILLEGAL VOTING. (a) A person commits an offense if the person knowingly or intentionally:<br>  (1) votes or attempts to vote in an election in which the person knows the person is not eligible to vote;<br>  (2) votes or attempts to vote more than once in an election;<br>  (3) votes or attempts to vote a ballot belonging to another person, or by impersonating another person; |

| DUP-2 | Duplicate VUIDs Voted |
|---|---|
| **Description** | Duplicate voters from the official state voter roll. |
| **Severity** | Suspect | These are hard duplicates where a person voted multiple times according to the official state voter roll. |
| **Location** | Section 2: Line 11 |
| **Black Letter Law** | TEC 64.012<br><br>Illegal Voting<br><br>Sec. 64.012.  ILLEGAL VOTING.  (a)  A person commits an offense if the person knowingly or intentionally:<br>(1)  votes or attempts to vote in an election in which the person knows the person is not eligible to vote;<br>(2)  votes or attempts to vote more than once in an election;<br>(3)  votes or attempts to vote a ballot belonging to another person, or by impersonating another person; |
| **Discussion** | Here is an example of someone we found that appears to be a duplicate registration.  The name has been changed to protect PII.<br><br>3719423 BRAZOS  21  13 1000797607  FITZ JEMMA  2022-06-06  V  AV<br>3738091 BRAZOS  21  13 1000797607  FITZ JEMMA  2022-06-06  V  AV<br><br>This shows that "Jemma Fitz" apparently voted twice using the same VUID. One would think that the state database would do better than this, but in manually checking the raw data from the state, in fact, this VUID is directly listed twice with vote type of AV. |

| DUP-3 | Duplicate VUIDs Voted County Aggregate |
|---|---|
| **Description** | Duplicate voters from the official aggregated county voter rolls. |
| **Severity** | Suspect | Voting more than once in an election is illegal. |
| **Location** | Section 2: Line 12 |
| **Black Letter Law** | TEC 64.012<br><br>Illegal Voting<br><br>Sec. 64.012.  ILLEGAL VOTING.  (a)  A person commits an offense if the person knowingly or intentionally:<br>(1)  votes or attempts to vote in an election in which the person knows the person is not eligible to vote;<br>(2)  votes or attempts to vote more than once in an election;<br>(3)  votes or attempts to vote a ballot belonging to another person, or by impersonating another person; |
| **Discussion** | This is the same as the DUP-2 but it's using the aggregate voter list (from the counties), see DUP-2 file notes for details. |

| NCOA-1 | No Longer Living at Registered Address |
|---|---|
| **Description** | According to the NCOA list we looked for people who moved away from their address prior to May 01, 2022 and yet they voted according to the state roster in November. If someone truly left the county or state in April – they should not have voted in November. |
| **Severity** | Suspect — NCOA data is normally accurate, but since this is an external database, we mark these as suspect and not illegal. |
| **Location** | Section 1: Line 6<br>Section 2: Line 6 |
| **Black Letter Law** | TEC 11.001<br><br>Eligibility to Vote<br><br>(a)  Except as otherwise provided by law, to be eligible to vote in an election in this State, a person must:<br>    (1)  be a qualified voter as defined by Section 11.002 on the day the person offers to vote;<br>    (2)  be a resident of the territory covered by the election for the office or measure on which the voter desires to vote; |

| OTH-1 | VUID is Zero |
|---|---|
| **Description** | The VUID is Zero from the aggregated county voter rolls. How can the Texas Secretary of State Election Department accept this from a county? |
| **Severity** | Illegal — A zero voter ID is not unique. This violates HAVA and is an illegal vote. |
| **Location** | Section 2: Line 13 |
| **Black Letter Law** | Title 52 USC Ch. 209 § 21083 (a)<br><br>Computerized statewide voter registration list requirements<br><br>(a) Computerized statewide voter registration list requirements<br>  (1) Implementation<br>    (A) In general<br>        Except as provided in subparagraph (B), each State, acting<br>        through the chief State election official, shall implement,<br>        in a uniform and nondiscriminatory manner, a single,<br>        uniform, official, centralized, interactive computerized<br>        statewide voter registration list defined, maintained, and<br>        administered at the State level that contains the name and<br>        registration information of every legally registered voter<br>        in the State and assigns a unique identifier to each<br>        legally registered voter in the State |

| OTH-2 | Invalid Database Voting Method |
|---|---|
| **Description** | The voting methods shown in the database show the valid voting methods as defined by the legend provided with the data from the Texas SOS. We found voting method codes that were not provided with the legend. We as citizens cannot determine if they voted or if this is something else. These are marked as suspect. |
| **Severity** | Suspect — Texas SOS provides data that they cannot explain and evidently are not valid values. |
| **Location** | Section 2: Line 14 |
| **Black Letter Law** | This is a matter of common sense not black letter law. If the state gives a legend of allowable values, and if there is data in the roster that does not comply with the legend, then it is up to the state to explain why the state's database is wrong, and what the non-standard values mean. |

| SUS-1 | Non-alpha Characters in Names |
|---|---|
| **Description** | Legal names containing numerals or special characters are very uncommon. |
| **Severity** | Suspect — It is extremely rare that a legal name would contain numbers or special characters, but we mark these as suspect not illegal. |
| **Location** | Section 1: Line: 10<br>Section 2: Line: 10 |
| **Black Letter Law** | Title 52 USC Ch. 205: § 20504<br><br>(1) Each State shall include a voter registration application form for elections for Federal office as part of an application for a State motor vehicle driver's license.<br>(2) The voter registration application portion of an application for a State motor vehicle driver's license-<br>  (A) may not require any information that duplicates information required in the driver's license portion of the form (other than a second signature or other information necessary under subparagraph (C));<br>  (B) may require only the minimum amount of information necessary to-<br>    (i) prevent duplicate voter registrations; and<br>    (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process; |
| **Discussion** | To the untrained eye, the following two names appear to be identical:<br><br>  • BOB HARTFIELD   • B0B HARTFIELD<br><br>However, the second name has the numeral zero instead of the letter "o" in the name Bob.<br><br>Some states allow numerals in a name based on information at:<br>https://www.usbirthcertificates.com/articles/us-naming-laws-by-state<br><br>However, this is also a way to hide a duplicate name. So, this is not an absolute indication of an apparent illegal registration, but it is a suspicious entry that could be used to insert duplicates into the system. These should be investigated. |

| SUS-2 | Deleted Registrations |
|---|---|
| **Description** | We found people who voted according to the county roster, but are no longer listed in the state registration list.  This means that the voters were not cancelled but fully deleted.<br><br>Another way of saying this is that the county states that a person voted, but the state has no record of that person in the registration list as of October 2023. Given the fact that there is a two-year retention period, this should not happen. |
| **Severity** | Suspect     This is a very bad problem; it appears that some voter records were deleted incorrectly, but we cannot be certain that these are illegal, so we marked them as Suspect. |
| **Location** | Section 1: Line:11 |
| **Black Letter Law** | https://www.sos.state.tx.us/elections/vr/index.shtml<br><br>SOS guidance on voter registration mentions that they purge cancelled voters every two years as part of their retention policy.<br><br>`If the registrar receives a statement of residence that was executed by a voter at an election before the date the voter's registration was required to be canceled, the registrar must reinstate the registration`[66]`. If it is discovered that the voter was canceled during the biennial suspense purge and the voter has voted in an election after being placed on the suspense rolls, then the voter registrar should reinstate the voter. In such cases, it is probable that no Statement of Residence was requested of the voter, which was why the voter's information was not previously updated.`<br><br>Black letter law does not mandate this purge – but since incorrectly purging voter records within two years is a violation of  this SOS guidance, we list these as suspicious registrations. |

| VLIST-1 | Discrepancies Between Voting Lists |
|---|---|
| **Description** | Distinct VUIDs are in the state roster but not in the county rosters. |
| **Severity** | Suspect | This could be summarized that the state's left hand does not know what is in the state's right hand. |
| **Location** | Section 3 |
| **Black Letter Law** | This is another common-sense issue. If there is a list of voters in one place, and there is a parallel list in another place, and if those numbers do not match, then this needs investigation. Please note the county data comes from the SOS official website as illustrated below: |



**2022 NOVEMBER 8TH GENERAL ELECTION (November)**

Disclaimer: All information displayed is provided by county election officials. The Office of the Secretary of State does not alter or modify the data provided in any way. For questions related to this information, please contact the appropriate county election official.

Past Early Voting Totals

| Official Early Voting Turnout by Date | Official Polling Place Information by County | Official Election Day Turnout by County |
|---|---|---|
| Last Updated: 12-15-2022 12:00:00 AM | Last Updated: 12-15-2022 12:00:00 AM | Last Updated: 12-15-2022 12:00:00 AM |
| -- Select Early Voting Date -- | -- Select County -- | -- Select Date -- |

Previous   Submit

Notice it is the **OFFICIAL** Early Voting Turnout by Date.

It is the **Official** Polling Place Information.

And it is the **Official** Election Day Turnout by County.

Why is an **official** record divergent from another official record?

| VLIST-2 | Voting Method Discrepancies |
|---|---|
| **Description** | Inconsistent vote reporting |
| **Severity** | Suspect | Why would the state voter roll show someone voting by mail, but the county shows that vote was cast on election day?  Since we don't know if this is a clerical error, we list these as suspect, but they are troublesome. |
| **Location** | Section 3 |
| **Black Letter Law** | Common sense |
| **Approach** | This is comparing state vs. county records. The valid matches should be: <br>• EV = IN-PERSON<br>• AV = MAIL-IN<br>• ED = GE<br>This determines if there are any people with inconsistent voting methods. |

| VLIST-3-1<br>VLIST-3-2 | Total votes cast from state voter roll<br>Total votes cast from county voter roll | |
|---|---|---|
| **Description** | This is used in section 3 on the scorecard and provides the values for state and county. The value for the website is hardcoded. | |
| **Severity** | N/A | N/A |
| **Location** | Section 3 | |

# APPENDIX A: NON-RESPONSIVENESS TO TEXAS AUDITS

This section shows that the Texas election officials are not being diligent in addressing audit findings.

## 2020 Audit

https://www.sos.texas.gov/elections/forms/phase1-progress-report.pdf

Phase 1 of the audit was described by then Secretary of State, John B. Scott:

> On September 23, 2021, the office of the Texas Secretary of State (SOS) announced a full forensic audit of the November 2020 General Election in Collin, Dallas, Harris, and Tarrant counties. Combined, a total of 3,885,875 votes were cast in these four counties in the November 2020 election – approximately 35% of the roughly 11.3 million votes cast statewide.

Then the final report was made available, and you can find it here:

https://www.sos.state.tx.us/elections/fad/2020-Audit-Full.pdf

Page 47 in the audit report discusses voters who claimed to reside at a commercial mailbox location; this was a negative finding for all four counties in the audit.

The graphics in that PDF file were so hard to interpret that a PIR was submitted to the SOS to retrieve the data in a readable format. The goal was to see how many of these addresses are still on the books – even after being identified as problematic. We then came up with the four-county list of addresses matching the original report.

## Were There Any Benefits from the Audit?

Our analysis results are shown below:

| County | Voter Count | Voter Count Today | V Verified | S Suspended | C Cancelled |
|--------|------------:|------------------:|-----------:|------------:|------------:|
| COLLIN | 35 | 32 | 10 | 21 | 1 |
| DALLAS | 329 | 131 | 86 | 16 | 29 |
| HARRIS | 687 | 694 | 605 | 36 | 53 |
| TARRANT | 320 | 501 | 282 | 173 | 46 |
| **TOTALS** | **1371** | **1358** | **983** | **246** | **129** |

## Voter Count Then and Now

This was a mixed metric where Collin and Dallas counties had fewer voters at these suspicious addresses, **but Harris and Tarrant increased the number of voters at these locations.** This shows negligence and continued harm to the accuracy of the voter rolls.

## Verified Suspended or Cancelled Common Sense

In a perfect world – what should we see?  If the registration is illegal, common sense would indicate that the person should be CANCELLED – and the election official must follow the cancellation guidelines in the TEC and Texas SOS procedures. It might be that some people could appeal against the cancellation and would be reinstated with a proper address.

However, what we are seeing needs to be investigated further:

- For those voters who currently are VERIFIED – we ask why?
- Are these new registrations?
- Were these registrations challenged with a postcard and it came back stating that they really live there (even though the address is illegal)?

## The Practical Result of the Audit

Originally in 2020, there were 1,371 illegally registered voters. At the time of our analysis, that number was 1,358, but the key takeaway is that 1,229 (983+246) of these illegally registered voters are still able to vote in elections today.

If a voter is suspended, all they have to do is fill out a Statement of Residence form, and they are allowed to vote and their status is changed back to Verified. In this scenario, the person is back on the registration roster at the same illegal address and the possible benefit of the audit is cancelled.

## 2022 Audit of Harris County

The SOS audit of Harris County's voter information in 2023 does not foster confidence that many issues previously identified have been corrected. Below is an excerpt from the "Preliminary Findings Report Executive Summary November 8, 2022 General Election Harris County":

Based on the information obtained from Harris County, the Secretary of State is unable to definitively identify the exact cause of this discrepancy. It is unknown whether this inconsistency is due to ineffective county procedures or the mismanagement of election and voter registration data. This is a sizeable discrepancy that reflects the failure to accurately align various election systems utilized in Harris County.

| Statewide Voter Registration System | Harris County Reports | | |
| --- | --- | --- | --- |
| | Official List of Voters | Cumulative Results Report | Canvass Report |
| 2,568,463 | 2,577,746 | 2,543,162 | 2,543,162 |

Figure A: Registered Voter Disparities Across Reporting Systems

Unfortunately, the analysis we performed shows that not much has changed since the 2020 audit.

Here is a link to the Preliminary Findings Report Executive Summary November 8, 2022 General Election Harris County:

A summary of their findings:
- Data Inconsistencies Across Different Platforms
- Ballot Paper Distributions Did Not Follow Election Code Requirements
- Equipment Issues Interfered with Voting Activities
- Missing or Incomplete Paperwork was Common on Election Day
- Training for Election Judges and Clerks was Insufficient

# APPENDIX B: AVERAGE AGE OF APPARENT REGISTRATION VIOLATIONS

It is one thing to make a mistake. It is another thing to let a mistake fester in the system for years. The queries in Part 1 of the scorecard are all tied to individual registrations in the voter registration list. The table below duplicates this portion, but instead of giving the count of apparent violations, it gives the average number of years of the EDR (Effective Date of Registration) for each of the apparent violations.

The result we see is that the Texas SOS and its partners of 254 County Registrars are not taking their HAVA responsibility seriously of keeping the voter rolls accurate.

The table below gives an indication of how long registration issues have been on the books. This uses the simple formula of looking at the effective date of registration. Here is the algorithm for each category:

1. Figure out the registrations that fall under the category
2. Gather the EDR and calculate the age of the EDR to today. In SQL this is: **now() – edr**
3. Take the average of the dates

| ID | APPARENT INVALID OR ILLEGAL REGISTRATIONS | AVG YEARS ON ROLLS |
|---|---|---|
| **Part 1: Are voter rolls accurate, as required by the National Voter Registration Act of 1993? (based on September 2023 data from the State of Texas)** | | |
| **DUP-1** | Full duplicates by name and DOB | 8.92 |
| **DUP-2** | Duplicate VUIDs Voted (state roll) | 12.86 |
| **DUP-3** | Duplicate VUIDs Voted (county roll) | 20.84 |
| **ADDR-1** | Incomplete concise residential address | 30.22 |
| **ADDR-23** | Suspicious Unit Number | 7.11 |
| **ADDR-24** | Apartments with no number | 9.34 |
| **ADDR-25** | Invalid mailing address | 24.32 |
| **ADDR-4A** | Commercial Residential Address | 9.61 |
| **ADDR-4B** | US Post Office Residential Address | 8.89 |
| **ADDR-5A** | Totally blank permanent address | 11.21 |
| **ADDR-5B** | Address with only a city | 6.55 |
| **AGE-1** | Too old to be living | 45.87 |
| **AGE-2** | Registered to vote before or on date of birth | 80.11 |
| **AGE-3** | Registered before allowed age | 35.87 |
| **SUS-1** | Non-alpha Characters in Names | 13.09 |
| **OTH-2** | Invalid Database Voting Method | 1.96 |

See the following table for information on how to read this chart and why this matters.

© 2024 United Sovereign Americans, Inc     2/6/24

## How to read this chart

For example, ADDR-1 "Incomplete concise residential address" value is 30.22 years. The way you read this is:

> Of all the people who seemingly have an illegal concise address, the average age of that registration presence in the database is approximately 30 years. This means that these wrong addresses have been on the books for a LONG time and nothing has been done to clean them up.

Or look at SUS-1 "symbols or numbers in the name". The average length of time in the database of those registrations is 13 years. You would think that over the past 13 years that numerals in the names would be a red flag to county and state registrars.

## One more interest item: OTH-2 invalid voting method

This category shows a voter's voting method in the official database uses a status that is not included in the supplied legend and explanation of the codes. The undefined codes started appearing two years ago.

The official database shows a voter's voting method with an undefined status that was not supplied in the legend or explanation of the codes. Apparently, whatever is happening here is a relatively new practice.

## Black Letter Law

These laws listed below form the basis that county and state registrars are responsible for keeping the voting rolls clean.

| | |
|---|---|
| **Legal Requirements** | 14th Amendment to the United States Constitution<br><br>HAVA: Help America Vote Act, 2002, 52 USC Ch. 209<br><br>TEC:<br><br>13.072. ACTION ON APPLICATION. (a) Unless the registrar challenges the applicant, the registrar shall approve the application<br><br>13.074 CHALLENGE OF APPLICANT. (a) If after determining that an application complies with Section 13.002 and indicates that the applicant is eligible for registration, the registrar has reason to believe the applicant is not eligible for registration or the application was submitted in an unauthorized manner, the registrar shall challenge the applicant<br><br>13.079 (c) If the registrar determines that the applicant is not eligible for registration or that the manner of submission of the application was unauthorized, the registrar shall reject the application. |

# APPENDIX C: FEDERAL LAW TEXT

This appendix provides the actual text of the portion of the federal laws being addressed.

| Law | Law section | Table Reference |
|-----|-------------|-----------------|
| HAVA | **SEC. 303, § (a)(2)(B) CONDUCT**<br>Computerized Statewide Voter Registration List Requirements and Requirements for Voters Who Register by Mail | DUP-1, OTH-1 |

The list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that—
(i)  the name of each registered voter appears in the computerized list;
(ii)  only voters who are not registered or who are not eligible to vote are removed from the computerized list; and
(iii) duplicate names are eliminated from the computerized list.

https://www.eac.gov/sites/default/files/eac_assets/1/6/HAVA41.PDF

| Law | Law section | Table Reference |
|-----|-------------|-----------------|
| NVRA | **Title 42 Chapter 20 Subchapter I-H Section Sec. 1973gg § (c)(2)(b)**<br>Findings and Purposes | DUP-1 |

(2) The voter registration application portion of an application for a State motor vehicle driver's license
    (B) may require only the minimum amount of information necessary to –
        (i) prevent duplicate voter registrations; and
        (ii) enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process

https://www.fvap.gov/uploads/FVAP/Policies/nvralaw.pdf

| Law | Law section | Table Reference |
|-----|-------------|-----------------|
| NVRA | Title 52 USC Ch. 205: § 20501<br>National Voter Registration - Findings and purposes | DUP-3, OTH-1, SUS-1, SUS-2, NCOA-1, DUP-1 |

**Findings**
The Congress finds that—
(1) the right of citizens of the United States to vote is a fundamental right;
(2) it is the duty of the Federal, State, and local governments to promote the exercise of that right

**Purposes**
The purposes of this chapter are—
  (1) to protect the integrity of the electoral process; and
  (2) to ensure that accurate and current voter registration rolls are maintained.

https://uscode.house.gov/view.xhtml?path=%2Fprelim%40title52%2Fsubtitle2%2Fchapter205&edition=prelim

| Law | Law section | Table Reference |
|-----|-------------|-----------------|
| NVRA | Title 52 USC Ch. 205: § 20504<br>Simultaneous application for voter registration and application for motor vehicle driver's license. | SUS-1 |

Section 20504 (C)(2)(B) the following about motor voter information from Vehicle Registration office to Voter Roll in that they:
    (B) may require only the minimum amount of information necessary to:
        (i) prevent duplicate voter registrations; and
        (ii) enable state election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process;

https://uscode.house.gov/view.xhtml?path=/prelim@title52/subtitle2/chapter205&edition=prelim

| Law | Law section | Table Reference |
|-----|-------------|-----------------|
| NVRA | Title 52 USC Ch. 205: § 20507<br><br>Requirements with respect to administration of voter registration. | AGE-1 |

```
(a)(4) Voting and Elections
In the administration of voter registration for elections for Federal office, each State
shall:
(4) conduct a general program that makes a reasonable effort to remove the names of
ineligible voters from the official lists of eligible voters by reason of (A) the death
of the registrant;
```
https://uscode.house.gov/view.xhtml?path=/prelim@title52/subtitle2/chapter205&edition=prelim

| Law | Law section | Table Reference |
|-----|-------------|-----------------|
| NVRA | Title 52 USC Ch. 209 § 21083 (a)<br><br>Computerized statewide voter registration list requirements | DUP-1, OTH-1 |

```
(a) Computerized statewide voter registration list requirements
  (1) Implementation
    (A) In general
        Except as provided in subparagraph (B), each State, acting through
        the chief State election official, shall implement, in a uniform and
        nondiscriminatory manner, a single, uniform, official, centralized,
        interactive computerized statewide voter registration list defined,
        maintained, and administered at the State level that contains the
        name and registration information of every legally registered voter
        in the State and assigns a unique identifier to each legally
        registered voter in the State
```
https://uscode.house.gov/view.xhtml?req=(title:52%20section:21083%20edition:prelim)

# APPENDIX D: TEXAS ELECTION CODE

This appendix provides the text for the portions of the Texas election codes that are being addressed.

| Law | Description | Scorecard Reference |
|---|---|---|
| **TEC 11.001** | Eligibility to Vote | NCOA-1 |
| (a)   Except as otherwise provided by law, to be eligible to vote in an election in this State, a person must:<br>    (1)  be a qualified voter as defined by Section 11.002 on the day the person offers to vote;<br>    (2)  be a resident of the territory covered by the election for the office or measure on which the person desires to vote;<br>https://statutes.capitol.texas.gov/GetStatute.aspx?Code=EL&Value=11.001 | | |
| **TEC 13.001** | Must be 17 years and 10 months of age | AGE-1, AGE-2, AGE-3 |
| (b) To be eligible to apply for registration, a person must, on the date the registration application is submitted to the registrar, be at least 17 years and 10 months of age and satisfy the requirements of Subsection (a) except for age.<br>https://statutes.capitol.texas.gov/Docs/EL/htm/EL.13.htm#13.001 | | |
| **TEC 13.002** | Application Required | ADDR-1, ADDR-4, ADDR-5 |
| (7) the applicant's residence address or, if the residence has no address, the address at which the applicant receives mail and a concise description of the location of the applicant's residence;<br>https://statutes.capitol.texas.gov/GetStatute.aspx?Code=EL&Value=13.002 | | |
| **TEC 13.072** | Action on Application (in violation of HAVA act) | DUP-1 |
| (b) After approval of an application by an applicant who was registered in another county at the time of application, the registrar shall deliver written notice of the applicant's change of residence to the other county's registrar and include in the notice the applicant's name, former residence address, and former registration number, if known.<br>https://statutes.capitol.texas.gov/Docs/EL/htm/EL.13.htm#13.072 | | |
| **TEC 13.143** | Voter Qualifications and Registration | AGE-3 |
| Sec. 13.143.  EFFECTIVE DATE OF REGISTRATION;PERIOD OF EFFECTIVENESS.<br>(a)  Except as provided by Subsections (b) and (e), if an applicant's registration application is approved, the registration becomes effective on the 30th day after the date the application is submitted to the registrar or on the date the applicant becomes 18 years of age, whichever is later.<br>(b)  A registration is effective for purposes of early voting if it will be effective on election day.<br>(c)  A registration is effective until canceled under this code.<br>https://statutes.capitol.texas.gov/GetStatute.aspx?Code=EL&Value=13.143 | | |
| **TEC 64.012** | Illegal Voting Full duplicates by name and DOB | DUP-1 |
| Sec. 64.012.  ILLEGAL VOTING.  (a)  A person commits an offense if the person knowingly or intentionally:<br>(1)  votes or attempts to vote in an election in which the person knows the person is not eligible to vote;<br>(2)  votes or attempts to vote more than once in an election;<br>(3)  votes or attempts to vote a ballot belonging to another person, or by impersonating another person;<br>https://statutes.capitol.texas.gov/GetStatute.aspx?Code=EL&Value=64.012 | | |

## APPENDIX E: TEXAS VOTER REGISTRATION APPLICATION

### Texas Voter Registration Application

Prescribed by the Office of the Secretary of State          VR17.2021 E13

For Official Use Only

Please complete sections by printing LEGIBLY. If you have any questions about how to fill out this application, please call your local voter registrar.

**1** **These Questions Must Be Completed Before Proceeding** (Check one)

☐ New Application     ☐ Change of Address, Name, or Other Information     ☐ Request for a Replacement Card

| Are you a United States Citizen? | ☐ Yes | ☐ No |
|---|---|---|
| Will you be 18 years of age on or before election day? | ☐ Yes | ☐ No |

If you checked 'No' in response to either of the above, do not complete this form.

| Are you interested in serving as an election worker? | ☐ Yes | ☐ No |
|---|---|---|

**2** 

| Last Name Include Suffix if any (Jr, Sr, III) | First Name | Middle Name (if any) | Former Name (if any) |
|---|---|---|---|
| | | | |

**3** Residence Address: Street Address and Apartment Number. If none, describe where you live. (Do not include P.O. Box, Rural Rt. or Business Address)

City | TEXAS

County | Zip Code

**4** Mailing Address: Street Address and Apartment Number. (If mail cannot be delivered to your residence address.)

City | State

Zip Code

**5** City and County of Former Residence in Texas

**6** Date of Birth: (mm/dd/yyyy)  ☐☐/☐☐/☐☐☐☐

**7** Gender (Optional)  ☐ Male  ☐ Female

**8** Telephone Number (Optional) Include Area Code  (☐☐☐)☐☐☐—☐☐☐☐

**9** Texas Driver's License No. or Texas Personal I.D. No. (Issued by the Department of Public Safety)

☐☐☐☐☐☐☐☐

If no Texas Driver's License or Personal Identification, give last 4 digits of your Social Security Number

XXX-XX-☐☐☐☐

☐ I have not been issued a Texas Driver's License/Personal Identification Number or Social Security Number.

**10** I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law. Conviction of this crime may result in imprisonment up to one year in jail, a fine up to $4,000, or both. Please read all three statements to affirm before signing.

- I am a resident of this county and a U.S. citizen;
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

X _____     Date ___ / ___ / ___

Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.

# APPENDIX F: VOTING ROSTERS ARE MOVING TARGETS

When a person votes in an election, that event happens in time and space. Voter rosters records are kept as official Texas documents. It turns out that keeping tabs on past election results is not as easy as it might seem.

For each election, the SOS provides daily early voting and election day rosters. The official page looks something like this:



https://earlyvoting.texas-election.com/Elections/getElectionDetails.do

Note that these are official results. And yet, note that the claim is that these results were last updated 12-15-2022. This is an absolutely false statement. The underlying numbers in this voter roll are changing, sometimes daily, and for many months after an election. We will give one example from the November 2022 election as a sample of the things that you might find in this "official" record.

Since this analysis report shall become a public record, the names of the voter in question, the voter's address, and the voter ID are modified to preserve the identity of this voter. The unredacted names and identity of this person (along with many others) can be revealed directly to law enforcement or to the SOS office upon request.

## Step One: Download data regularly from the SOS website

We regularly download the public data from the SOS website for the federal elections in the past few years. In particular, we have snapshots of the early voting roster for the November 2022 election taken on the following days:

- 11/08/22 (Election day)
- 12/15/22
- 12/25/22
- Governor Gregg Abbott certified the federal races on 01/03/23 (no snapshot this day)
- 01/05/23
- 02/24/23
- 03/01/23
- 03/31/23
- 04/27/23
- 05/27/23
- 06/26/23
- 01/27/24

**Step Two: Look for changes between roster snapshots**

Since Governor Abbott certified the election on January 03, 2023, we thought it would be good to compare the rosters for January 05, 2023, with March 31, 2023. Surely, we would expect Governor Abbott to be certain that his certification is backed by true numbers.



And yet we find an anomaly as we look at this difference. This is blurred purposely, but you will see 3 yellow lines that have been inserted. This means that between January, 2023 and March, 2023, these 3 voters were added to the voter roll.

But then we come to the focus of this report. To protect PII, we'll call him "Henry Sneed Glaton" from Bowie County.



Again, this is blurred but you see a red and yellow line – this difference is noted by one line being removed, and another (different) line added as a replacement. By changing the names, here is what it looks like:

*Download-date/vote-date: "COUNTY", "Full Name", VUID, "Voting-Method", "Precinct"*

230105/20221010: "BOWIE","GLATON, HENRY SNEED","11111111111","MAIL-IN","2C"

230224/20221010: "BOWIE","GLATON, HENRY SNEED","22222222222","MAIL-IN","2C"

Here is how to read this:

Mr. Glaton is shown as a voter who mailed in a ballot, and it was processed on 10/10/2022. On 01/05/2023 it shows Mr. Glaton having a unique voter ID of 1111111111. However, on 02/24/2023, seven weeks later, it shows that Mr. Glaton's unique voter ID is not that unique – it was changed to 2222222222.  Who changed it and why?

However, it gets worse – it turns out:

1. There is a Mr. Glaton in the Texas Voter Registration database with VUID of 1111111111 and voting status is Verified (V). That is where the good news stops.
2. The Official State of Texas voting roster for the General Election 2022 does not list Mr. Glaton with VUID 111111111 as having voted.
3. Further, there is no person in the **state** voter registration with VUID of 2222222222.
4. And finally, there is no record of any person voting with VUID of 2222222222.

The County says that Mr. Glaton voted, but the state has no record of his vote. Then some person or entity (we do not know) changed Mr. Glaton's VUID to a different number **(contrary to federal law)**. Remember this is an official Texas election roster AND IT WAS CHANGED AFTER CERTIFICATION!  That is bad enough, but it changed to a value that does not exist today in the voter registration.

Can we pinpoint who is responsible for this type of voter roll manipulation?  No, we cannot.

Should this be concerning for all citizens of Texas? Absolutely.

Should this be a concern for Governor Gregg Abbott and for county commissioners throughout the state who certified elections not realizing that the state and county election offices are unable to agree on who voted?

The citizens of the State of Texas deserve better than this.

Note the data for this moving target analysis was downloaded over a period of time. All of the files are timestamped and preserved as originally downloaded. Then for this analysis, the files were sorted to ensure accurate comparisons and to spot differences quickly. Since these are time-based downloads, this exercise cannot be duplicated directly because it does not appear possible to go back in time and download what the database looked like on a previous day. That would be nice and that would be a way to get to the bottom of how these changes are being implemented, but it still would not answer **why** the changes were made.

**EXHIBIT "G"**




# Texas 2022 General Election Validity Scorecard

## DETAILED FINDINGS SUMMARY

## RESULTS

The results of this report are presented as a series of CSV files (comma separated values) which can be loaded into Excel or other spreadsheet programs. The data files are organized as follows:

| File | Description |
| --- | --- |
| **Scorecard Section One** | |
| **allresults.csv** | All of the seemingly suspect or illegal registrations primarily from section 1 of the Texas 2022 General Election Validity Scorecard. This also includes a field that shows if the state has a record that the person voted in the November 2022 General Election. |
| **section_1_line_1_dup_1.csv** | This results file is a subset of the prior *allresults.csv* file but focusses on duplicate voters and aligns with the scorecard line one. The file is sorted by name, so it will show duplications. |
| | Please refer to the Supplemental documentation and the special notice about cancelled voters. If you were to find a duplicate in this dup-1.csv results file and both of them are cancelled, the first thing to check is if the two entries have different voter IDs. If so, that is an improper HAVA violation which mandates a unique number per voter. |
| | You will find other combinations like two verified voters in different counties and other situations that simply need to be investigated |
| **Scorecard Section Two – the last 6 lines of section two are provided in separate files** | |
| **section_2_line_11_dup_2.csv** | Unique Voter registrations that cast multiple votes according to the state voter roll |
| **section_2_line_12_dup_3.csv** | Unique Voter registrations that cast multiple votes according to the county voter roll |
| **section_2_line_13_oth_1.csv** | Voters listed in the county voter roll with state voter ID of zero who voted |
| **section_2_line_14_oth_2.csv** | Voters listed in the state voter roll with an unidentified voting method who voted |
| **section_2_line_15_vlist_1.csv** | Voters recorded in county voter roll, missing from state voter roll, or vice versa, who voted (VUIDs only) |
| **section_2_line_15_vlist_2.csv** | Voting method discrepancy between county and state voter rolls for those who voted. Due to the nature of this query, there are some duplicates in the reporting but those were accounted for when presented on the scorecard section 2. |

**SCHEMA**

Most of the results files include the following columns:

- VUID
- Severity 1=seemingly suspect 2=seemingly illegal
- Tag – which query flagged this registration – this matches the query in the Supplemental document
- County
- Precinct
- Status (voter status)
- First, Middle, Last, and Suffix Names
- dob (date of birth)
- voting method (NULL if they did not vote)

Some of the files may have a different column format but they should be self-explanatory.

Final Note

It should be realized that we do not expect every registration listed will be found to be illegal. There are likely valid reasons or explanations for many of the items that we have flagged.  For example, with duplicates, we used exact matches for first, middle, last names, and the date of birth. The state has more resources that it can bring to bear, like cross referencing with other departments, and is far more capable of determining duplicate status than us with just a voter registration and history list.

-end of document--