IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED SOVEREIGN AMERICANS, INC., BERNARD JOHNSON, and CITIZENS DEFENDING FREEDOM, | § § § § | |
| *Plaintiffs,* | § § | No. 2:24-CV-00184-Z |
| v. | § § § | |
| JANE NELSON, *in her official capacity as Secretary of State of Texas,* KEN PAXTON, *in his official capacity as Attorney General of Texas,* and MERRICK GARLAND, *in his official capacity as Attorney General of the United States,* | § § § § § § | |
| *Defendants.* | § § | |

---

### BRIEF IN SUPPORT OF THE TEXAS DEFENDANTS' MOTION TO DISMISS

---

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

**COLE P. WILSON**
Assistant Attorney General
Texas State Bar No. 24122856
Cole.Wilson@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

**COUNSEL FOR TEXAS SECRETARY OF STATE NELSON AND ATTORNEY GENERAL PAXTON**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.  Statutory Background. ................................................................................................ 3

        A.  The National Voter Registration Act of 1993. ..................................................... 3

        B.  The Help America Vote Act. ................................................................................ 5

    II. Plaintiffs' Lawsuit. .................................................................................................... 6

        A.  Plaintiffs. ............................................................................................................ 7

        B.  Plaintiffs' Claims. ............................................................................................... 8

        C.  Plaintiffs' Requested Relief. ................................................................................ 9

STANDARD OF REVIEW ......................................................................................................... 9

RULE 12(B)(1) ARGUMENTS ................................................................................................ 10

    I.  Plaintiffs Lack Standing to Bring this Lawsuit. ...................................................... 11

        A.  CDF and United Lack Standing. ....................................................................... 11

        B.  Bernard Johnson Lacks Standing. ..................................................................... 13

        C.  Plaintiffs' Claimed Injuries are Speculative and Contingent on Future Conduct. ........... 14

        D.  Plaintiffs' Claims are Not Ripe. ........................................................................ 15

        E.  Plaintiffs Cannot Establish Causation or Redressability. .................................. 16

    II. The Texas Defendants' Sovereign Immunity Bars Plaintiffs' Claims. ................... 17

RULE 12(B)(6) ARGUMENTS ................................................................................................ 18

    I.  HAVA does Not Create a Private Cause of Action, and Plaintiffs Do Not Plausibly Show any HAVA Violation. .................................................................................... 19

    II. Plaintiffs have Not Met NVRA's Prerequisite to Suit. .......................................... 20

    III.  Mandamus is Not Available to Plaintiffs. ........................................................... 22

        A.  The All-Writs Act Does Not Provide for Relief Against the Texas Defendants. ........... 23

        B.  Plaintiffs Do Not Make the Necessary Showing to Obtain Mandamus. ............ 24

CONCLUSION ...................................................................................................................... 25

CERTIFICATE OF SERVICE .................................................................................................... 26

TABLE OF AUTHORITIES

**Federal Decisions:**

*Am. Civ. Rts. Union v. Phila City Comm'rs,*
   872 F.3d 175 (3d Cir. 2017)................................................................................19

*American Civil Rights Union v. Martinez-Rivera,*
   166 F.Supp.3d 779 (W.D. Tex. 2015) ....................................................................4

*Anderson* v. *Valdez,*
   845 F.3d 580 (5th Cir. 2016) .............................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................10, 20

*Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.,*
   19 F.3d 241 (5th Cir. 1994) ...............................................................................12

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
   178 F.3d 350 (5th Cir. 1999) .........................................................................5, 12

*Association of Community Organizations for Reform Now v. Miller,*
   129 F.3d 833 (6th Cir. 1997) ..............................................................................5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..........................................................................................10

*Bellitto v. Snipes,*
   268 F.Supp.3d 1328 (S.D. Fla. 2017) ...................................................................5

*Bellitto v. Snipes,*
   935 F.3d 1192 (11th Cir. 2019) ..........................................................................19

*Bennett v. Spear,*
   520 U.S. 154 (1997) ..........................................................................................16

*Block v. Tex. Bd. of Law Exam'rs,*
   952 F.3d 613 (5th Cir. 2020) .............................................................................10

*Brunner v. Ohio Republican Party,*
   555 U.S. 5 (2008)...............................................................................................19

*Cell Sci. Sys. Corp. v. La. Health Serv.,*
   804 F. App'x 260 (5th Cir. 2020) .......................................................................10

*Chambers v. Kijakazi,*
   86 F.4th 1102 (5th Cir. 2023).............................................................................24

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) .............................................................................17

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ......................................................................................11, 14

*Clapper v. Amnesty Intern. USA,*
   568 U.S. 398 (2013) ..........................................................................................15

*Donald J. Trump for President, Inc. v. Broockvar,*
   493 F.Supp.3d 331 (W.D. Penn. 2020)...............................................................15

*Donald J. Trump for President, Inc. v. Cegavske,*
   488 F.Supp.3d 993 (D. Nev. 2020) ....................................................................12

*Ex parte Young,*
   209 U.S. 123 (1908) ................................................................................................17

*Gill v. Whitford,*
   585 U.S. 48 (2018) ..................................................................................................12

*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002) ................................................................................................19

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982) ................................................................................................11

*Hollingsworth v. Perry,*
   558 U.S. 183 (2010) ................................................................................................24

*Hunt v. Washington State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ................................................................................................12

*In re Abbott,*
   956 F.3d 696 (5th Cir. 2020) ...................................................................................17

*Inclusive Cmtys. Project, Inc. v. Dep't of Treas.,*
   946 F.3d 649 (5th Cir. 2019) ...................................................................................16

*Iowa Voter All. v. Black Hawk Cnty.,*
   515 F.Supp.3d 980 (N.D. Iowa 2021) ....................................................................13

*Jackson v. Wright,*
   82 F.4th 362 (5th Cir. 2023) ...................................................................................17

*Jones v. Alexander,*
   609 F.2d 778 (5th Cir. 1980) ...................................................................................24

*Jud. Watch, Inc. v. Penn.,*
   524 F.Supp.3d 399 (M.D. Pa. 2021) .........................................................................5

*Judicial Watch, Inc. v. King,*
   993 F.Supp.2d 919 (S.D. Ind. 2012) .........................................................................5

*Lopez v. City of Houston,*
   617 F.3d 336 (5th Cir. 2010) ...................................................................................15

*Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.,*
   82 F.4th 345 (5th Cir. 2023) ...................................................................................11

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................... 11, 15

*Martel v. Condos,*
   487 F.Supp.3d 247 (D. Vt. 2020) ...................................................................... 12, 13

*Moore v. Circosta,*
   494 F.Supp.3d 289 (M.D.N.C. Oct. 14, 2020)................................................... 12, 15

*Morales-Garza v. Lorenzo-Giguere,*
   277 F. App'x 444 (5th Cir. 2008)............................................................................19

*Moye v. Clerk, Dekalb Cnty. Sup. Ct.,*
   474 F.2d 1275 (5th Cir. 1973) .................................................................................23

*Okpalobi v. Foster,*
   244 F.3d 405 (5th Cir. 2001) ...................................................................................17

*O'Rourke v. Dominion Voting Sys. Inc.,*
   No. 20-CV-03747, 2021 WL 1662742 (D. Colo. Apr. 28, 2021)............................13

*Paher v. Cegavske*,
  457 F.Supp.3d 919 (D. Nev. 2020) ..................................................................12
*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ..........................................................................10
*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ................................................................................... 17, 22
*Pennsylvania Bur. of Corr. v. U.S. Marshals Svc.*,
  474 U.S. 34 (1985) .........................................................................................23
*Planned Parenthood Ctr. for Choice v. Abbott*,
  141 S.Ct. 1261 (2021) ....................................................................................17
*Printz v. United States*,
  521 U.S. 898 (1997) ........................................................................................24
*Project Vote, Inc. v. Kemp*,
  208 F.Supp.3d 1320 (N.D. Ga. 2016) ...............................................................5
*Pub. Int. Legal Found. v. Broockvar*,
  370 F.Supp.3d 449 (M.D. Pa. 2019) ......................................................... 5, 21
*Purcell v. Gonzalez*,
  549 U.S. 1  (2006) ...........................................................................................25
*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ..........................................................................10
*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) .................................................................... 23, 25
*Roark & Hardee LP v. City of Austin*,
  522 F.3d 533 (5th Cir. 2008) ..........................................................................16
*Sandusky Cnty Dem. Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004) ..........................................................................20
*Schlesinger v. Reservist Comm. to Stop the War*,
  418 U.S. 208 (1974) ........................................................................................13
*Scott v. Schedler*,
  771 F.3d 831 (5th Cir.2014) ................................................................... 4, 21, 22
*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ........................................................................................11
*Smiley v. Holm*,
  285 U.S. 355 (1932) ..........................................................................................3
*Smith v. Marvin*,
  846 F. App'x. 259 (5th Cir. Apr. 1, 2021) .......................................................23
*Soudelier v. Office of Sec. of State, La.*,
  No. 22-30809, 2023 WL 7870601 (5th Cir. Nov. 15, 2023) ............................19
*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ..........................................................................................17
*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023) ........................................................................................12
*Tex. Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) ..........................................................................18

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) ........................................................................18
*Tex. Democratic Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) ........................................................................14
*United States v. Bowman*,
   636 F.2d 1003 (5th Cir. 1981) ........................................................................3
*United States v. Hays*,
   515 U.S. 737 (1995) ............................................................................... 1, 11
*United States v. Missouri*,
   535 F.3d 844 (8th Cir. 2008) ..........................................................................5
*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ......................................................................... 1, 11, 14
*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) .......................................................................................17
*Wise v. Circosta*,
   978 F.3d 93 (4th Cir. 2020) ..........................................................................13

**State Decisions:**

*Texas v. Stephens*,
   663 S.W.3d 45 (Tex. Crim. App. 2021) .........................................................3

**Constitutional Provisions:**

U.S. CONST. art. I, § 4, cl. 1 ....................................................................... 3, 23
U.S. CONST. amend. X ......................................................................................24
U.S. CONST. amend. XI ............................................................................... 17, 18

**Statutes:**

1 Texas Admin. Code § 81.171 .........................................................................6
28 U.S.C.:
   § 1361 ..................................................................................................... 9, 23
   § 1651(a) ............................................................................................... 23, 24
42 U.S.C. § 1983 ....................................................................................*passim*
52 U.S.C.:
   § 20501 ........................................................................................................4
   § 20503 ........................................................................................................4
   § 20504 ........................................................................................................4
   § 20505 ........................................................................................................4
   § 20506 ........................................................................................................4
   § 20507 ................................................................................................... 4, 22
   § 20509 ................................................................................................... 4, 24
   § 20510 ............................................................................................... 4, 5, 20
   § 21081 ........................................................................................................5
   § 21082 ........................................................................................................5

§ 21083 ........................................................................................................................... 5, 6
§ 21085 ...........................................................................................................................25
§ 21111 .............................................................................................................................6
§ 21112 .............................................................................................................................6
Tex. Elec. Code:
§ 31.001 .............................................................................................................................4
§ 31.003 .............................................................................................................................4
§ 31.004 .............................................................................................................................4
§ 31.005 .............................................................................................................................3
§ 31.010 .............................................................................................................................6
§ 273.001 ...........................................................................................................................3

**Rules:**

Fed. R. Civ. P.:
12(b)(1) ....................................................................................................................... 9, 10
12(b)(6) ..................................................................................................................... 10, 18
12(h)(3) ...........................................................................................................................10
81(b) ...............................................................................................................................23

**Other Authorities:**

2 AM. JUR. 2D Injunctions § 7 (2024) .............................................................................22

## INTRODUCTION

Plaintiffs, two non-profit organizations and a Libertarian Party candidate for office in Texas's 19th Congressional District, have sued Texas Secretary of State Jane Nelson, Texas Attorney General Ken Paxton, and United States Attorney General Merrick Garland in their official capacities. Plaintiffs claim that federal law—particularly, the Help America Vote Act and the National Voter Registration Act—creates a maximum allowable error rate of one in 125,000 ballots cast, and that an error rate above that threshold renders an election uncertifiable.[1] They also claim that: (1) the purported error rate in Texas's 2022 federal election exceeded this threshold;[2] (2) those errors will recur in 2024 and beyond;[3] and (3) those errors will deny Texas voters the right to a fair vote and place the validity of Texas's 2024 federal elections at risk, including the election for Texas's 19th Congressional District.[4]

Plaintiffs' claims fail because they lack standing, for five reasons. *First*, Plaintiffs essentially ask that this Court order Defendants to act in accordance with the law. But it is well established that Plaintiffs' "asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."[5] *Second*, Plaintiffs raise generalized grievances about election integrity, yet the Supreme Court has "repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power."[6] *Third*, both of the foregoing issues also undermine associational standing, and Plaintiffs do not raise organizational standing. *Fourth*, Plaintiffs' claimed injuries are contingent on events that may never happen, and their claims are not ripe. *Fifth*, Plaintiffs cannot show causation or redressability.

Nonetheless, should the Court find it can exercise jurisdiction over this lawsuit, Plaintiffs also

---

[1] Doc. 5, *Petition for Relief in the Form of a Writ of Mandamus*, ¶¶ 18, 36, 186, 201 [hereinafter "Compl."]. Plaintiffs tally errors from misread ballot positions, voter roll inaccuracies, and voting by ineligible voters, though they admit "Congress may not have specifically intended for these types of errors to be included in the . . . error rate" calculation. *Id.* ¶ 41.

[2] *Id.*, ¶ 187–88.

[3] *Id.*, ¶ 21.

[4] *Id.*, ¶¶ 51-52.

[5] *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (citations and internal quotation marks omitted).

[6] *United States v. Hays*, 515 U.S. 737, 743 (1995) (citations omitted).

fail to state any claims entitling them to relief, for three reasons. *First*, the Help America Vote Act does not provide for a private right of action; nor can Plaintiffs rely on 42 U.S.C. § 1983 to vindicate interests protected by the Act for which Congress did not create an identifiable corresponding right. *Second*, the National Voter Registration Act required Plaintiffs to give adequate notice to Secretary Nelson before bringing suit, but Plaintiffs allege no facts showing they have done so. *Third*, Plaintiffs do not show their entitlement to mandamus. The Court therefore should dismiss this lawsuit.

## BACKGROUND

Secretary Nelson and General Paxton (the "Texas Defendants") have both undertaken significant efforts to enhance election integrity. For her part, Secretary Nelson has led efforts to combat noncitizen voting,[7] and has also guided Texas counties on maintaining accurate voter registration rolls.[8] General Paxton publicly maintains that investigating and prosecuting voter fraud is one of his key priorities, and he established a unit of the Office of the Attorney General—the Election Integrity Division—tasked with doing so to ensure election integrity within Texas.[9] Just recently, General Paxton has also acted to secure Texas's elections by investigating noncitizen voting,[10] suing counties that had used taxpayer funds to hire partisan organizations to identify unregistered and potentially ineligible voters for purposes of registering them to vote,[11] and requesting citizenship data from the Biden administration to identify ineligible voters.[12]

Despite the Texas Defendants' public efforts aimed at enhancing election integrity in Texas,

---

[7] *Texas Leads the Way against Noncitizen Voting*, OFFICE OF THE SECRETARY OF STATE OF TEXAS (Aug. 12, 2024), https://www.sos.state.tx.us/about/newsreleases/2024/081224-2.shtml.
[8] *Secretary Nelson Reminds Counties of Duty to Update Voter Registration Rolls*, OFFICE OF THE SECRETARY OF STATE OF TEXAS (June 4, 2024), https://www.sos.state.tx.us/about/newsreleases/2024/060424.shtml.
[9] *Election Integrity*, OFFICE OF THE ATTORNEY GENERAL OF TEXAS, https://tinyurl.com/jju8fp6r.
[10] *Attorney General Ken Paxton Launches Investigation Into Reports that Organizations May Be Illegally Registering Noncitizens to Vote*, OFFICE OF THE ATTORNEY GENERAL OF TEXAS (Aug. 21, 2024), https://tinyurl.com/yaf72jzm.
[11] *Attorney General Ken Paxton Sues Bexar County Over Unlawful Decision to Send Voter Registration Applications to Potentially Ineligible Voters*, OFFICE OF THE ATTORNEY GENERAL OF TEXAS (Sep. 4, 2024), https://tinyurl.com/epv44evd; *Attorney General Ken Paxton Sues Travis County Over Illegal Use of Taxpayer Funds to Hire Partisan Organization to Identify Potentially Unregistered Voters*, OFFICE OF THE ATTORNEY GENERAL OF TEXAS (Sep. 6, 2024), https://tinyurl.com/mssvbkmr.
[12] *Attorney General Ken Paxton Demands Citizenship Data From Biden-Harris Administration To Investigate Potential Noncitizen Voters*, OFFICE OF THE ATTORNEY GENERAL OF TEXAS (Oct. 7, 2024), https://tinyurl.com/4wtrwjmt.

Plaintiffs say Defendants have "done absolutely nothing" to address the election integrity issues they complain of.[13] While Plaintiffs cite various provisions of federal and Texas election law in their pleading, they do not allege specifically what the Texas Defendants have failed to do. Nor do they allege what more the Texas Defendants could do to secure Texas's federal elections within their statutory[14] and constitutional[15] authority. Instead, Plaintiffs point to various *interests* that federal election law purports to protect and claim the Texas Defendants are harming those *interests* by failing to address their concerns adequately. Accordingly, we begin with that statutory background.

## I.   Statutory Background.

Plaintiffs invoke the Help America Vote Act and the National Voter Registration Act,[16] which Congress enacted pursuant to the Elections Clause of the United States Constitution.[17] The Elections Clause is "the basis of Congressional authority to provide a complete code for congressional elections."[18] Below, Defendants outline the framework for both statutes so the Court may understand how these statutes may be enforced—and how they may not.

### A.   The National Voter Registration Act of 1993.

Congress passed the National Voter Registration Act of 1993 (NVRA) "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," "to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office,"

---

[13] Compl., ¶¶ 45–47.

[14] *See* Tex. Elec. Code § 31.005 (empowering secretary of state to take "appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes"); Tex. Elec. Code § 273.001 (providing the Attorney General "shall investigate" allegations of election crimes in elections covering multiple counties).

[15] While the Texas Legislature also sought to empower the Attorney General to prosecute criminal election misconduct under state election laws, the Texas Court of Criminal Appeals struck that provision as unconstitutional. *See Texas v. Stephens*, 663 S.W.3d 45, 57 (Tex. Crim. App. 2021) (citation omitted).

[16] *See generally* Compl.

[17] U.S. CONST. art. I, § 4, cl. 1.

[18] *United States v. Bowman*, 636 F.2d 1003, 1009–10 (5th Cir. 1981) (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)).

"to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained."[19] NVRA contains various provisions to facilitate these ends, nearly all of which are irrelevant to Plaintiffs' lawsuit because they do not appear to claim that any Defendant has failed to comply with those requirements.[20]

*Coordination of State Responsibilities.* "Each State" must "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this . . . [Act]."[21] The Fifth Circuit has explained that each designated official's power to coordinate that State's responsibilities under NVRA also encompasses "enforcement power."[22] Texas Election Code § 31.001(a) provides that "[t]he secretary of state is the chief election officer of the state."[23] The Secretary may further assign "any function relating to the administration of elections that is under the Secretary's jurisdiction" to the staff in the elections division, and must assist and advise these election authorities on the application, operation, and interpretation of the election laws.[24] State law further directs the Secretary to "obtain and maintain uniformity in the application, operation, and interpretation" of Texas's election laws.[25]

*Methods of Enforcement.* NVRA provides for two methods of enforcement.[26] First, "[t]he [United States] Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out" NVRA's provisions.[27] Second, a private person "aggrieved by a violation" may sue for declaratory or injunctive relief once "written notice of th[is] violation" has been provided "to the chief election official of the State involved" and a certain

---

[19] 52 U.S.C. § 20501(b)(1)–(4).
[20] *Id.* §§ 20503–20507.
[21] *Id.* § 20509 (emphasis added).
[22] *Scott v. Schedler*, 771 F.3d 831, 838 (5th Cir.2014).
[23] *Accord American Civil Rights Union v. Martinez-Rivera*, 166 F.Supp.3d 779, 792 (W.D. Tex. 2015).
[24] Tex. Elec. Code §§ 31.001, 31.004.
[25] *Id.* § 31.003.
[26] 52 U.S.C. § 20510.
[27] *Id.* § 20510(a).

number of days have passed.[28] Although the Act provides for private enforcement, "[t]he statute envisions the federal government predominantly will enforce the NVRA."[29]

"Congress structured the notice requirement [in § 20510] in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation."[30] Thus, courts generally will find notice sufficient "when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a violation of the NVRA and intends to commence litigation if the violation is not timely addressed."[31]

B.      The Help America Vote Act.

Congress passed the Help America Vote Act (HAVA) after the 2000 presidential election to

> establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and for other purposes.[32]

To this end, HAVA requires states to (1) set standards for "voting systems"[33] used in federal elections that comply with standards previously issued by the Federal Election Commission;[34] (2) create and maintain a statewide computerized voter registration list;[35] (3) adopt certain minimum voter registration and identification requirements;[36] (4) permit registered voters to submit provisional ballots;[37] (5) post voting information at polling places on the day of each federal election;[38] (6) establish

---

[28] Id. § 20510(b)(1)–(3); accord Ass'n of Cmty. Orgs. for Reform Now v. Fowler, 178 F.3d 350, 363 (5th Cir. 1999).

[29] United States v. Missouri, 535 F.3d 844, 851 (8th Cir. 2008).

[30] Association of Community Organizations for Reform Now v. Miller, 129 F.3d 833, 838 (6th Cir. 1997) (citation omitted).

[31] Pub. Int. Legal Found. v. Boockvar, 370 F.Supp.3d 449, 457 (M.D. Pa. 2019) (citing Bellitto v. Snipes, 268 F.Supp.3d 1328, 1334 (S.D. Fla. 2017); Project Vote, Inc. v. Kemp, 208 F.Supp.3d 1320, 1348 (N.D. Ga. 2016); Judicial Watch, Inc. v. King, 993 F.Supp.2d 919, 922 (S.D. Ind. 2012)); accord Jud. Watch, Inc. v. Penn., 524 F.Supp.3d 399, 409 (M.D. Pa. 2021).

[32] Pub. L. No. 107–252, 116 State. 1666 (2002) (codified in chapters 2, 5, 10, 36, and 52 of the United States Code).

[33] 52 U.S.C. § 21081.

[34] Id. § 21081(a)(5).

[35] Id. § 21083(a).

[36] Id. §§ 21083(b)(1)–(3).

[37] Id. §§ 21082(a), (c).

[38] Id. § 21082(b).

an administrative complaint procedure for remedying public grievances;[39] and (7) include specific information on federal mail voter registration forms.[40]

*Methods of Enforcement.* HAVA provides for two enforcement mechanisms. First, the United States Attorney General may bring actions for injunctive and declaratory relief "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" under various HAVA provisions identified above.[41] Second, similar to NVRA, HAVA provides that "any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint" under the "State-based administrative complaint procedures."[42] But unlike NVRA, HAVA does not expressly provide for a private right of action where a state fails to correct a violation.

*Texas's Administrative-Complaint Process.* Texas established its HAVA administrative-complaint structure in accordance with 52 U.S.C. § 21112(a)(2) through Texas Administrative Code § 81.171.[43] Among other things, that process requires all complaints be in writing, signed and notarized, and include a description of the alleged violation "sufficient to apprise the Secretary of State of the nature and specifics of the complaint."[44] And if the Secretary finds a violation, the remedy "may not include any award of monetary damages, costs or attorney fees, and may not include the invalidation of any election or a determination of the validity of any ballot or vote."[45]

## II.   Plaintiffs' Lawsuit.

Plaintiffs claim they are harmed by the voting systems Texas uses in state and federal

---

[39] *Id.* § 21112.
[40] *Id.* § 21083(b)(4).
[41] *Id.* § 21111.
[42] *Id.* § 21112(a)(1), (a)(2)(B).
[43] *Cf.* Tex. Elec. Code § 31.010 (requiring the secretary of state to adopt establish an administrative complaint process to remedy grievances under Section 402(a) of HAVA, and permitting her to adopt rules for implementing HAVA).
[44] 1 Tex. Admin. Code § 81.171(c)(1) & (3).
[45] *Id.* § 81.171(f).

elections,[46] and that Defendants are allowing violations of federal election laws, Texas election laws, the United States Constitution, and federal civil rights laws pertaining to voter rights to go unaddressed.[47] Plaintiffs allege a wide range of violations indeed, but they stop short of bringing claims connected with most of the statutory and constitutional provisions they reference.

A.    Plaintiffs.

*Bernard Johnson* is a resident of Abilene, Texas, and is running for Texas's 19th Congressional District.[48] Johnson claims that Texas's alleged failure "to keep the voter registration rolls of Texas accurate and in compliance with various federal and state laws regarding voting integrity"[49] harms him "because he is running for federal office in the succeeding federal election in 2024."[50] He also suggests that election irregularities risk the validity of the election he is running in.[51]

Johnson also alleges *past* registration and voter roll inaccuracies from 2022 means he cannot properly devise and budget for campaign strategies, mailing campaigns, and other activities intrinsic in his 2024 election campaign.[52] He also says he "has been caused to spend money campaigning to garner votes based on registrations and voter rolls *that may be inaccurate* using that inaccurate information to his detriment in making decisions on how to allocate his campaign resources."[53] He does not explain why he believes he cannot budget based on the possibility of voter roll inaccuracies, or why those supposed inaccuracies require him to spend campaign funds any differently.

*Citizens Defending Freedom (CDF)* asserts associational standing on behalf of "a group of Texas registered voters each expecting their vote to be properly counted and weighted and fear that

---

[46] Compl., ¶ 78.
[47] *Id.*, ¶ 78.
[48] *Id.*, ¶ 79 (citing www.bernardjohnson4congress.com/).
[49] *Id.*, ¶ 80.
[50] *Id.*, ¶ 72.
[51] *Id.*, ¶ 53.
[52] *Id.*, ¶ 81.
[53] *Id.*, ¶ 82 (emphasis added).

will not occur in 2024."[54] CDF claims to be a nonpartisan, grassroots organization committed to improving election integrity.[55] CDF is composed of "Texas citizens who have an interest in the elections being administered fairly, properly, and accurately."[56] CDF complains that alleged violations of election laws, the United States Constitution, and federal civil rights laws "exemplify" their injury.[57] CDF thus seeks to vindicate this injury to its members "and all Texas voters."[58]

*United Sovereign Americans, Inc. (United)* joins this lawsuit but states no specific allegations showing what members it represents, whether those members have suffered any harm, whether it has any members in Texas, or even that it has members.[59]

B.    Plaintiffs' Claims.

Plaintiffs present three claims for relief[60] arising from their election integrity concerns. *First*, Plaintiffs say that Defendants fail to comply with NVRA's various requirements.[61] NVRA provides for a private right of action only after a plaintiff has provided adequate pre-suit notice (absent an exception that does not apply here), but Plaintiffs do not allege facts showing they have provided notice as NVRA contemplates it.[62] United attaches a letter sent to Secretary Nelson earlier this year, but that letter does not specifically and sufficiently address any actual failures to comply with NVRA.[63]

*Second*, Plaintiffs also assert that Defendants are failing to comply with HAVA's various requirements.[64] But HAVA does not *expressly* provide for a private cause of action, which Plaintiffs

---

[54] *Id.*, ¶ 73.
[55] *Id.*, ¶ 83.
[56] *Id.*, ¶ 84.
[57] *Id.*, ¶ 96.
[58] *Id.*, ¶ 97.
[59] *See generally id.*
[60] Plaintiffs state in passing that Defendants have failed to respond to alleged violations of Plaintiffs' federal civil rights and rights under the United States Constitution, but they do not bring a challenge contending that any law—state or federal—is unconstitutional or that Defendants have themselves violated any civil or constitutional rights. *Id.*
[61] *Id.*, ¶¶ 115–27.
[62] *Id.*, ¶ 122.
[63] Doc. 5-1, pp. 4–5.
[64] Compl., ¶¶ 128–45.

concede.[65] Thus, Plaintiffs argue that HAVA provides for an implied cause of action, or alternatively that they may sue under 42 U.S.C. § 1983 for *any* HAVA violations.[66]

*Third*, Plaintiffs also bring a standalone "claim" for mandamus relief under 28 U.S.C. § 1361 challenging Defendants' alleged noncompliance with federal election law.[67] Section 1361 provides for mandamus against federal officials, so, to invoke it here, Plaintiffs contend that Secretary Nelson and General Paxton *become* federal or quasi-federal officials while performing federal election duties.[68]

C.    Plaintiffs' Requested Relief.

Plaintiffs concede "the harm from the 2024 election is not yet realized," and that "injunctive and/or declaratory relief is inapplicable or appropriate."[69] So, Plaintiffs request six categories of "mandamus," asking the Court to: (1) require Defendants to follow federal and state election law; (2) declare that Texas's voter rolls contained hundreds of thousands of errors in the 2022 General Election; (3) compel Defendants to correct those alleged errors and prevent them from recurring; (4) enjoin Texas from certifying its 2024 federal election unless and until Defendants have demonstrated the election was conducted in conformity with federal and state law; (5) order Texas to submit voter registration requests to the U.S. Department of Homeland Security to verify the citizenship status of persons seeking registration to vote or who are on the state's voter rolls whenever "reliable indicators" show that an applicant or registered voter may not be a citizen; and (6) order Defendants to investigate and prosecute persons or entities for failing to perform duties in conformity with election laws.[70]

STANDARD OF REVIEW

*Federal Rule of Civil Procedure 12(b)(1).* Plaintiffs' standing and Defendants' sovereign immunity bear upon the Court's jurisdiction over this dispute and are properly raised in a Federal Rule

---

[65] *Id.*, ¶ 144.
[66] *Id.*, ¶¶ 141–44.
[67] *Id.*, ¶ 202–32.
[68] *Id.*, ¶¶ 226–32.
[69] *Id.*, ¶ 216.
[70] *Id.*, pp. 55–56.

9

of Civil Procedure 12(b)(1) motion to dismiss.[71] "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."[72] If at any time the Court concludes it lacks subject-matter jurisdiction, the action "must" be dismissed.[73]

*Federal Rule of Civil Procedure 12(b)(6).* The remaining issues are analyzed under Federal Rule of Civil Procedure 12(b)(6), under which a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[74] To survive a motion under Rule 12(b)(6), a plaintiff must assert facts "rais[ing] a right to relief above the speculative level."[75] In other words, such a motion turns on whether a plaintiff pled a "plausible" claim for relief.[76] A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[77]

## RULE 12(B)(1) ARGUMENTS

Defendants challenge the Court's jurisdiction both facially and factually.[78] The key points here are that Plaintiffs: (1) have not suffered a cognizable injury because the harm they complain of is not particularized; (2) did not assert a ripe controversy, as their claims are contingent upon speculative future events that may never occur; (3) cannot show traceability as they admit that independent actors who may be engaging in election fraud or improperly registering to vote are causing their concerns; (4) cannot show redressability because it is not likely that a Court order to the effect requested by Plaintiffs would mitigate those concerns—after all, the Texas Defendants already are taking sweeping actions to respond within the scope of their authority; and (5) cannot overcome sovereign immunity.

---

[71] *See, e.g., Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 616–17 (5th Cir. 2020).
[72] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[73] Fed. R. Civ. P. 12(h)(3) (emphasis added).
[74] *Anderson* v. *Valdez*, 845 F.3d 580, 589 (5th Cir. 2016).
[75] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[77] *Id.*
[78] Unlike a facial challenge, "[a] factual attack . . . challenges the existence of subject matter jurisdiction in fact, *irrespective of the pleadings*[.]" *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020). Thus, Plaintiffs must "submit facts through some evidentiary method" to carry their burden. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

## I.     Plaintiffs Lack Standing to Bring this Lawsuit.

Plaintiffs' lawsuit reduces to a request that this Court order Defendants to comply with federal election law, but the Supreme Court has found standing lacking where a plaintiff asserts a "right to have the Government act in accordance with law."[79] Application of this general principle alone reflects that Plaintiffs cannot sue the Texas Defendants, but Plaintiffs also do not establish Article III's irreducible minimum requirements of an (1) an injury-in-fact, (2) causation, and (3) redressability.[80] Additionally, although Plaintiffs point to the possibility of past exposure *of the voting public* to illegal conduct, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."[81] Plaintiffs identify no present controversy regarding Texas's 2024 federal elections.

### A.     CDF and United Lack Standing.

CDF and United rely on organizational standing, but they seemingly confuse organizational and associational standing as they assert interests that only their members could have a stake in.[82] Thus, we address both organizational and associational standing below. Both are lacking here.

*Organizational Standing.* "An organization can establish standing in its own name if it meets the same standing test that applies to individuals."[83] This typically takes the form of allegations that a defendant's actions concretely and plausibly impede that organization's efforts to carry out its mission,[84] as opposed to a lawsuit seeking only to "vindicate [that organization's] own value preferences through the judicial process."[85] But CDF and United allege no facts suggesting that they,

---

[79] *Whitmore*, 495 U.S. at 160 (citation omitted); *cf. Hays*, 515 U.S. at 743 (refusing "to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power").
[80] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).
[81] *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks and citation omitted).
[82] Compl. ¶ 73.
[83] *Louisiana Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345, 351 (5th Cir. 2023) (internal quotations and citation omitted).
[84] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).
[85] *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972).

as organizations, suffered any harm. Nor can they rely on "general allegations of activities related to monitoring the implementation of the NVRA," or HAVA, that are not paired with an allegation that such costs are fairly traceable to Defendants' conduct.[86] Thus, organizational standing fails.

*Associational Standing*. An organization can sue on behalf of its members' interests when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[87] CDF and United do not allege sufficient facts from which the Court may conclude that they comprise traditional membership organizations—reason alone to find they do not have associational standing.[88]

Even so, associational standing in this case also turns on whether Plaintiffs' "members would otherwise have standing to sue in their own right."[89] CDF and United lack associational standing because the concerns they allege regarding their members are generalized grievances about election irregularities, which any Texas citizen could conceivably raise.[90] Accordingly, because Plaintiffs' "members" do not assert any particularized injury, CDF and United themselves lack standing to pursue claims on their behalf. Nor is this a novel obstacle to Plaintiffs' lawsuit.[91] As the Supreme Court explained in *Lance v. Coffman*, where the "only injury plaintiffs allege is that the law—specifically

---

[86] *See Fowler*, 178 F.3d at 359.

[87] *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

[88] *See Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (finding organization could not assert associational standing because it bears "no relationship to [a] traditional membership group[ ], because most of its 'clients' . . . are unable to participate in and guide the organization's efforts").

[89] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).

[90] *See Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("To ensure that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society, a plaintiff may not invoke federal-court jurisdiction unless he can show a personal stake in the outcome of the controversy.") (citations and internal quotation marks omitted).

[91] *See, e.g.*, *Paher v. Cegavske*, 457 F.Supp.3d 919, 926 (D. Nev. 2020) (explaining that because "ostensible election fraud may conceivably be raised by any Nevada voter," the plaintiffs' "purported injury of having their votes diluted" does not "state a concrete and particularized injury") (citations omitted); *see also Moore v. Circosta*, 494 F.Supp.3d 289, 312 (M.D.N.C. Oct. 14, 2020) ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing."); *Donald J. Trump for President, Inc. v. Cegavske*, 488 F.Supp.3d 993, 1000 (D. Nev. 2020) ("[P]laintiffs' claims of a substantial risk of vote dilution amount to general grievances that cannot support a finding of particularized injury . . . .") (citation and internal quotation marks omitted); *Martel v. Condos*, 487 F.Supp.3d 247, 253–54 (D. Vt. 2020) (rejecting vote-dilution theory as basis for conferring standing because it constituted a generalized grievance).

the Elections Clause—has not been followed," this "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."[92]

Thus, before a party may invoke federal jurisdiction in these types of cases, courts ask whether a plaintiff alleges concerns that any voter could bring, or whether a challenged practice would uniquely harm that plaintiff.[93] Here, Plaintiffs contend that Defendants are not acting in accordance with the law in administering Texas's federal elections, or that they otherwise are failing to ensure the integrity of those elections.[94] To the extent Plaintiffs could identify any concrete harm (they cannot), such injury would accrue to every Texas citizen and would not be particularized to Plaintiffs' members.[95] Plaintiffs' assertion of interests "held in common by all members of the public" fails to establish standing.[96]

**B.    Bernard Johnson Lacks Standing.**

Like CDF and United, Johnson also raises generalized grievances relating to election integrity that fail to establish standing for the same reasons articulated above.[97] But unlike CDF and United, Johnson also contends that registration and voter roll inaccuracies means he cannot properly budget for campaign strategies, mailing campaigns, and other activities intrinsic in an election season.[98] Two separate issues defeat Johnson's campaign-related harms as a basis for standing: (1) Johnson cannot

---

[92] 549 U.S. 437, 442 (2007).

[93] *See Martel*, 487 F.Supp.3d at 253  ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); *Wise v. Circosta*, 978 F.3d 93, 104 (4th Cir. 2020) (Motz, J., concurring) ("[P]laintiffs' votes would not count for less *relative to other North Carolina voters*.").

[94] Compl., ¶ 57.

[95] *Iowa Voter All. v. Black Hawk Cnty.*, 515 F.Supp.3d 980, 991 (N.D. Iowa 2021) ("Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated from the injury to any other citizen."); *see also O'Rourke v. Dominion Voting Sys. Inc*, No. 20-CV-03747, 2021 WL 1662742, at *6–8 (D. Colo. Apr. 28, 2021) (collecting cases dismissing allegations of election fraud for failure to show standing), *aff'd*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022).

[96] *Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 220 (1974).

[97] Specifically, Johnson says that Defendants' alleged failure to resolve voting system and voter registration irregularities puts at risk the validity of the election he is running in. Compl. ¶ 53; *but see supra*, pp. 11–13.

[98] Compl., ¶¶ 80–81.

plausibly show he has spent money any differently because of voter roll inaccuracies, and (2) his concerns do not show he has suffered any change to his chances of electoral success.

*First*, it is not plausible Johnson has spent his campaign funds any differently because of the *possibility* of voter roll inaccuracies or fraud *somewhere* in Texas. On the one hand, insofar as Johnson knows precisely in which households in his district there are persons ineligible to vote but who are registered, there is no harm to him because he can avoid dedicating campaign resources to those addresses. And on the other hand, insofar as Johnson cannot distinguish registered eligible voters from registered ineligible voters, he has no reason to spend campaign funds any differently.

*Second*, Johnson also cannot establish standing based on a reduced chance of electoral success for Texas's 19th Congressional District. In *Tex. Democratic Party v. Bensiker*, the Fifth Circuit found that a candidate had standing to challenge an election practice that had plausibly reduced his chances of campaign success.[99] But here, Johnson *concedes* he does not know whether the alleged election irregularities will change the result.[100] Instead, he pivots, suggesting that election irregularities risk the *validity* of the election and not his chances of success.[101] This is not enough to establish standing.

C.   <u>Plaintiffs' Claimed Injuries are Speculative and Contingent on Future Conduct.</u>

Assuming some harm to the generalized interests Plaintiffs raise could ever establish a cognizable injury, Plaintiffs cannot currently say their alleged injuries will ever come to pass and thus their alleged harms are entirely hypothetical.[102] Plaintiffs appear to agree and articulate the *possibility* of a series of independent events occurring during Texas's 2024 federal election as a basis for standing.[103]

---

[99] *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–88 (5th Cir. 2006) (finding the Republican Party of Texas's actions threatened a Democratic candidate's election prospects and campaign funds, supporting an injury for purposes of standing).
[100] Compl., ¶ 17.
[101] *Id.*, ¶ 53.
[102] *Whitmore*, 495 U.S. at 155 (quoting *Lyons*, 461 U.S. at 101–102).
[103] Compl., ¶ 17.

First, Plaintiffs allege Defendants have not established adequate election safeguards, creating a risk of voter fraud or illegal voting, and thus the reliability of Texas's federal elections.[104] Next, Plaintiffs contend that those risks of voter fraud and illegal voting will manifest as actual voting fraud and election irregularities in November. Finally, Plaintiffs claim those election irregularities will call into question the validity of Texas's 2024 federal election and suggest their votes will be less valuable.[105] But Plaintiffs point to no election irregularities that have occurred in Texas's 2024 federal election, and there are no reasons to think these concerns are "certainly impending" or rise above the level of pure speculation.[106] Plaintiffs accordingly concede that "the harm from the 2024 election is not yet realized,"[107] and they must also admit that this "harm" may never occur.[108]

Nor can Plaintiffs point to their past concerns with Texas's 2022 federal election to show that their present concerns are anything but speculative. Indeed, the Supreme Court has recognized that "[p]ast exposure to illegal conduct does not in itself show a present controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects."[109] Thus, Plaintiffs' claims that a particular practice for conducting elections increases the probability of election fraud or illegal voting outlines a theory of injury that is far too remote and speculative to establish the Court's jurisdiction.

D.    Plaintiffs' Claims are Not Ripe.

For similar reasons as above, Plaintiffs' claims fail on ripeness grounds. Again, Plaintiffs merely speculate about the *possibility* of fraud in Texas's 2024 federal election. As the Fifth Circuit has

---

[104] *See, e.g., id.*, ¶¶ 150, 178, 189.

[105] *See, e.g.,* Compl., ¶¶ 5–10; *see also Moore*, 494 F.Supp.3d at 312 ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing.")

[106] *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) ("Thus, we have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.") (cleaned up).

[107] Compl., ¶ 216

[108] *See, e.g., Donald J. Trump for President, Inc. v. Boockvar*, 493 F.Supp.3d 331, 379 (W.D. Penn. 2020) (rejecting speculative claims "that unknown individuals will utilize drop boxes to commit fraud ... [and] for signature comparison, that fraudsters will submit forged ballots by mail") (citation omitted).

[109] *Lujan*, 504 U.S. at 564 (cleaned up).

explained before in the context of a Voting Rights Act claim, the ripeness doctrine bars such speculative claims precisely because at this time they are "merely abstract or hypothetical, and thus too speculative to be fit for judicial review."[110] Here, Plaintiffs present claims based on the future possibility of election irregularities which may not come to pass, and which they admit may have no impact on Texas's 2024 federal elections.[111] Because Plaintiffs concede that their claims require further factual development before any harm is suffered,[112] the Court should dismiss them as unripe.[113]

    E.    <u>Plaintiffs Cannot Establish Causation or Redressability.</u>

Traceability and redressability are also lacking here. Plaintiffs cannot show traceability because they attribute "dilution" of their voting to non-party actors casting votes illegally, thus conceding their injuries are "the result of the independent action of some third party not before the court."[114] While a plaintiff may still establish standing where a defendant produces an injury "by determinative or coercive effect upon the action of someone else" who in turn harms that plaintiff,[115] Plaintiffs here cannot meet this stringent standard because they do not allege the Texas Defendants have coerced independent actors to engage in election fraud or register ineligible voters. In fact, Plaintiffs expressly acknowledge they "do not suggest that any Texas election officials engaged in election fraud."[116]

Plaintiffs cannot establish redressability because they do not and cannot show that the relief they seek will lessen the election irregularities they complain of because (1) the Texas Defendants are already doing everything within their power to protect election integrity (including complying with NVRA and HAVA), and thus (2) ordering them to comply with these statutes will offer no meaningful

---

[110] *See Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (holding that plaintiffs' Voting Rights Act claim was not ripe for judicial review because the City of Houston could yet have acted in ways that did not give rise to the claim).
[111] Compl., ¶¶ 17, 105–09.
[112] *See, e.g., id.*, ¶ 2 ("*If* the 2022 election performance is repeated in 2024, Petitioners *and all Texas voters* will suffer damages.") (emphasis added).
[113] *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008).
[114] *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citation and internal quotation marks omitted).
[115] *Id.* at 169 (citations omitted).
[116] Compl., p. 33 n. 6.

relief.[117] Nor would declaring that Texas's 2022 federal elections suffered from "hundreds of thousands of apparent errors" do anything to remedy the harms Plaintiffs say they will experience during and after Texas's 2024 federal elections.[118] Worse yet, Plaintiffs' request that the Court order Texas officials to refrain from certifying its 2024 federal elections unless and until they can show the elections were conducted in conformity with federal and state law would, if it did anything, cause the very harm Plaintiffs claim they wish to avoid—a situation where their votes are not properly counted.[119] Thus, where, as here, Plaintiffs' proposed relief "does not remedy the injury suffered," requests for declaratory and injunctive relief "cannot bootstrap [them] into federal court."[120]

## II.     The Texas Defendants' Sovereign Immunity Bars Plaintiffs' Claims.

The Eleventh Amendment generally bars suits against States in federal court without their consent.[121] The Supreme Court has further recognized that sovereign immunity extends to state officials or agencies where, as here, they are effectively suits against a state.[122] Plaintiffs do not show in their pleading that Congress abrogated the states' sovereign immunity through NVRA, HAVA, or 42 U.S.C. § 1983, and Texas has not waived that immunity. So, the Texas Defendants' immunity bars this suit unless Plaintiffs can establish that *Ex parte Young* applies.[123]

*Ex parte Young* requires both that "a plaintiff must sue the right defendants and ask for the right remedy."[124] This narrow exception "allows suits for injunctive or declaratory relief against state officials [in their official capacities], provided they have sufficient 'connection' to enforcing" a state

---

[117] *Inclusive Cmtys. Project, Inc. v. Dep't of Treas.*, 946 F.3d 649, 655 (5th Cir. 2019) (citation omitted).
[118] Compl., p. 55.
[119] *Id.*, pp. 55–56.
[120] *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998).
[121] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *accord City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).
[122] *City of Austin*, 943 F.3d at 997 (citations omitted).
[123] 209 U.S. 123, 157 (1908); *accord Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001). Separately, while Plaintiffs contend throughout their pleading that the Texas Defendants failed to act in accordance with the Texas Election Code, they do not bring any specific claim in this respect. Nor would it matter if Plaintiffs had, because the Supreme Court has stressed that such a suit would "conflict[] directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) [hereinafter "*Pennhurst*"].
[124] *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023).

action that allegedly violates federal law.[125] But Plaintiffs say "injunctive and/or declaratory relief is inapplicable or appropriate,"[126] and that they have no other remedy apart from a writ of mandamus.[127] Thus, they have not alleged the right remedy to satisfy *Ex parte Young*.

Also, if there is no connection to enforcement, "the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity."[128] To have the requisite enforcement connection, an official must have more than "the general duty to see that the laws of the state are implemented."[129] Rather, the official must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[130]

Plaintiffs have not shown that General Paxton is specifically tasked with enforcing *federal* election laws or has any connection to the enforcement of those laws. Plaintiffs do not identify any specific duty that General Paxton has in enforcing HAVA or NVRA. Nor do Plaintiffs even claim that General Paxton possesses the specific power and duty to administer Texas's federal elections. Instead, Plaintiffs appear to rely on his plenary duty to enforce the laws of Texas, and supervisory power over all other officials in his Office. But that is not enough to overcome sovereign immunity.[131]

## RULE 12(B)(6) ARGUMENTS

Plaintiffs also fail to state any claim for which relief may be granted. Specifically: (1) HAVA does not create a private cause of action; nor can Plaintiffs lean on 42 U.S.C. § 1983 to provide a basis for suit under these circumstances because Plaintiffs do not sue to vindicate any right conferred by HAVA—only the broader interests that the Act addresses; (2) Plaintiffs' failure to adequately notify

---

[125] *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) (citations omitted), *cert. granted, judgment vacated as moot sub nom, Planned Parenthood Ctr. for Choice v. Abbott*, 141 S.Ct. 1261 (2021).
[126] Compl., ¶ 216.
[127] *Id.* ¶ 215,
[128] *In re Abbott*, 956 F.3d at 708 (citations omitted).
[129] *City of Austin*, 943 F.3d at 999–1000 (citation and internal quotation marks omitted).
[130] *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (citation omitted).
[131] *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) ("[I]t is not enough that the official have a general duty to see that the laws of the state are implemented.") (citation omitted; cleaned up).

Secretary Nelson of any alleged *violations* prior to bringing suit is fatal to their NVRA claims; (3) the Federal Rules of Civil Procedure abolished actions in the form of a petition for a writ of mandamus, (4) the All-Writs Act does not provide independent grounds for mandamus, so Plaintiffs' request fails insofar as their other claims do; and (5) Plaintiffs do not show their entitlement to mandamus.

## I.   HAVA does Not Create a Private Cause of Action, and Plaintiffs Do Not Plausibly Show any HAVA Violation.

Plaintiffs' HAVA claims against the Texas Defendants fail as HAVA does not create a private right of action. The Fifth Circuit, and other courts, have reached this conclusion.[132]

More importantly, the Supreme Court addressed this issue in *Brunner v. Ohio Republican Party*,[133] although in the context of an application for a stay and to vacate a temporary restraining order. There, in a short per curiam decision, the Court granted the Ohio Secretary of State's application for a stay and vacated the district court's temporary restraining order because plaintiffs were "not sufficiently likely to prevail on the question [as to] whether Congress has authorized" district courts to enforce HAVA when the plaintiffs are private litigants.[134] Thus, the bare fact that Plaintiffs here allege noncompliance with HAVA does not establish a cause of action against the Texas Defendants.

In an attempt to avoid the lack of a private right of action, Plaintiffs say they are suing the Texas Defendants under 42 U.S.C. § 1983 relating to those alleged HAVA violations.[135] It is true that "whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute."[136] But the

---

[132] *See Morales-Garza v. Lorenzo-Giguere*, 277 F. App'x 444, 446 (5th Cir. 2008) (affirming dismissal of plaintiff's complaint for failure to state a claim because, among other things, HAVA does not create a private right of action) (citations omitted); *Soudelier v. Office of Sec. of State, La.*, No. 22-30809, 2023 WL 7870601, at *2–3 (5th Cir. Nov. 15, 2023) ("HAVA does not contain any implied right of action, because [i]t is canonical that Congress's creation of specific means of enforcing [a] statute indicates that it did not intend to allow an additional remedy—a private right of action—that it did not expressly mention at all.") (citations and internal quotation marks omitted); *accord Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *Am. Civ. Rts. Union v. Phila City Comm'rs*, 872 F.3d 175, 184–85 (3d Cir. 2017).

[133] 555 U.S. 5 (2008) (per curiam).

[134] *Id.* at 6.

[135] Compl., ¶¶ 141–43.

[136] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002) (citation and internal quotation marks omitted).

Supreme Court has "reject[ed] the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983."[137] Indeed, "it is *rights, not* the broader or vaguer '*benefits'* or '*interests*,' that may be enforced under the authority of that section."[138]

Accordingly, Plaintiffs cannot lean on § 1983 to protect against "*the harms Congress sought to avoid by implementation of HAVA and NVRA*"[139] when they do not assert that Secretary Nelson or General Paxton deprived them of any identifiable right created by HAVA.[140] Plaintiffs' HAVA claims fail.

## II.     Plaintiffs have Not Met NVRA's Prerequisite to Suit.

Plaintiffs' NVRA claims against the Texas Defendants fail as they did not provide adequate notice as required by the Act as a prerequisite to suit. It is true that Plaintiffs say in conclusory fashion that they placed the Texas Defendants "on notice of the various potential violation [*sic*] of federal and state law,"[141] but this superficial statement cannot help them—not even at this stage of litigation.[142] In fact, only United provides a letter sent to Secretary Nelson on February 11, 2024[143] concerning alleged failures "to follow the Texas Election Code" based upon an accompanying report.[144] That letter did not mention any NVRA violations. But even were the Court to find that United's letter satisfied NVRA's notice requirement, that fact still would not permit CDF or Johnson to pursue a claim.

*NVRA's Notice Requirement.* A private claim under NVRA may only proceed upon notice to a state's chief election official pursuant to 52 U.S.C. § 20510(2), giving that official 90 days to correct the violation (or 20 days if the alleged violation occurs within 120 days of an election for federal

---

[137] *Id.* at 283.
[138] *Id.* (emphasis added).
[139] Compl., ¶ 151 (emphasis in original).
[140] *Sandusky Cnty Dem. Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (permitting private plaintiffs to sue for a violation of HAVA under 42 U.S.C. § 1983, but only as to a provision of the Act creating a right to cast a provisional ballot).
[141] Compl., ¶ 176; *see also id.*, ¶ 122 (in which Plaintiffs say without any explanation that "Petitioners here have provided notice to the State of Texas as required by NVRA.").
[142] *See Iqbal*, 556 U.S. at 681 (explaining that conclusory allegations are "not entitled to be assumed true.") (citation omitted).
[143] Doc. 5-1, pp. 4–5.
[144] *Id.*, pp. 45–84.

office).[145] Only if uncorrected may an aggrieved person who gave notice bring a civil action for declaratory or injunctive relief *with respect to the noticed violation*.[146] Plaintiffs did not allege they provided *adequate* notice to Secretary Nelson. So, they did not establish a condition precedent to their claim.[147]

      *CDF and Johnson Do Not Claim to Have Given Notice.* Plaintiffs bring this lawsuit more than 30 days from an election for federal office, but do not allege facts showing they gave notice to Secretary Nelson (or General Paxton) of any NVRA violations. As the Fifth Circuit has explained, a plaintiff's "failure to provide notice [under NVRA] is *fatal* to his suit."[148] Nor does it help Johnson or CDF that United may have tried to provide notice, as the Fifth Circuit also explained in *Scott* that one party "cannot piggyback on [another party's] notice[.]"[149] Indeed, "[t]o the extent that [a party] seeks relief for himself in [an NVRA] action, he has no basis for relief [where] he did not file notice."[150]

      *United's February 2024 Letter Does Not Satisfy NVRA's Notice Requirement.* United cannot pursue a NVRA claim because its letter did not provide adequate notice. Mentioned earlier,[151] courts will find notice sufficient "when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a violation of the NVRA and intends to commence litigation if the violation is not timely addressed."[152] United's letter threatens "further action" if Secretary Nelson "dismiss[ed] the facts forming the basis of this inquiry," but United did not explain that "action" would include litigation.[153]

      More importantly, at no point did United articulate how the Texas Defendants purportedly failed to comply with NVRA, or where to look for a solution to United's concerns.[154] In fact, they

---

[145] *Id.*
[146] *Id.* (emphasis added).
[147] An exception to NVRA's notice requirement exists, but it does not apply here. *See* 52 U.S.C. § 20510(3).
[148] *Scott*, 771 F.3d at 835–36 (emphasis added).
[149] *Id.* at 836.
[150] *Id.*
[151] *Supra*, p. 5.
[152] *Pub. Int. Legal Found.*, 370 F.Supp.3d at 457 (citations omitted).
[153] *Id.*, pp. 4–5.
[154] Doc. 5-1, pp. 4–5, 45–84.

admit that "we do not know who is responsible for these potential violations."[155] To this end, United's letter itself identifies no NVRA violations of any kind,[156] and the report accompanying the letter also does not identify any genuine noncompliance with NVRA.[157] Instead, in the few places where United raises the possibility of noncompliance with federal election law,[158] their report finds noncompliance is merely "suspect."[159] And of the remaining concerns United raised regarding noncompliance with federal law, one point involved HAVA,[160] and the remaining point was no violation of NVRA at all.[161]

Namely, whereas United pointed out that some voter registrations in Texas involved individuals presumably too old to be alive, the provision they cite—52 U.S.C. § 20507—provides only that states must "conduct a general program that *makes a reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters."[162] United does not allege facts showing that the Texas Defendants failed to conduct such a program. Nor do Plaintiffs show that NVRA permits them to challenge a state program reflecting efforts that may not do everything a private plaintiff wishes to be done. Thus, United never put Secretary Nelson on notice of specific NVRA violations in such a way that she had "an opportunity to attempt compliance . . . before facing litigation."[163]

## III.   Mandamus is Not Available to Plaintiffs.

Plaintiffs ask the Court to require Defendants to comply with and enforce HAVA, NVRA, and the Texas Election Code through issuance of a writ of mandamus.[164] Unlike an injunction, which "'is a remedy to restrain the doing of injurious acts' or to require 'the undoing of injurious acts and

---

[155] *Id.*, p. 5.
[156] Doc. 5-1, pp. 4–5.
[157] *Id.*, pp. 45–84.
[158] *Id.*, pp. 61, 63, 65, 66.
[159] *Id.*, pp. 63, 66.
[160] *Id.*, p. 65.
[161] *Id.*, p. 61.
[162] 52 U.S.C. § 20507 (emphasis added).
[163] *Scott*, 771 F.3d at 836 (citation and internal quotation marks omitted).
[164] Compl., ¶ 206; *but see Pennhurst*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion of state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

the restoration of the status quo,'" "mandamus 'commands the performance of a particular duty that rests on the defendant or respondent, by operation or law or because of official status.'"[165]

Plaintiffs ignore the plain language of the Federal Rules of Civil Procedure, which bars their petition: "[t]he writs of scire facias and mandamus are abolished. Relief previously available through them may be obtained by appropriate action or motion under these rules."[166] Plaintiffs elsewhere say that "injunctive and/or declaratory relief is inapplicable" here.[167] Thus, "since the present request s[eeks] only mandamus," the Court may dismiss it.[168] Plaintiffs also provide no basis for mandamus.

A.    The All-Writs Act Does Not Provide for Relief Against the Texas Defendants.

Plaintiffs seek mandamus relief against Secretary Nelson and General Paxton under the All-Writs Act, but this claim is foreclosed by binding precedent. As the Fifth Circuit has explained, federal courts do not have jurisdiction to grant mandamus relief directing state officials to perform their duties under federal law in the absence of another basis for jurisdiction.[169] Indeed, "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute,"[170] and empowers federal courts only to "issue all writs necessary or appropriate *in aid of* [its] respective jurisdiction[] and agreeable to the usages and principles of law."[171]

Plaintiffs also contend that U.S. Const. art. I, § 4 makes Secretary Nelson and General Paxton federal or quasi-federal officials when they act to fulfill Texas's responsibilities under federal election law or when administering Texas's federal elections.[172] They say so because 28 U.S.C. § 1361 permits

---

[165] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011) (quoting 2 AM. JUR. 2D *Injunctions* § 7 (2024)).
[166] Fed. R. Civ. P. 81(b).
[167] Compl., ¶ 216.
[168] *Moye v. Clerk, Dekalb Cnty. Sup. Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam) (affirming dismissal of petition).
[169] *Smith v. Marvin*, 846 F. App'x. 259, 260 (5th Cir. Apr. 1, 2021) (quoting *Moye*, 474 F.2d at 1276).
[170] *Pennsylvania Bur. of Corr. v. U.S. Marshals Svc.*, 474 U.S. 34, 43 (1985).
[171] 28 U.S.C. § 1651(a) (emphasis added).
[172] Compl. ¶ 228.

mandamus against "an officer or employee *of the United States . . . to perform a duty owed to the plaintiff.*"[173] Plaintiffs identify no specific duties that the Texas Defendants owe them under NVRA or HAVA.

Plaintiffs' argument also ignores basic principles of federalism and the Tenth Amendment to the United States Constitution. To be clear, Plaintiffs cite no authority remotely suggesting that Congress can effectively commandeer states' attorneys general and secretaries of state and convert them into federal agents. And their position is at odds with the anti-commandeering principle recognized in *Printz v. United States*: "[t]he Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program."[174] Congress appeared to recognize as much when it enacted NVRA: "[each State] shall designate a State officer or employee as *the chief State election official* to be responsible for coordination of *State responsibilities* under this chapter."[175]

B.     Plaintiffs Do Not Make the Necessary Showing to Obtain Mandamus.

Even if Plaintiffs could seek mandamus against the Texas Defendants, mandamus is only available where: "(1) no other adequate means exist to attain the relief, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances."[176]

*Plaintiffs Do Not Show that No Other Adequate Remedy Exists.* Mandamus requires exhaustion of administrative remedies,[177] otherwise a plaintiff cannot say that no other adequate remedy exists.[178] But Plaintiffs do not allege that any of them filed grievances through Texas's HAVA complaint procedure, and no Plaintiff complied with NVRA's notice provision.

*Plaintiffs' Right to Mandamus is Not Clear and Indisputable.* For the reasons set out above, including Plaintiffs' lack of standing and failure to state any legal claim entitling them to relief,

---

[173] 28 U.S.C. § 1651(a) (emphasis added).
[174] 521 U.S. 898, 935 (1997).
[175] 52 U.S.C. § 20509 (emphasis added).
[176] *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (emphasis added; citation omitted).
[177] *Chambers v. Kijakazi*, 86 F.4th 1102, 1107 (5th Cir. 2023) (citation omitted).
[178] *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980).

they have not demonstrated a clear and indisputable right to issuance of a writ of mandamus.

Separately, "mandamus is not available to review discretionary acts of agency officials."[179] While HAVA sets minimum requirements for federal elections, the statute plainly provides that "[t]he specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State."[180] Mandamus is not appropriate for such acts.

***Mandamus is Not Appropriate under these Circumstances.*** If granted, and the Court were to remove Texas's control over administration of its federal elections, mandamus would serve only to undermine the "integrity of the election process."[181] As the Supreme Court explained in *Purcell v. Gonzalez*, "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls."[182] As the "election draws closer, that risk will increase."[183] Thus, mandamus would only serve to exacerbate the concerns Plaintiffs complain of.

## CONCLUSION

For the forgoing reasons, the Court should dismiss Plaintiffs' claims with prejudice.

Date:  October 8, 2024

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

Respectfully submitted,

*/s/ Cole P. Wilson*
**COLE P. WILSON**
Assistant Attorney General
Texas State Bar No. 24122856
Cole.Wilson@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

***COUNSEL FOR TEXAS SECRETARY OF STATE NELSON AND ATTORNEY GENERAL PAXTON***

---

[179] *Randall D. Wolcott, M.D., P.A.*, 635 F.3d at 768 (citation and internal quotation marks omitted).
[180] 52 U.S.C. § 21085.
[181] *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (citation and internal quotation marks omitted).
[182] *Id.* at 4–5.
[183] *Id.* at 5.

**CERTIFICATE OF SERVICE**

I certify that a copy of the document above was served on all counsel of record who have entered an appearance on October 8, 2024, using the Federal Court CM/ECF system.

*/s/ Cole P. Wilson*