## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

UNITED SOVEREIGN AMERICANS, INC.,
BERNARD JOHNSON, AND CITIZENS
DEFENDING FREEDOM,

      *Plaintiffs*,

v.

JANE NELSON, in her official capacity as the
Secretary of State of Texas, KEN PAXTON, in
his official capacity as the Attorney General of Texas, and
MERRICK GARLAND, in his official capacity as
Attorney General of the United States,

      *Defendants.*

Case No. 2:24-cv-00184

## BRIEF IN SUPPORT OF MOTION TO INTERVENE BY TEXAS STATE CONFERENCE OF THE NAACP AND LEAGUE OF WOMEN VOTERS OF TEXAS

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND BACKGROUND ................................................................ 1

ARGUMENT ....................................................................................................... 2

    I.     PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS
OF RIGHT UNDER RULE 24(A)(2). ................................................... 2

          A.     The Motion Is Timely. ............................................................. 2

          B.     Proposed Intervenors Have Substantial Legal Interests Supporting
Intervention. ........................................................................... 4

          C.     The Interests of Proposed Intervenors and Their Members Will Be
Impaired if They Are Not Permitted to Intervene. ...................................... 8

          D.     Proposed Intervenors' Interests Are Not Adequately Protected by
Defendants. ........................................................................... 10

    II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT
PERMISSIVE INTERVENTION. ...................................................... 14

CONCLUSION ................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bellitto v. Snipes*,
No. 16-61474, 2016 WL 5118568 (S.D. Fla. Sept. 20, 2016) .............................................6, 12

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022)...........................................................................................................10

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) ..............................................................................2, 4, 5, 8, 10

*Carter v. Dies*,
321 F. Supp. 1358 (N.D. Tex. 1970) .....................................................................................5

*DeOtte v. Azar*,
332 F.R.D. 173 (N.D. Tex. 2019) .......................................................................................14

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) ...........................................................................................3, 10

*Energy Gulf States La., L.L.C. v. EPA*,
817 F.3d 198 (5th Cir. 2016) ...............................................................................................2

*Franciscan All., Inc. v. Azar*,
414 F. Supp. 3d 928 (N.D. Tex. 2019) ...................................................................................5

*Ind. State Conf. of NAACP v. Lawson*,
326 F. Supp. 3d 646 (S.D. Ind. 2018) ....................................................................................9

*Issa v. Newsom*,
No. 20-01055, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ...................................................6

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
806 F.2d 1285 (5th Cir. 1987) ...........................................................................................14

*Kobach v U.S. Election Assistance Comm'n*,
No. 13-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ......................................................6

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ........................................................................................ *passim*

*La Union del Pueblo Entero v. Abbott*,
No. 5:21-CV-00844, Order, ECF No. 1157 (W.D. Tex. Sept. 28, 2024) ....................................14

*Labrew v. A&K Truckline, Inc.*,
    No. 2:23-CV-079, 2023 WL 7420203 (N.D. Tex. Nov. 9, 2023)..............................................3

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ....................................................................................................5

*League of United Latin American Citizens v. Abbott*,
    No. EP-21-CV-00259, 2021 WL 5417402 (W.D. Tex. Nov. 19, 2021).................................14

*La. State Conf. of the NAACP v. Louisiana*,
    No. 19-479-JWD-SDJ, 2022 WL 2663850 (M.D. La. July 11, 2022).....................................3

*Martin v. Crittenden*,
    347 F. Supp. 3d 1302 (N.D. Ga. 2018) ....................................................................................5

*McDonald v. E.J. Lavino Co.*,
    430 F.2d 1065 (5th Cir. 1970) ..................................................................................................2

*Meek v. Metro. Dade Cnty.*,
    985 F.2d 1471 (11th Cir. 1993) ..............................................................................................13

*Mi Familia Vota v. Abbott*,
    497 F. Supp. 3d 195 (W.D. Tex. 2020)..................................................................................13

*Nw. Ausin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2012)................................................................................................................13

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir. 1980) ..................................................................................................4

*Pub. Int. Legal Found., Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020)...................................................................................6

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ....................................................................................... *passim*

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) .............................................................................................3, 15

*Swoboda v. Manders*,
    665 F. App'x 312 (5th Cir. 2016) .............................................................................................3

*Tex. League of United Latin Am. Citizens v. Abbott*,
    493 F. Supp. 3d 548 (W.D. Tex. 2020) ..................................................................................13

*Tex. State Conf. of the NAACP Branches v. Abbott*,
    No. 1:20-cv-1024-RP (W.D. Tex. Oct. 16, 2020)..................................................................13

*Tex. State Conf. of the NAACP et al. v. Abbott et al.*,
No. 01-22-00122-CV (Tex. App.—Houston [1st Dist.] 2023, pet. pending) ........................14

*Texas v. U.S. Dep't of the Interior*,
No. 23-CV-00047-DC, 2023 WL 11759736 (W.D. Tex. Aug. 29, 2023) ................................4

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ....................................................................................4, 10, 12

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ................................................................................................................4

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ..............................................................................................................10

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) ................................................................................................13

## Statutes

52 U.S.C. § 20507(c)(2) ...............................................................................................................7

Tex. Elec. Code § 16.061 .............................................................................................................7

Fed. R. Civ. P. 24 .........................................................................................................................2

Fed. R. Civ. P. 24(a) ....................................................................................................4, 6, 8, 9, 14

Fed. R. Civ. P. 24(a)(2) .......................................................................................................1, 2, 14

Fed. R. Civ. P. 24(b) ............................................................................................................1, 14

Fed. R. Civ. P. 24(b)(1) ...............................................................................................................2

Fed. R. Civ. P. 24(b)(2) .............................................................................................................15

## Other Authorities

Press Release, Ken Paxton, Att'y Gen. of Tex.,  *Attorney General Ken Paxton
Urges Texas Secretary of State to Request Citizenship Data from Biden
Administration to Identify Potentially Ineligible Voters Before 2024 Election*
(Sept. 18, 2024),
https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-
paxton-urges-texas-secretary-state-request-citizenship-data-biden ........................11

Letter to Jane Nelson, Sec'y of State of Texas, Ken Paxton, Att'y Gen. of Tex.,
*Proposed Request to USCIS* (Sept. 18, 2024),
https://www.texasattorneygeneral.gov/sites/default/files/images/press/Propose
d%20Request%20to%20USCIS.pdf ...........................................................................11

## <u>INTRODUCTION AND BACKGROUND</u>

Proposed Intervenor-Defendants ("Proposed Intervenors") Texas State Conference of the NAACP ("Texas NAACP") and the League of Women Voters of Texas ("LWVTX" or "the League") move, under Federal Rule of Civil Procedure ("Rule") 24(a)(2), to intervene as of right as Defendants in this matter, or in the alternative, for permissive intervention under Rule 24(b).

Plaintiffs' nebulous request for judicial intervention on the eve of an election, seemingly up to and including lawlessly removing thousands of voters from the voter rolls and denying the certification of election results, is unprecedented, has zero basis in law or fact, and would undermine not only the secure and efficient administration of elections in Texas, but also the voting rights of Texas voters.

Proposed Intervenors are civil rights organizations dedicated to protecting the voting rights of their members and all Texans, including Black voters and other voters of color who have faced barriers to the exercise of their rights to fully participate and vote in Texas. As part of that mission, Proposed Intervenors work across the State to educate and register voters, help voters access mail ballots, mobilize voters to the polls, and more. *E.g.*, App.4, App.6, App.11.

Proposed Intervenors seek to intervene as Defendants on behalf of their members and on behalf of themselves. Plaintiffs' requested relief of interfering with voter rolls, particularly on the eve of an election, and preventing election certification would threaten the voting rights of all Texans, sow baseless confusion, and force Proposed Intervenors to divert precious resources away from core activities like voter mobilization, education, and election protection toward identifying and assisting affected voters. Affected voters will include Proposed Intervenors' members who intend to vote in the upcoming election, as well as in future elections that would be disrupted if the Court grants the requested relief.

Proposed Intervenors satisfy each requirement for intervention as a matter of right under Rule 24(a)(2), and the Court should grant the motion to intervene. Alternatively, the motion should be granted on a permissive basis under Rule 24(b)(1).

## ARGUMENT

## I.   PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(A)(2).

Texas NAACP and the League are entitled to intervene as of right. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed," *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014), "with doubts resolved in favor of the proposed intervenor," *Energy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (internal quotation marks omitted). Pursuant to Rule 24(a)(2), a non-party is entitled to intervention if: (1) the application is timely; (2) the applicant has an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest is inadequately represented by the existing parties to the suit. *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994). "Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Id.* at 1205 (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

Proposed Intervenors easily meet each of these requirements.

### A.   The Motion Is Timely.

Courts consider four factors when examining the timeliness of a motion to intervene. These are (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be

intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Sierra Club*, 18 F.3d at 1205 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)).

Each of the timeliness factors weigh in favor of Proposed Intervenors. *First*, Proposed Intervenors have not delayed in filing—they learned of this litigation shortly after its filing and are submitting this motion in the infancy of the case, during the pleading stage. *See, e.g.*, *Swoboda v. Manders*, 665 F. App'x 312, 314 (5th Cir. 2016) (motion to intervene timely when filed 45 days after learning that original parties would not protect movant's interests and 625 days after complaint was filed); *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (motion to intervene filed after "only 37 and 47 days . . . [was] not unreasonable"); *Sierra Club*, 18 F.3d at 1206 (motion to intervene filed two months after movants became aware that Forest Service would not protect their interests considered timely); *Labrew v. A&K Truckline, Inc.,* No. 2:23-CV-079-Z-BR, 2023 WL 7420203, at *4 (N.D. Tex. Nov. 9, 2023) (intervention timely when "litigation has not progressed at all"); *La. State Conf. of the NAACP v. Louisiana*, No. 19-479-JWD-SDJ, 2022 WL 2663850, at *6 (M.D. La. July 11, 2022) ("The Fifth Circuit has found motions to intervene filed both close to and longer than two months were timely.").

*Second*, no existing party to the litigation is prejudiced by intervention because of the short time between the initiation of this lawsuit and this motion, as well as the fact that no scheduling order has been issued, and not all defendants have filed responsive pleadings or motions. *See Labrew*, 2023 WL 7420203, at *4 (no prejudice "when case is still in its infancy"). Intervention will not delay litigation proceedings, and this factor weighs in favor of Proposed Intervenors.

*Third*, Proposed Intervenors will be prejudiced if they are unable to intervene and defend their interests, as discussed in detail below. *See Infra* Part I.C. The Organizations' members face the risk of potential disenfranchisement and on top of that, the Organizations must divert considerable resources away from planned activities to respond to any problems that would arise if the requested relief is granted. App.6–7, App.12–13.

 *Fourth*, there are no unusual circumstances in this matter that bear on timeliness of intervention. Proposed Intervenors' motion is therefore timely.

### B.     Proposed Intervenors Have Substantial Legal Interests Supporting Intervention.

A party is entitled to intervene as of right under Rule 24(a) if their interest in the subject matter of the litigation is "direct, substantial, [and] legally protectable." *Sierra Club*, 18 F.3d at 1207 (5th Cir. 1994) (quoting *Piambino v. Bailey*, 610 F.2d 1306, 1321 (5th Cir. 1980) (citations omitted)). "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015)). Courts judge the intervenor's interest "by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).[1]

---

[1] Defendant-Intervenors need not establish Article III standing if they do not seek relief, through a counter-claim, cross-claim, or any other claim for relief, that is not sought by existing parties. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017) (intervenor must establish standing if they wish to "pursue relief" different from existing parties); *Texas v. U.S. Dep't of the Interior*, No. 23-CV-00047-DC, 2023 WL 11759736, at *2 (W.D. Tex. Aug. 29, 2023) (certain intervenor-defendants—those who do not raise counterclaim, cross-claim, or any other claim for relief—need not establish Article III standing to successfully intervene); *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019) (relying on *Town of Chester* and holding defendant intervenors do not "seek relief" and therefore need not demonstrate standing, in part because "'relief' is linked to affirmative claims, not defenses").

Proposed Intervenors are both "public interest group[s]" with at least two significant interests at stake in this litigation that raise "public interest question[s]," *Brumfield*, 749 F.3d at 344: (1) ensuring that the members and constituents they serve remain registered to vote and are able to participate successfully and have their votes counted in the upcoming General Election and in future elections, and (2) continuing to engage in critical election-year activities and other organizational priorities without having to divert resources from those core organizational activities to address the harms to their members and the voting public that will likely flow from Plaintiffs' requested relief.

As to their members, many are eligible voters who are registered to vote in Texas and intend to vote in the General Election and in future elections. *See* App.4–6, App.12. The disposition of this suit will directly impact the members, communities, and constituents of Proposed Intervenors—eligible voters who stand to be disenfranchised if they are improperly removed from the voter rolls just before the election or if elections in which they voted are not certified. App.6, App.12. Proposed Intervenors' interest in protecting their members' rights is itself a sufficient basis for intervention. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) (voter has sufficient interest to intervene to "protect his right to vote" in at-large, rather than single member district elections); *Carter v. Dies*, 321 F. Supp. 1358, 1360 (N.D. Tex. 1970) (three-judge district court) (voters have right to intervene based on claim that "filing fees deprive them of their right to vote for a candidate of their own choice"); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018) (intervention as of right appropriate where voter intervenors would be potentially disenfranchised by the requested relief); *Bellitto v. Snipes*, No. 16-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 20, 2016) (organization allowed to intervene where it "asserts that its interest and the interests of its members would be threatened by

5

the court-ordered 'voter list maintenance' sought by Plaintiffs"); *cf. Pub. Int. Legal Found., Inc. v. Winfrey* ("*PILF*"), 463 F. Supp. 3d 795, 798–802 (E.D. Mich. 2020) (permitting League intervention in National Voter Registration Act suit to purge voters to protect interests of its members and "assure that no overzealous measures going beyond the reasonable list maintenance program required by the statute are employed, which could increase the risk of properly registered voters being removed by mistake").

Proposed Intervenors also have an interest in carrying out their core mission by continuing to devote all their resources to their planned elections-related programs and other organizational priorities. App.6–7, App.12–13. Courts routinely find that organizations, including public interest organizations like Proposed Intervenors, should be granted intervention in voting cases when they demonstrate harm to their core missions and activities. *See, e.g.*, *La Union*, 29 F.4th at 306 (Republican Party committees satisfied interest requirement under Rule 24(a) because they expend resources to recruit and train volunteers and poll watchers, whose conduct is regulated by challenged law); *Kobach v U.S. Election Assistance Comm'n*, No. 13-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (advocacy groups allowed to intervene where organizational interests broadly articulated as "either increasing participation in the democratic process, or protecting voting rights, or both, particularly amongst minority and underprivileged communities"); *PILF*, 463 F. Supp. 3d at 798–802; *Issa v. Newsom*, No. 20-01055, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (civil rights organizations permitted to intervene on grounds that if plaintiffs won, then proposed intervenors would "have to devote their limited resources to educating their members on California's current voting-by-mail system and assisting those members with the preparation of applications to vote by mail").

Here, Proposed Intervenors have robust plans for pre-election programming in service of their core missions, much of which is already in full swing. App.4, App.11. Proposed Intervenors have been assisting their members, communities, and other prospective voters in registering to vote; educating them about voting in the upcoming General Election; and planning activities to mobilize these voters to the polls. App.6, App.11. But their work is at risk of being undermined if this Court orders (as Plaintiffs appear to request) Defendants to needlessly remove large swaths of registered voters from the voter rolls just before the General Election or to withhold certification of election results. This risk is particularly heightened here, where Proposed Intervenors would have to divert resources from their ordinary pre-election work, which they planned to take place during the NVRA's 90-day quiet period, *see* 52 U.S.C. § 20507(c)(2), during which removing voters from the voter rolls pursuant to systematic programs, as requested by Plaintiffs, is prohibited. App.6, App.12.

Instead, Proposed Intervenors will be forced to spend their resources educating voters about the State's plan to cancel registrations and contacting voters who have been removed from voter rolls. App.6, App.12–13. For voters whose registration is canceled after the October 7, 2024, registration deadline, *see* Tex. Elec. Code § 16.061, Proposed Intervenors will have to educate voters about cumbersome procedures to challenge the cancellation of their registration. App.6, App.12.  In such a scenario, Proposed Intervenors would need to assist voters who might be purged, to look up whether their members and constituents are subject to a purge, and to follow up on their members' behalf prior to Election Day, all of which would require inordinate staff and volunteer time and resources they cannot afford to lose. App.6, App.12 –13. For future elections, Proposed Intervenors will have to divert their resources toward re-registering voters who were removed from the voter rolls, as opposed to their usual focus on registering first-time voters and other election

7

activities. App.6–7, App.11–12. Having to spend scarce volunteer and staff time to respond to these issues would thus prevent Propose Intervenors from registering new voters in the time that is left (as distinct from re-registration or cancellation challenges and the attendant separate focus those would require) and conducting voter education, and voter mobilization. App.7, App.11–12. And these harms to Proposed Intervenors will be repeated ahead of any future election where the proposed relief is initiated or during which voters have to re-register because of improper registration cancellations.

Proposed Intervenors thus have significant protectible interests in intervention.

### C.      The Interests of Proposed Intervenors and Their Members Will Be Impaired If They Are Not Permitted to Intervene.

"The third requirement of [R]ule 24(a) is that the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest." *Sierra Club*, 18 F.3d at 1207 (5th Cir. 1994). Importantly, proposed intervenors need not "establish that their interests *will* be impaired." *Brumfield*, 749 F.3d at 344. Proposed intervenors "need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union*, 29 F.4th at 307. "It would indeed be a questionable rule that would require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests. The very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Brumfield*, 749 F.3d at 344–45.

As discussed in detail above, Proposed Intervenors' interests and those of their members may be impaired if denied intervention. *See supra* Section I.B; *see also Ind. State Conf. of the NAACP v. Lawson*, 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd sub nom*, *Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019) ("Historically. . . throughout the country, voter registration

8

and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy."). If this Court were to grant some or all of Plaintiffs' requested relief, Proposed Intervenors' members and the constituents they serve would be at risk of improper removal from the voter registration rolls or having their ballots disregarded by the pre-emptive denial of election certification. As such, Proposed Intervenors satisfy the impairment prong of Rule 24(a).

Proposed Intervenors also satisfy the impairment requirement because their core missions and organizational interests would be directly impaired by a judgment that would force them to divert substantial time and resources to educating and assisting members and constituents who have their voter registration canceled or otherwise impacted, especially after the October 7, 2024 registration deadline, and taking other action to ensure that the duly cast votes of its members and constituents are counted. *See La Union*, 29 F.4th at 307 (impairment requirement satisfied when outcome of lawsuit "may change what the [intervenors] must do to prepare for upcoming elections," and intervenors "will have to expend resources to educate their members on the shifting situation in the lead-up" to elections). The relief sought here would further implicate Proposed Intervenors' interests in future elections, where they would have to divert their resources to re-registering voters who had been improperly removed from voter rolls or improperly had their registration information changed and may again be at risk of their votes not being counted. Proposed Intervenors easily satisfy the third requirement of intervention as of right.

**D.      Proposed Intervenors' Interests Are Not Adequately Protected by Defendants.**

Finally, the existing parties in this litigation do not adequately protect the interests of Proposed Intervenors. For the inadequacy-of-representation requirement, a proposed intervenor "need not show that the representation by existing parties will be, for certain, inadequate," *Texas*, 805 F.3d at 661 (citation omitted), but only that it *may* be inadequate, *see id.* (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Although proposed intervenors must demonstrate potential inadequate representation, that burden is "minimal." *Edwards*, 78 F.3d at 1005.  And mere similarity of interests between the existing parties is "normally not enough" to support adequate representation which would defeat intervention as of right. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196–97 (2022) (internal citations omitted).

Thus, while the Fifth Circuit recognizes certain "presumptions of adequate representation," *Brumfield*, 749 F.3d at 345, such as where the existing defendant is "a governmental body or officer charged by law with representing the interests of the [intervenor]," *Texas*, 805 F.3d at 661–62 (citation omitted), this presumption can be and is often overcome when the interests or objectives of the proposed intervenor "diverge from the putative representative's interests in a manner germane to the case," *La Union*, 29 F.4th at 308 (quoting *Edwards*, 78 F.3d at 662); *accord Texas*, 805 F.3d at 661–62 (citation omitted).

Here, Plaintiffs plainly do not represent Proposed Intervenors' interests, as the relief they request risks disenfranchising Proposed Intervenors' members.  Accordingly, Proposed Intervenor easily meet their minimal burden to show likely inadequate representation.

As an initial matter, Defendant Garland has not filed any motion or responsive pleading, and no counsel for Defendant Garland has yet appeared in this litigation.

With respect to State Defendants, Secretary Nelson and Attorney General Paxton have already taken certain action to voluntarily do what Plaintiffs seek in this suit, *see* Compl. ¶ 56. Secretary Nelson has initiated a process to request citizenship data from federal immigration officials for comparison to a list of individuals on Texas's voter rolls whose citizenship supposedly cannot be verified using existing state sources. Press Release, Ken Paxton, Att'y Gen. of Tex., *Attorney General Ken Paxton Urges Texas Secretary of State to Request Citizenship Data from Biden Administration to Identify Potentially Ineligible Voters Before 2024 Election* (Sept. 18, 2024).[2] Following up on this request, Attorney General Paxton subsequently sent a list of over 450,000 voters, originally provided by Secretary Nelson, to federal immigration officials for citizenship verification. *Attorney General Ken Paxton Demands Citizenship Data From Biden-Harris Administration To Investigate Potential Noncitizen Voters*.[3] Such requests are contrary to the interests of Proposed Intervenors, who are strongly committed to *removing* barriers on the right to vote for all eligible U.S. citizens and all voters. App.6–7, App.11–12.

In contrast, the actions taken by Defendant Nelson and Defendant Paxton will result in unjustified burdens being placed on naturalized U.S. citizens, who are eligible to vote but for whom there may be outdated or incorrect information in federal or state databases. For example, the list of 450,000 voters sent by Attorney General Paxton to immigration officials suggests that a substantial number of eligible voters would be incorrectly flagged in this process. *Supra* fn. 3. Defendant Paxton suggested, in a draft letter urging Defendant Nelson to issue this request, that "approximately one million people" should have their voter registration subject to this process,

---

[2] Available at https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-urges-texas-secretary-state-request-citizenship-data-biden.
[3] Available at https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-demands-citizenship-data-biden-harris-administration-investigate.

likewise suggests that a substantial number of eligible voters would be incorrectly flagged in this process. Letter to Jane Nelson, Sec'y of State of Texas, Ken Paxton, Att'y Gen. of Tex., *Proposed Request to USCIS* (Sept. 18, 2024).[4] At a minimum, these actions suggest that the State Defendants in the lawsuit may have different interests in the resolution of this litigation than Proposed Intervenors. That State Defendants have a divergence of interests from Proposed Intervenors is more than enough to show that they would be unlikely to provide adequate representation. *See Texas*, 805 F.3d at 661.

In addition, Proposed Intervenors' interests are different from Defendants as government entities. Even assuming that Defendants are generally interested in defending against Plaintiffs' myriad claims under federal and state law, they may have different reasons for taking the positions that they do. As elected and appointed officials, Defendants' "interests and interpretation of the NVRA," as well as other federal laws, "may not be aligned and [their] reasons for seeking dismissal" may very well be different from those of Texas NAACP and LWVTX. *See Bellitto*, 2016 WL 5118568, at *2; *La Union*, 29 F.4th at 308 (interests of intervenors diverged from that of State where State preferred not to resolve case on merits at all but dismiss on sovereign immunity grounds while intervenors wished to defend constitutionality of statutes). Moreover, the existing government Defendants may not have any particular interest in defending the list maintenance, election security, and election certification practices that are carried out at the county level in Texas, not by Defendants themselves, even though these practices directly affect Proposed Intervenors and their members.

---

[4] available at
https://www.texasattorneygeneral.gov/sites/default/files/images/press/Proposed%20Request%20t
o%20USCIS.pdf.

Proposed Intervenors also have a particular interest in ensuring broad voter access—especially for Black voters and other voters of color—that is fundamental to their missions. But Defendants have responsibilities related to the administration of elections and incentives as elected officials that do not necessarily further those particular objectives, either. *See, e.g.*, *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds*, *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007); *see also Sierra Club*, 18 F.3d at 1208 ("government must represent the broad public interest," not only the concerns of a particular constituency).

Indeed, Proposed Intervenors have repeatedly sued some of these same Defendants or their predecessors in office for various violations of voting laws. *See, e.g.*, *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2012) (TX NAACP intervened in case concerning Texas utility district seeking "bailout" under VRA); *Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc) (Texas voter ID law violated Section 2 of the VRA); Complaint at 17-20, *Tex. State Conf. of NAACP Branches v. Abbott*, No. 1:20-CV-1024-RP (W.D. Tex. Oct. 16, 2020) (challenging Texas order prohibiting counties from providing voters with more than one location to return mail in ballots under First and Fourteenth Amendments and VRA Section 2); *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195 (W.D. Tex. 2020) (mask-mandate exemption violated Section 2 of the NVRA because it discriminated against Black and Latino voters); *Tex. League of United Latin Am. Citizens v. Abbott*, 493 F. Supp. 3d 548 (W.D. Tex. 2020) (challenge brought by LWVTX and others against state proclamation prohibiting counties from providing absentee voters the benefit of returning ballots to multiple drop box locations in person); *La Union del Pueblo Entero v.*

13

*Abbott*, No. 5:21-CV-00844, Order, ECF No. 1157 at 53–67   (W.D. Tex. Sept. 28, 2024) (restriction on compensated canvassers from conducting voter advocacy near mail-in-ballots in SB 1 to violate the First and Fourteenth Amendments, in challenge brought by LWVTX and others); Petition, *Tex. State Conf. of the NAACP et al. v. Abbott et al.*, No. 01-22-00122-CV (Tex. App.— Houston [1st Dist.] 2023, pet. pending) (challenging SB 1's changes to Texas Election Code); *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259, 2021 WL 5417402 (W.D. Tex 2021) (consolidating redistricting challenges against State brought by groups including TX NAACP).

That Proposed Intervenors and the State Defendants have frequently held opposing policy and litigation positions on some of the issues of election administration and voting access raised by the Complaint here strongly indicates that those Defendants may not adequately represent Proposed Intervenors' interests. For these reasons, Proposed Intervenor's interests sufficiently diverge from the existing parties to satisfy Rule 24(a)(2). Because they meet every requirement of Rule 24(a)(2), the Court should grant Proposed Intervenor's motion to intervene as of right.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

If the Court determines that Proposed Intervenor is not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. "Permissive intervention under Rule 24(b) 'is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'" *DeOtte v. Azar*, 332 F.R.D. 173, 178 (N.D. Tex. 2019) (quoting *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987)).

Intervention under Rule 24(b) is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact

14

in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *DeOtte v. Azar*, 332 F.R.D. 173, 178 (N.D. Tex. 2019) (citation omitted).

Proposed Intervenors satisfy these factors. As explained above, Proposed Intervenors' motion is timely, and granting the motion at this early stage of the case will not delay or prejudice the adjudication of the original parties' rights. *Supra* Section I.A. By contrast, refusing to permit intervention will deprive Proposed Intervenors of the chance to defend their significant and protectable interests in the litigation. *See supra* Sections I.B–C. *See Stallworth*, 558 F.2d at 269 ("interest" prong of Rule 24(b)(2) should be given "liberal construction").

As explained above, Proposed Intervenors represent many Texans whose votes are at risk if the relief sought is granted. Proposed Intervenors also have particular knowledge about the risks to voters associated with upending election rules mere weeks before a general election of great national interest. Ensuring that the interests of these voters are advanced is a critical perspective that would serve the interests of the Court. Moreover, Proposed Intervenors stand to divert significant resources that they have already budgeted and scheduled for election preparations and other programming if Plaintiffs win some or all the relief they seek. Further, Proposed Intervenors would likewise have to divert resources from preparing for future elections to deal with the aftermath of the relief sought here. As such, Texas NAACP and LWVTX should be permitted to intervene to defend their interests and those of their members.

## CONCLUSION

For the reasons stated above, the Court should grant Proposed Intervenors' Motion to Intervene.

Respectfully submitted this 9th day of October 2024,

Ezra D. Rosenberg*
Pooja Chaudhuri*
Heather Szilagyi*
Grace Thomas*
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
gthomas@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL
  RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Edgar Saldivar
Texas Bar No. 24038188
Thomas Buser-Clancy*
Texas Bar No. 24078344
Ashley Harris*
Texas Bar No. 24123238
ACLU FOUNDATION OF
  TEXAS, INC.
1018 Preston St.
Houston, TX 77002
Phone: (713) 942-8146
Fax: (915) 642-6752
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
aharris@aclutx.org


*motion for admission pro hac vice forthco-
ming

*Counsel for Proposed Intervenor-Defen-
dants*

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
 Michael Bittner
Texas Bar No. 24064905
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone: +1 (214) 453-6500
tmelsheimer@winston.com
mbittner@winston.com

Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800
acepedaderieux@aclu.org

Sophia Lin Lakin*
Ari J. Savitzky*
Maura Douglas*
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
asavitzky@aclu.org
mdouglas@aclu.org

George E. Mastoris*
Michelle D. Tuma*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel. (212) 294-6700
gmastoris@winston.com
mtuma@winston.com

16

17

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 9, 2024, the undersigned filed the document, Brief in Support of Motion to Intervene by Texas State Conference of the NAACP and League of Women Voters of Texas, via this  Court's electronic filing system (CM/ECF), which sent notice of such filing to all counsel of record.

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone: +1 (214) 453-6500
tmelsheimer@winston.com

*Counsel for the Texas State Conference of the NAACP and the League of Women Voters of Texas*