# EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., BERNARD JOHNSON, AND CITIZENS DEFENDING FREEDOM<br><br>        *Plaintiffs*,<br><br>v.<br><br>JANE NELSON, in her official capacity as the Secretary of State of Texas, KEN PAXTON, in his official capacity as the Attorney General of Texas, and MERRICK GARLAND, in his official capacity as Attorney General of the United States<br><br>        *Defendants,* | Case No. 2:24-cv-00184 |

## MOTION TO DISMISS BY PROPOSED INTERVENOR-DEFENDANTS TEXAS STATE CONFERENCE OF THE NAACP AND LEAGUE OF WOMEN VOTERS OF TEXAS

Proposed Intervenor-Defendants ("Proposed Intervenors") Texas State Conference of the NAACP ("Texas NAACP") and the League of Women Voters of Texas ("LWVTX" or "the League") hereby file this Motion to Dismiss the Complaint (ECF No. 5) for the reasons set forth in the accompanying Brief in Support, which is incorporated by reference herein.

WHEREFORE, Texas NAACP and LWVTX respectfully request that the Court enter an Order dismissing Plaintiffs' Complaint (ECF Nos. 1& 5) in its entirety.

Dated: October 9, 2024

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
 Michael Bittner
Texas Bar No. 24064905
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone: +1 (214) 453-6500
tmelsheimer@winston.com
mbittner@winston.com

Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800
acepedaderieux@aclu.org

Sophia Lin Lakin*
Ari J. Savitzky*
Maura Douglas*
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
asavitzky@aclu.org
mdouglas@aclu.org

George E. Mastoris*
Michelle D. Tuma*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel. (212) 294-6700
gmastoris@winston.com
mtuma@winston.com

* motion for admission *pro hac vice*
forthcoming
*Counsel for Proposed Intervenor-Defendants*

Ezra D. Rosenberg*
Pooja Chaudhuri*
Heather Szilagyi*
Grace Thomas*
LAWYERS' COMMITTEE FOR CIVIL
    RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
gthomas@lawyerscommittee.org

Edgar Saldivar
Texas Bar No. 24038188
Thomas Buser-Clancy
Texas Bar No. 24078344
Ashley Harris
Texas Bar No. 24123238
ACLU FOUNDATION OF
    TEXAS, INC.
1018 Preston St.
Houston, TX 77002
Phone: (713) 942-8146
Fax: (915) 642-6752
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
aharris@aclutx.org
apinon@aclutx.org

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on October 9, 2024, which will serve all counsel of record.

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone: +1 (214) 453-6500
tmelsheimer@winston.com

*Counsel for the Texas State Conference of the NAACP and the League of Women Voters of Texas*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., BERNARD JOHNSON, AND CITIZENS DEFENDING FREEDOM,<br><br>          *Plaintiffs*,<br><br>     v.<br><br>JANE NELSON, in her official capacity as the Secretary of State of Texas, KEN PAXTON, in his official capacity as the Attorney General of Texas, and MERRICK GARLAND, in his official capacity as Attorney General of the United States,<br><br>          *Defendants.* | Case No. 2:24-cv-00184 |

**BRIEF IN SUPPORT OF MOTION TO DISMISS BY TEXAS STATE CONFERENCE OF THE NAACP AND LEAGUE OF WOMEN VOTERS OF TEXAS**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     APPLICABLE LEGAL STANDARDS.................................................................... 2

     A.    Rule 12(b)(1)................................................................................................. 2

     B.    Rule 12(b)(6)................................................................................................. 2

II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
     CLAIMS UNDER RULE 12(B)(1). ....................................................................... 3

     A.    The Organizational Plaintiffs Lack Standing. ........................................... 4

     B.    Plaintiff Johnson Lacks Standing................................................................ 8

     C.    Plaintiffs Lack Statutory Standing Under the NVRA. ............................... 9

III.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE
     GRANTED .............................................................................................................. 12

     A.    Plaintiffs Fail to State a Claim Under HAVA.......................................... 12

     B.    Plaintiffs Fail to State a Claim Under the NVRA. ................................... 16

     C.    Plaintiffs Fail to State a Claim that the State Should Be Ordered Not to
     Certify the Results of the General Election. .......................................... 19

CONCLUSION................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. C.R. Union v. Martinez-Rivera*,
166 F. Supp. 3d 779 (W.D. Tex. 2015)............................................................5, 7, 9

*Am. Civil Rights Union v. Phila. City Comm'rs*,
872 F.3d 175 (3rd Cir. 2017) ..................................................................15

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) ..............................................................18, 19

*Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm.*,
366 F. Supp. 2d 887 (D. Ariz. 2005) ........................................................24

*Ariz. v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013)..................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................3, 17

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
627 F.3d 547 (5th Cir. 2010) ..................................................................5

*Associated Builders, Inc. v. Ala. Power Co.*,
505 F.2d 97 (5th Cir. 1974) ....................................................................15

*Beeler v. Loock*,
135 S.W.2d 644 (Tex. App.—Galveston 1939, writ dism'd)................................21

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) ..............................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................2, 3

*Benedict v. City of New York*,
250 U.S. 321 (1919)............................................................................25

*Black Voters Matter Fund v. Raffensperger*,
508 F. Supp. 3d (N.D. Ga. 2020) .............................................................10

*Bost v. Ill. State Bd. of Elections*,
684 F. Supp. 3d 720 (N.D. Ill. 2023), *aff'd*, No. 23-2644, 2024 WL 3882901
(7th Cir. Aug. 21, 2024)..........................................................................7

*Bost v. Ill. State Bd. of Elections,*
No. 23-2644, 2024 WL 3882901 (7th Cir. Aug. 21, 2024) ........................................7

*Carter v. Target Corp.,*
541 F. App'x 413 (5th Cir. 2013) ........................................................................14, 15

*Cheney v. U.S. Dist. Ct. for the Dist. of Columbia,*
542 U.S. 367 (2004)....................................................................................................22

*Chevron U.S.A., Inc. v. Trailour Oil Co.,*
987 F.2d 1138 (5th Cir. 1993) ...................................................................................11

*Christensen v. Harris Cnty.,*
529 U.S. 576 (2000).....................................................................................................18

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013)......................................................................................................3

*Colon-Marrero v. Velez,*
813 F.3d 1 (1st Cir. 2016)..........................................................................................16

*Cornerstone Christian Sch. v. Univ. Interscholastic League,*
563 F.3d 127 (5th Cir. 2009) .......................................................................................3

*Crowley v. Nev. ex rel. Nev. Sec'y of State,*
678 F.3d 730 (9th Cir. 2012) ......................................................................................16

*Delancey v. City of Austin,*
570 F.3d 590 (5th Cir. 2009) ......................................................................................16

*In re Depuy Orthopaedics, Inc.,*
870 F.3d 345 (5th Cir. 2017) ......................................................................................22

*Djie v. Garland,*
39 F.4th 280 (5th Cir. 2022) ......................................................................................18

*Fouts v. Harris,*
88 F. Supp. 2d 1351 (S.D. Fla. 1999) ........................................................................24

*Friends of the Earth, Inc. v. Chevron Chem. Co.,*
129 F.3d 826 (5th Cir. 1997) ........................................................................................6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000)......................................................................................................4

*Ga. State Conf. of NAACP v. Kemp,*
841 F. Supp. 2d 1320 (N.D. Ga. 2012) ........................................................................9

*Galveston Causeway Const. Co. v. Galveston, H. & S.A. Ry. Co.*,
   284 F. 137 (S.D. Tex. 1922), *aff'd*, 287 F. 1021 (5th Cir. 1923)...........................................23

*Galveston Causeway Const. Co. v. Galveston, H. & S.A. Ry. Co.*,
   287 F. 1021 (5th Cir. 1923) ...................................................................................................22

*Gilbert v. Donahoe*,
   751 F.3d 303 (5th Cir. 2014) ................................................................................................4

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002).................................................................................................15, 16

*Grant v. Ammerman*,
   437 S.W.2d 547 (Tex. 1969)................................................................................................21

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
   599 U.S. 166 (2023)................................................................................................................15

*Hedges v. Dixon Cnty.*,
   150 U.S. 182 (1893)................................................................................................................23

*Hitt v. City of Pasadena*,
   561 F.2d 606 (5th Cir. 1977) ...............................................................................................2

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946)................................................................................................................24

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998) .............................................................................................2

*Hotze v. Hudspeth*,
   16 F.4th 1121 (5th Cir. 2021) ...........................................................................................6, 8

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977)...........................................................................................................5, 6

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018)................................................................................................................19

*I.N.S. v. Pangilinan*,
   486 U.S. 875 (1988)................................................................................................................23

*Johnson v. E. Baton Rouge Fed'n of Teachers*,
   706 Fed. App'x 169 (5th Cir. 2017) ...................................................................................3

*In re JPMorgan Chase & Co.*,
   916 F.3d 494 (5th Cir. 2019) ..............................................................................................22

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ...................................................................2

*Lance v. Coffman*,
   549 U.S. 437 (2007)...............................................................................8

*Lee v. Verizon Commc'ns, Inc.*,
   837 F.3d 523 (5th Cir. 2016) ...................................................................9

*Leeson v. Transamerica Disability Income Plan*,
   671 F.3d 969 (9th Cir. 2012) ...................................................................9

*Leslie v. Griffin*,
   25 S.W.2d 820 (Tex. Comm'n App. 1930)...........................................21

*Lopez v. City of Houston*,
   617 F.3d 342 (5th Cir. 2010) .................................................................11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...........................................................................3, 6

*Md. Election Integrity, LLC v. Md. Bd. of Elections*,
   No. SAG-24-00672, 2024 WL 2053773 (D. Md. May 8, 2024) .........5, 7

*Mendoza-Tarango v. Flores*,
   982 F.3d 395 (5th Cir. 2020) .................................................................22

*Merrill v. Milligan*,
   142 S. Ct. 879 (2022) ......................................................................23, 24

*Mi Familia Vota v. Abbott*,
   497 F. Supp. 3d 195 (W.D. Tex. 2020).................................................24

*Monk v. Houston*,
   340 F.3d 279 (5th Cir. 2003) .................................................................11

*Moore v. Circosta*,
   494 F. Supp. 3d 289 (M.D.N.C. 2020) ...................................................7

*Morales-Garza v. Lorenzo-Giguere*,
   277 F. App'x 444 (5th Cir. 2008) ..........................................................15

*Murphy v. Amarillo Nat'l Bank*,
   No. 2:20-CV-048-Z, 2021 WL 40779 (N.D. Tex. Jan. 5, 2021) .............3

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   833 F.2d 583 (5th Cir. 1987) .................................................................11

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) .................................................................................4

*Orth v. Benavides*,
  125 S.W.2d 1081 (Tex. App.—San Antonio 1939, writ dism'd) ...........................21

*Pederson v. La. State Univ.*,
  213 F.3d 858 (5th Cir. 2000) .................................................................................6

*Pub. Int. Legal Found. v. Boockvar*,
  370 F. Supp. 3d 449 (M.D. Pa. 2019) ...............................................................9, 10

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) .................................................................................................23

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) .................................................................................2

*In re Red Barn Motors, Inc.*,
  794 F.3d 481 (5th Cir. 2015) .................................................................................4

*In re Robinson*,
  175 S.W.3d 824 (Tex. App.—Houston [1st Dist.] 2005, no pet.) .........................21

*Sama v. Sowell*,
  519 S.W.2d 526 (Tex. App. —Houston [14th Dist.] 1975, no writ) ......................21

*Sandusky Cnty. Democratic Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004) ...............................................................................16

*Scott v. Schedler*,
  771 F.3d 831 (5th Cir. 2014) .........................................................................4, 9, 11

*SEC v. Stanford Int'l Bank, Ltd.*,
  927 F.3d 830 (5th Cir. 2019) ...............................................................................23

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).............................................................................................3, 4

*Tex. Democratic Party v. Benkiser*,
  459 F.3d 582 (5th Cir. 2006) .................................................................................8

*Tex. League of United Latin Am. Citizens v. Whitley*, No. SA-19-CA-074-FB
  2019 WL 7938511 (W.D. Tex. Feb. 27, 2019).....................................................19

*Tex. Voters All. v. Dallas Cnty.*,
  495 F. Supp. 3d 441 (E.D. Tex. 2020) .................................................................15

*Thomas v. Union Carbide Argic. Prods. Co.*,
   473 U.S. 568 (1985)...........................................................................................11

*United States v. Coastal Ref. & Mktg. Inc.*,
   911 F.2d 1036 (5th Cir. 1990) ...........................................................................23

*United States v. Denedo*,
   556 U.S. 904 (2009)..............................................................................................4

*United States v. Hayes*,
   515 U.S. 737 (1995)..............................................................................................6

*Voice of the Experienced v. Ardoin*, No. 23-331-JWD-SDJ
   2024 WL 2142991 (M.D. La. May 13, 2024).........................................................9

*Vote.org v. Callanen*,
   39 F.4th 297 (5th Cir. 2022) .................................................................................7

*Willaims v. Sorrell*,
   71 S.W.2d 944 (Tex. App.—San Antonio 1934, no writ) ......................................21

*Williamson v. Kempf*,
   574 S.W.2d 845 (Tex. App.—Texarkana 1978, writ ref'd n.r.e)...........................21

*Wolcott v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ..............................................................................22

*Wood v. Raffensperger*,
   981 F.3d 1307 (11th Cir. 2020) ............................................................................7

**Statutes**

8 U.S.C. § 1373(c) ....................................................................................................22

8 U.S.C. § 1644 ........................................................................................................22

28 U.S.C. § 1651 ........................................................................................................4

42 U.S.C. § 1983 ...............................................................................................15, 16

52 U.S.C. § 20501(b)(4) ...........................................................................................16

52 U.S.C. § 20507(a)–(d) ....................................................................................16–19

52 U.S.C. § 20510(b) ..........................................................................................9–10

52 U.S.C. § 21081(a)(5).......................................................................................12, 13

Tex. Elec. Code § 16.0332........................................................................................22

Tex. Elec. Code § 67.010.................................................................................................20

Tex. Elec. Code § 67.013(a)–(d).......................................................................................20

Tex. Elec. Code § 67.016.................................................................................................20

Tex. Elec. Code. § 221.003...............................................................................................21

Tex. Elec. Code § 221.006...............................................................................................21

**Federal Rules**

Fed. R. Civ. P. 12(b)(1)..............................................................................................2, 3, 9

Fed. R. Civ. P. 12(b)(6)..............................................................................................2, 3, 9

**Other Authorities**

EAC 2005 Voluntary Voting System Guidelines,
    https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FIN
    AL1.pdf ...............................................................................................................14

Voting System Standards Volume I: Performance Standards,
    https://www.eac.gov/sites/default/files/eac_assets/1/28/Voting_System_Stand
    ards_Volume_I.pdf ...............................................................................................13

## <u>INTRODUCTION</u>

On the eve of the 2024 Presidential Election, Plaintiffs demand unprecedented relief: a mandamus order compelling the removal of hundreds of thousands of eligible voters from voter rolls and federal court denial of certification of the election results. Nowhere in the 56-page complaint do Plaintiffs identify a specific statutory or constitutional cause of action that would entitle them to any relief, let alone the extraordinary remedies they demand. Nor could they: Plaintiffs lack standing to assert any fairly read claims, and the statutes they broadly invoke do not provide them with a basis for any relief from this Court. Indeed, the National Voter Registration Act ("NVRA") specifically prohibits that relief. The Complaint should be dismissed.

Plaintiffs ask the Court to (1) order the State to "correct" allegedly "inaccurate" errors in the voter rolls, *i.e.*, purge thousands of voters within days of the General Election; (2) order the State to verify that all voter registrations against citizenship and immigration status data kept by the Department of Homeland Security; and order the State not to certify the results of the 2024 election until all supposed "errors" are corrected. Again, they never identify *any* provision of federal law that could entitle them to this relief. Nor one that could empower the roving, lawless, election-eve "intervention" that they seek from this Court.

The Court should reject Plaintiffs' suit in its entirety. First, this Court does not have subject matter jurisdiction. Plaintiffs lack Article III standing to bring any of their claims. Nor do they have statutory standing under the NVRA. Moreover, their demand that the State withhold certification of the results of the upcoming election if the supposed "errors" alleged in the Complaint are not corrected is patently not ripe for adjudication.

On the merits, Plaintiffs fail to state a claim upon which relief may be granted. They never identify a legal basis that gives them any cause of action. And in fact, their requested relief is

affirmatively *barred* by federal and state law. For one, the Help America Vote Act (HAVA), which they cite, does not afford Plaintiffs a private right of action. And the NVRA expressly prohibits Texas from undertaking systematic voting-list maintenance, *i.e.*, the very thing Plaintiffs seek, within the 90-day quiet period before the upcoming federal elections. As for rejecting certification of the election results, state law is crystal clear that certification is a mandatory, not discretionary, duty of state officials, even if post-election challenges that go to "reliability" are ongoing. Thus having failed to identify cognizable legal claims on which relief may be granted, Plaintiffs' freestanding request for mandamus relief must be rejected and their Complaint dismissed.

## **ARGUMENT**

## I.    **APPLICABLE LEGAL STANDARDS**

### A.    **Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The burden of proof for a motion to dismiss under Rule 12(b)(1) falls on the plaintiffs. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Additionally, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

### B.    **Rule 12(b)(6)**

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff [must] provide more than labels and conclusions." *Murphy v. Amarillo Nat'l Bank*, No. 2:20-CV-048-Z, 2021 WL 40779, at *3 (N.D. Tex. Jan. 5, 2021) (quoting *Johnson v. E. Baton Rouge Fed'n of Teachers*, 706 Fed. App'x 169, 170 (5th Cir. 2017) (citing *Twombly*, 550 U.S. at 555)). Thus, the complaint must contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court need not accept the plaintiff's legal conclusions, even when they are couched as factual allegations. *Iqbal*, 556 U.S. at 678–79.

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER RULE 12(B)(1).

Federal courts are courts of limited jurisdiction and hear only "cases" and "controversies" under Article III of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing to sue is one component of the case or controversy requirement. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Plaintiffs must sufficiently plead (1) an injury-in-fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) is likely to be redressed by a favorable court decision. *Lujan*, 504 U.S. at 560–61. At the motion to dismiss stage, a plaintiff sufficiently establishes to proceed by alleging "facts that give rise to a plausible claim" of standing. *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009).

An "injury in fact" is one that is "concrete," "particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61. The mere alleged existence of a statutory violation is not sufficient to confer standing without a concrete and particularized injury to the particular federal court plaintiff who invokes the Court's jurisdiction. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330,

3

341(2016); *see also Scott v. Schedler*, 771 F.3d 831, 836–37 (5th Cir. 2014) (analyzing plaintiff's Article III standing to bring NVRA claims).[1]

Because standing is a matter of subject matter jurisdiction, there are no exceptions to the Article III standing requirement. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir. 2014) (same). Article III requirements are not relaxed or waived because a federal court plaintiff seeks a writ of mandamus. *See United States v. Denedo*, 556 U.S. 904, 911 (2009) ("[A] court's power to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy."); *In re Red Barn Motors, Inc.*, 794 F.3d 481, 483 (5th Cir. 2015) ("The All Writs Act, 28 U.S.C. § 1651, empowers us to issue writs of mandamus, but that statutory authority does not itself confer jurisdiction.").

### A.    The Organizational Plaintiffs Lack Standing.

An organization can establish standing in two ways: on behalf of its members or on its own behalf. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). As to Plaintiff United Sovereign Americans, the Complaint does not even attempt to set forth facts that could support either basis, stating only that United Sovereign Americans is a nonprofit corporation incorporated in Missouri, and that the corporation worked with "expert data analysts" regarding voter registration data. *See* Compl. ¶¶ 60, 167–70. There is not a single reference to United Sovereign Americans' members, or any kind of membership structure, and no allegations of concrete organizational harm, such as a diversion of organizational resources if the Court were to deny the

---

[1] Plaintiffs allege that it is "not clear" the extent to which the "NVRA requires a hypothetical plaintiff to have suffered injury." Compl. ¶ 124. It is clear: They must. *See Scott*, 771 F.3d at 836–37.

requested relief. United Sovereign Americans should therefore be dismissed for lack of standing. Indeed, it already has been dismissed for these reasons in a similar suit it brought in Maryland. *See, e.g.*, *Md. Election Integrity, LLC v. Md. Bd. of Elections*, No. SAG-24-00672, 2024 WL 2053773, at *3–4 (D. Md. May 8, 2024) (dismissing United Sovereign Americans in NVRA and HAVA suit against Maryland for lack of standing, where organization "does not purport to represent any individual members" and where it did not allege a concrete and demonstrable injury to the organization's activities).

Plaintiff Citizens Defending Freedom ("CDF") claims it has standing because it "represents a group of Texas registered voters each expecting their vote to be properly counted and weighted," Compl. ¶ 73, and because it is "comprised of Texas citizens who have an interest in the elections being administered fairly, properly and accurately," *id.* ¶ 84. In other words, CDF claims "associational standing," that is, standing to sue that is derivative of some purported injury to its members. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). To establish associational standing at the pleading stage, CDF must allege facts demonstrating that "(1) 'its members would otherwise have standing to sue in their own right;' (2) 'the interests it seeks to protect are germane to the organization's purpose; and' (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 787 (W.D. Tex. 2015) (quoting *Hunt*, 432 U.S. at 343). The pleadings contain no such factual allegations as to CDF.

As an initial matter, it is not even clear that CDF is a membership organization that could assert a claim on behalf of its members. The only allegation is that CDF "represents" a "group of Texas registered voters," Compl. ¶ 73, and is "comprised" of "Texas citizens," *id.* ¶ 84. But CDF

fails even to allege the number or geographic spread of its members across the state, or any facts about its membership process or structure, or for that matter, plead that it is in fact a membership organization with the particular indicia typical of membership organizations. *See Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997) (prong met when organization "clearly articulated and understandable membership structure"); *see also Hunt*, 432 U.S. at 344–45 (prong met when purported members "possess all of the indicia of membership in an organization" and organization "provides the means by which they express their collective views and protect their collective interests"). CDF has not pleaded any facts that establish it meets the requirements of a membership organization which may sue based on the purported injuries of its members.

Even if CDF had sufficiently alleged that it has a cognizable membership, it fails to allege any facts regarding the "concrete and particularized injury" experienced by the "Texas citizens" it "represents" that would allow them to sue in their own right. *Lujan*, 504 U.S. at 560 (injury must also be "actual or imminent, not conjectural or hypothetical") (internal quotations omitted). Generally, citizen-standing style grievances are insufficient as a matter of law. Courts "have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *United States v. Hayes*, 515 U.S. 737, 743 (1995); *see also Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000); *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (voters' allegations that drive-thru voting would harm the "integrity" of electoral process were "far too generalized to warrant standing").

To the extent CDF alleges it can proceed without the required indicia of membership based on third-party standing to represent various like-minded "citizens," CDF's claims would *also* be barred as a prudential matter. CDF cannot assert claims based on any purported injury to the voting

rights of unnamed, third-party Texas voters because "an organization plainly lacks the right to vote." *Vote.org v. Callanen*, 39 F.4th 297, 303 (5th Cir. 2022) (non-membership organization, Vote.org, that "invokes the rights of Texas voters and not its own—an organization plainly lacks the right to vote" did not have third-party standing to assert violation of right to vote).

And that is that CDF can muster in its pleadings: generalized allegations that (1) Defendants failed to comply with the law in an unspecified manner, and (2) generalized claims that CDF's members' votes will somehow be "diluted" by the presence of purportedly ineligible voters on the voter rolls. *See, e.g.*, Compl. ¶¶ 24–56, 73–78, 166–201. Courts have repeatedly rejected this theory of "dilution" because it runs headlong into Article III. Even if a person could be harmed by the fact that *someone else* was *allowed* to vote, the same alleged "dilution" harm alleged would inure to every Texas voter to the same degree as the "Texas citizens" who supposedly comprise CDF. Such an injury is insufficiently particularized to support standing. Thus, in a similar lawsuit brought by an organization who, like CDF, alleged that officials "did not act in accordance with the law in administering the elections," the court dismissed on standing grounds because "any injury from those actions would accrue to every citizen and would not be particularized to members of [the group]." *Md. Election Integrity*, 2024 WL 2053773, at *4.[2]

---

[2] *See also Wood v. Raffensperger*, 981 F.3d 1307, 1313, 1314–15 (11th Cir. 2020) (speculation of "vote dilution" from the alleged inclusion of unlawfully processed absentee ballots, where "no single voter is specifically disadvantaged" is a "paradigmatic generalized grievance," as distinguished from redistricting-related vote-dilution claims where voters in challenged district directly harmed compared to voters in other districts) (citation omitted); *Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 731 (N.D. Ill. 2023), *aff'd*, No. 23-2644, 2024 WL 3882901 (7th Cir. Aug. 21, 2024) (collecting cases where courts have "agreed that claims of vote dilution based on the existence of unlawful ballots fail to establish standing"); *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) (collecting cases); *Martinez-Rivera*, 166 F. Supp. 3d at 789 (allegation that "failure to remedy inaccurate voter rolls" will lead to "undermined voter confidence and the risk of vote dilution" was a generalized grievance insufficient to support standing).

### B.    Plaintiff Johnson Lacks Standing.

Candidates like Plaintiff Bernard Johnson similarly lack standing to challenge the conduct of elections when they assert only undifferentiated, generalized grievances. *See, e.g.*, *Hotze*, 16 F.4th at 1124 & n.2 (5th Cir. 2021) (allegation that drive-thru voting "hurt the 'integrity' of the election process" was "far too generalized to warrant standing" for a political candidate); *see also Lance v. Coffman*, 549 U.S. 437, 442 (2007) (allegation that "the law has not been followed" is an "undifferentiated, generalized grievance about the conduct of government" that does not support standing). Plaintiff Johnson lacks standing for much the same reasons that CDF lacks associational standing on behalf of its members or Texas voters generally: generalized or speculative concerns regarding government officials' compliance with the law, with no allegations about specific harms to the plaintiff, are insufficiently concrete and particularized to create a constitutional case or controversy. *See supra* Section II.A.

The Complaint's references to campaign expenditures by Mr. Johnson do not provide any firmer basis for standing. Cognizable injuries to a candidate are those that directly "threaten his election prospects and campaign coffers." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). Mr. Johnson makes only speculative allegations that he is "directly affected" by alleged inaccuracies in the voter rolls in 2022—a year he did not run for political office—because he "cannot properly devise and budget for campaign strategies" and has spent "money campaigning to garner votes based on registrations and voter rolls that *may* be inaccurate." Compl. ¶ 81–82 (emphasis added). He never explains *how* his ability to campaign has been concretely affected by the *potential* existence of unspecified inaccuracies in a state database. Absent such allegations regarding "how the candidate[] would be specifically harmed," *Hotze*, 16 F.4th at 1124 & n.2, Mr. Johnson's alleged injury from these purported inaccuracies is not materially different than any other Texas voter.

C.        **Plaintiffs Lack Statutory Standing Under the NVRA.**

To the extent that Plaintiffs assert claims for violations of the NVRA, their claims would fail for an independent reason: they have not established statutory pre-requisites to suit and therefore lack statutory standing to bring their NVRA claims.[3] *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014); *see also Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (standing under statute is matter of subject matter jurisdiction that may be challenged through Rule 12(b)(1)).

The NVRA creates a private right of action for an "aggrieved" person to, subject to a specific process: they must send written notice of a statutory violation to the state's chief election official and provide an opportunity to cure the violation within the statutory timeline before the aggrieved person files suit. 52 U.S.C. § 20510(b). A party lacks standing to sue under the NVRA if they fail to comply with the NVRA's notice requirements. *Scott*, 771 F.3d at 835. The "notice should provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Martinez-Rivera*, 166 F. Supp. 3d at 806. Courts have found that notice is adequate if it "(1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a violation of the NVRA and intends to commence litigation if the violation is not timely addressed." *Pub. Int. Legal Found. v. Boockvar*,

---

[3] Courts have reached different conclusions as to whether the NVRA's notice requirements are jurisdictional, and thus whether they are best addressed under Rule 12(b)(1) or 12(b)(6). *Compare Scott*, 771 F.3d at 835 ("No standing is therefore conferred if no proper notice is given . . . .") (quoting *Ga. State Conf. of NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012), *with Martinez-Rivera*, 166 F. Supp. 3d at 794 n.9 ("The NVRA notice provision is nonjurisdictional.") (citing *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976–77 (9th Cir. 2012). Whether or not NVRA notice is jurisdictional, courts agree that failure to comply with NVRA notice requirements justifies dismissal. In accordance with the precedent of this Court, Plaintiffs move under Rule 12(b)(1), but in the alternative move under Rule 12(b)(6). *See Scott*, 771 F.3d at 835; *Voice of the Experienced v. Ardoin*, No. 23-331-JWD-SDJ 2024 WL 2142991, at *8 n.3 (M.D. La. May 13, 2024).

370 F. Supp. 3d 449, 457 (M.D. Pa. 2019); *see also Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d, 1283, 1293 (N.D. Ga. 2020) (citing *Boockvar*, 370 F. Supp. 3d at 457).

Plaintiffs invoke the NVRA, despite their correct observation that "[a]ny Court in the United States would have great reluctance to [] order election officials to correct the NVRA error and/or decertify an election so close in time to an actual election or just after certification." Compl. ¶¶ 123, 127. Indeed, their observation is in striking contrast to their extraordinary allegations and relief requested particularly given that they fail to allege that they even attempted to comply with the NVRA's threshold pre-suit notice requirement. The sum of their allegations regarding pre-suit notice is a single vague sentence: "Petitioners here have provided notice to the State of Texas as required by NVRA." Compl. ¶ 122. That is facially insufficient in at least three ways.

*First*, the Complaint lacks any other details, including whether the notice informed Defendants that any or all Plaintiffs would sue if the violation was not addressed, or even if the notice was in writing. Dozens of pages of Plaintiffs' exhibits do not contain a copy of any NVRA notice. Plaintiffs' NVRA claims should be dismissed on that ground alone. *See, e.g.*, *Black Voters Matter Fund*, 508 F. Supp. 3d at 1294–95 (rejecting report as providing NVRA pre-litigation notice because it didn't "reasonably put the Secretary on notice that an NVRA lawsuit was looming").

*Second*, the Complaint does not allege that Plaintiffs served written notice on the "chief election official and the State" as the NVRA requires. 52 U.S.C. § 20510(b)(1). Instead, the Complaint alleges only that Plaintiffs provided notice to the "State of Texas." Compl. ¶ 122. Notice that was not served on Secretary of State Jane Nelson does not satisfy Section 11 of the NVRA. 52 U.S.C. § 20510(b)(1). *See, e.g.*, *Boockvar*, 370 F. Supp. 3d at 457–58 (dismissing claim for failure to provide adequate pre-litigation NVRA notice where "[a]bsent from the complaint is any allegation that" the state's chief election official was informed of the plaintiff's notice).

*Third*, the Complaint does not allege *which* Plaintiffs provided the purported "notice" under the NVRA. Prospective plaintiffs may not "piggyback" on notice of an NVRA violation provided by others. *Scott*, 771 F.3d at 836. Because they failed to provide a copy of the required notice or otherwise allege who sent it, Plaintiffs' allegations are insufficient on this basis as well.

Plaintiffs' Claims Are Not Ripe.

One more fatal justiciability problem with the Complaint: the request to block certification of the 2024 election is unripe. A claim is not ripe if further factual development is required. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). Where a plaintiff sues based on an injury that has not yet occurred, the court must evaluate whether the injury "is sufficiently likely to happen." *Chevron U.S.A., Inc. v. Trailour Oil Co*., 987 F.2d 1138, 1153 (5th Cir. 1993). The court "should dismiss . . . for lack of ripeness when the case is abstract or hypothetical." *Monk v. Houston*, 340 F.3d 279, 282 (citing *New Orleans Pub. Serv. Inc*., 833 F.2d at 586). Claims "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all" are not ripe. *Lopez v. City of Houston,* 617 F.3d 336, 342 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Argic. Prods*. *Co.*, 473 U.S. 568, 580–81 (1985)); *see also New Orleans Pub. Serv., Inc.*, 833 F.2d at 587.

Here, Plaintiffs' demand that the Court should order Defendants not to certify the 2024 election is unripe for adjudication because it is premised entirely on speculation. The 2024 election has not yet happened, and the effect, if any, of the supposed technical deficiencies or errors in Texas's voter database alleged in the Complaint on the Election is entirely speculative. Especially so because, other than alleging, without specificity, that there are technical issues with the database, Plaintiffs never allege that any ineligible persons are improperly registered, let alone improperly voting, or that any "inaccurate" votes would affect any election. Because any actual harm from

these technical issues would result only from a series of future events that may not unfold as Plaintiffs anticipate, the case is not ripe for adjudication.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs' Complaint identifies no valid legal basis for any cause of action. Indeed, federal and state law prohibit the relief sought—namely, election-eve judicial intervention requiring Defendants to (1) remove all "ineligible voters" from the voter roll before the 2024 General Election, (2) conduct a systematic list maintenance to identify and remove alleged noncitizens by comparing the state's voter rolls to data from the Department of Homeland Security before the upcoming election, and (3) refrain from certifying the outcome of the 2024 General Election.

### A.    Plaintiffs Fail to State a Claim Under HAVA.

Plaintiffs allege a violation of Section 301(a)(5) of HAVA, 52 U.S.C. § 21081(a)(5), based on purported "errors" claim to have been found in the 2022 General Election. Compl. ¶¶ 24–59. According to Plaintiffs, the "error rates" in the 2022 Election exceeded a threshold set under HAVA. *Id.* ¶¶ 38–41. From that premise, Plaintiffs surmise "it is reasonable to believe that systemic issues which occurred in the 2022 combined federal and state election in Texas will continue uncorrected in 2024, 2026, 2028, and so forth, absent intervention by this Court." *Id.* ¶ 21.

These allegations do not support a federal law cause of action for two reasons. First, the statutory meaning of "error rates" in HAVA has nothing to do with who is or is not registered on the voter rolls. Rather, it relates only to errors that arise during the testing of different types of voting machines. Plaintiffs' presumption of "systemic issues" with actual voting based on an esoteric voting-machine testing metric entirely misconstrues what Section 301(a)(5) of HAVA says and is not a plausible basis for a claim. In any event, HAVA does not afford Plaintiffs a private cause of action to pursue a claim related to system error rates.

First, Plaintiffs allege no plausible, actionable violation of HAVA. Section 301(a)(5) of HAVA states that the "error rate" of the "voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter)" must comply with certain error rate standards established under guidance promulgated by the Federal Election Assistance Commission ("EAC"). 52 U.S.C. § 21081(a)(5). The guidance, repeatedly cited by Plaintiffs, in turn makes clear that these error rates relate only to the testing of voting machine software and hardware, not errors in reporting the results of any actual elections. *See* Voting System Standards Volume I: Performance Standards ("Voting System Standards") at 3–51, https://www.eac.gov/sites/default/files/eac_assets/1/28/Voting_System_Standards_Volume_I.pdf (last visited Oct. 3, 2024) ("The error rate is defined using a convention that recognizes differences in how vote data is processed by different types of voting systems. Paper-based and DRE[4] systems have different processing steps. Some differences also exist between precinct count and central count systems."). The 500,000 "ballot positions" yardstick that Plaintiffs repeatedly reference, Compl. ¶¶ 27–34, 139, similarly arises in the context of systems testing, not reporting of actual election results. *E.g.*, Voting System Standards, *supra*, at 3-52 ("For each processing function [including paper-based and DRE systems], the system shall achieve . . . a maximum acceptable error rate in the *test* process of one in 500,000 ballot positions." (emphasis added)). Thus, the

---

[4] "A Direct Record Electronic (DRE) Voting System records votes by means of a ballot display provided with mechanical or electro-optical components that can be activated by the voter; that processes data by means of a computer program; and that records voting data and ballot images in memory components. It produces a tabulation of the voting data stored in a removable memory component and as printed copy. The system may also provide a means for transmitting individual ballots or vote totals to a central location for consolidating and reporting results from precincts at the central location." Voting System Standards, *supra*, at 1–12.

13

500,000 ballot positions metric is related to the functionality and "operational accuracy" of the voting system, *i.e.*, paper-based or DRE, not, as Plaintiffs would have it, the purported accuracy of voting rolls and whether any voter is actually eligible to vote. Furthermore, the EAC guidance nowhere corroborates Plaintiffs' allegation that 500,000 ballot positions metric somehow "equal[s]" 125,000 ballots.[5] Compl. ¶ 32. That calculation seems to be made up. Rather, the source cited by Plaintiffs provides that all voting systems must achieve a report total error rate of no more than one in 125,000 ($8\times10^{-6}$) with respect to random "unpreventable hardware-related errors" and "software faults that result in systematic miscounting of votes." EAC 2005 Voluntary Voting System Guidelines at 79, https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf.

Plaintiffs' Complaint has nothing to do with hardware or software errors in voting machines, and as such, Plaintiffs' reliance on this HAVA metric undercuts the core of their Complaint. Where, as here, the factual foundation of a plaintiff's complaint is contradicted by the documents upon which they plead, dismissal for failure to state a claim is proper. *Cf. Carter v. Target Corp.*, 541 F. App'x

---

[5] Furthermore, the EAC guidance nowhere corroborates Plaintiffs' allegation that the 500,000 ballot positions metric somehow "equal[s]" 125,000 ballots. Compl. ¶ 32. That calculation seems to be made up and, in any case, incorrect. Plaintiffs have confused "votes" with "individual ballots" – they cite the Voluntary Voting System Guidelines to support this calculation, *see id.*, when in fact the Voluntary Voting System Guidelines states that "[t]he benchmark of one in 125,000 is expressed in terms of *votes*" and "the estimated ratio of *votes* to ballot positions is ¼," Voluntary Voting System Guidelines, *supra* at 80 (emphases added), going on to illustrate by example that "[i]n a presidential election, there would be approximately 20 contests with a vote for 1 on each ballot with an average of 4 candidates, including the write-in position, per contest." *Id.* Using this structure, 500,000 ballot positions would be divided by 4 ballot positions per vote to translate to 125,000 votes, which would then be divided by the number of votes per individual ballot to reach an estimate of the number of individual ballots that would form the basis of the error rate threshold. For example, for a ballot with 20 contests and therefore 20 votes each containing an average of 4 ballot positions, the error rate as expressed in terms of individual ballots would be 1 error per 6,250 individual ballots: 500,000 ballot positions divided by 4 ballot positions per vote and further divided by 20 votes per ballot is 6,250 ballots.

413, 417 (5th Cir. 2013) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

Moreover, even if they had identified some plausible violation of HAVA, Plaintiffs would still lack a private right of action. There is no implied right of action to enforce any provision of HAVA. *See Morales-Garza v. Lorenzo-Giguer*e, 277 F. App'x 444, 446 (5th Cir. 2008) (HAVA did not create private cause of action permitting plaintiff to challenge adequacy of absentee voting process); *Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 458 (E.D. Tex. 2020) ("HAVA does not expressly create a private right of action."); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) ("HAVA creates no private cause of action."); *Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 184-85 (3rd Cir. 2017) ("HAVA does not include a private right of enforcement . . . HAVA only allows enforcement via attorney general suits or administrative complaint.").

Nor can Plaintiffs enforce their purported rights under HAVA via 42 U.S.C. § 1983, as they wrongly suggest. *See* Compl. ¶¶ 141–44. To determine whether a provision of federal law is enforceable via Section 1983, "[c]ourts must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 285–86 (2002)). This is typically indicated by language in the specific provision sought to be enforced that expressly refers to the benefitted class of individuals. *E.g.*, *Gonzaga*, 536 U.S. at 287 (FERPA's nondisclosure provisions "speak only to the Secretary of Education, directing that 'no funds shall

15

be made available' to any 'educational agency or institution,'" which "clearly does not confer the sort of '*individual* entitlement' that is enforceable under § 1983." (citations omitted)); *Delancey v. City of Austin*, 570 F.3d 590, 594, 595 (5th Cir. 2009) (provisions of Uniform Relocation Assistance and Real Property Acquisition Policy Act "are directed at the 'head of any displacing agency' rather than at the individuals benefitted by the statute" and do not "evidence Congressional intent to create a private right of action" under § 1983 (citation omitted)).

Courts have identified such individual rights-creating language in *other* sections of HAVA which *do* contain direct references to voters. For example, in *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004), the court held that Section 302(a)(2) is enforceable via Section 1983 because it specifically mentions "individual" voters and protects an individual voter's right to cast a provisional ballot. And in *Colon-Marrero v. Velez*, 813 F.3d 1, 18, 20 (1st Cir. 2016), the court found that Section 303(a)(4) was enforceable via Section 1983 because it specifically mentions "eligible voters" and mandates safeguards to prevent them from being improperly removed from the voter rolls. But Section 301 does not speak of voters at all, and courts have accordingly *rejected* Section-1983-enforceability for Section 301 under the *Gonzaga* analysis. *See Crowley v. Nev. ex rel. Nev. Sec'y of State*, 678 F.3d 730, 732 (9th Cir. 2012) (Section 301 was not enforceable via Section 1983 because Section 301 was not unambiguously intended to confer benefits on voters and/or candidates). Because Section 301(a)(5) contains no mention of (let alone an express conferral of benefits upon) individual voters or candidates, it does not pass the *Gonzaga* test and is not enforceable under Section 1983.

### B.    Plaintiffs Fail to State a Claim Under the NVRA.

Plaintiffs appear to allege violations of two provisions of the NVRA that relate to the maintenance of voter rolls. Compl. ¶¶ 117–18; *see* 52 U.S.C. § 20501(b)(4) (requiring states "to ensure that accurate and current voter registration rolls are maintained"); 52 U.S.C. § 20507(a)(4),

(requiring states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" when the registrant has either passed away or changed residence"). But even assuming Plaintiffs have standing and a right of action to challenge such putative violations, the factual allegations on which they base their claimed violation are not plausible.  Further, the relief they seek—requiring Texas to remove all "ineligible voters" from the rolls before the upcoming election—would be barred by the terms of the NVRA itself.

As an initial matter, Plaintiffs' request for a court-ordered round of general voter list maintenance, *i.e.*, election-eve voter roll purges, rests mainly on vague assertions that an unidentified "expert analysis" showed that "there were a total of 1,352,202 voter registration violations" in the 2022 election out of "19,109,291 voter registrations." Compl. ¶ 174. Nowhere in the Complaint do Plaintiffs explain what is meant by "voter registration violations" in a way that could alert the Court and the parties to whether it is plausible that these "violations" have anything to do with a person's eligibility to vote. *See* Compl. ¶¶ 174, Ex. A. At most, they allege that these "violations" include typos or duplicate records or things like "age discrepancies" which Plaintiffs do not explain or define, or the fact that a name on the rolls is "embedded with numerals and symbols" or that 29,847 votes in 2022 were cast by voters with "invalid addresses" (whatever that means). Compl. ¶¶ 40, 74, 75, 179. Indeed, while plaintiffs include a *caption* in their Complaint entitled "Votes from Ineligible Voters," *never once* do they allege that any ineligible voters *actually voted* in Texas, whether on residency or citizenship or any other grounds. There is no factual averment in the Complaint that plausibly supports a claim to remove a single Texas voter from the rolls, let alone the radical, last-minute judicial intervention in the election process that they demand. *See Iqbal*, 556 U.S. at 678.

17

And even if Plaintiffs had pleaded actual facts supporting their requested relief, that relief would still be barred by law. Plaintiffs ask the Court to order the State to remove supposed voters who changed their address and non-citizens from the voter rolls. Compl. ¶¶ 180–82; *see also* Compl. at 56, Prayer for Relief (asking the Court to order matching of voter rolls to Department of Homeland Security records). But removing voters from the voter rolls, on either of those grounds, on the eve of the election would violate the plain terms of the NVRA.

Section 8(c) of the NVRA provides that states must complete "any program the purpose of which is to systematically remove the names of ineligible voters from the list of eligible voters" no later than 90 days before a primary, general, or runoff election for federal office. 52 U.S.C. § 20507(c)(2)(A). This mandatory quiet period is subject to only a few, expressly specified exceptions: voters may be removed during the 90-day period only at the voter's request, or because the voter has been convicted of a disqualifying crime, or because they have died. 52 U.S.C. § 20507(c)(2)(B). The systematic removal of voters from the rolls based on other bases, like supposed residence or citizenship—*i.e.*, precisely what Plaintiffs are requesting—is thus forbidden by federal law. *See, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1345–46 (11th Cir. 2014); *see also Djie v. Garland*, 39 F.4th 280, 285 (5th Cir. 2022) (discussing *expressio unius* canon and citing *Christensen v. Harris Cnty.*, 529 U.S. 576 (2000)). The 90-day clock began to run on August 7, so the State may no longer remove voters on residency grounds using a systematic program.

Even if the 90-day prohibition on removal of voters based on residence were not dispositive, the NVRA additionally prohibits *any* removal of a voter from the rolls "on the ground that the registrant has changed residence" without following a mandatory notice process. 52 U.S.C. § 20507(d)(1). Under Section 8(d), a state may remove a person from the voter rolls on residency

grounds only in one of two circumstances: upon (1) the person's written confirmation of a change in residence to a place outside the jurisdiction, or (2) completion of the notice-and-waiting process described in Section 8(d)(2). *Id.* § 20507(d)(2). The notice process provides that a registrant may not be removed from the rolls unless they fail to respond to a postage prepaid and pre-addressed return card, sent by forwardable mail, and subsequently do not vote in two federal general election cycles. *Id* § 20507(d)(1). *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 762 (2018).

Part of the reason Congress prohibited these systematic removal programs close to an election, the *Arcia* court explained, was to avoid the risk of errors. *Arcia*, 772 F.3d at 1346.[6] Congress judged that the risk of erroneous disenfranchisement from imposing data-matching programs or other systematic purges close to the election was too great, as "[e]ligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote." *Id.* In seeking the election-eve imposition of a complex data-matching process to remove voters from the rolls, Plaintiffs are asking the Court to order the very thing that Congress forbade. Plaintiffs' Complaint is thus legally deficient.

### C.     Plaintiffs Fail to State a Claim that the State Should Be Ordered Not to Certify the Results of the General Election.

Perhaps the most brazen relief Plaintiffs demand is that the Court prohibit the State from certifying the results of the 2024 General Election and all subsequent elections. The underlying premise of this request appears to be that an election may not be certified if it is somehow not

---

[6] The inherent errors in these types of purges became apparent when in 2019 the Secretary of State of Texas initiated a systematic removal of 98,000 voter registrants alleged as non citizens based on citizenship information that the Secretary of State had received from the Texas Department of Public Safety. In a case challenging the purge, the court found that the Secretary had "created [a] mess." *Tex. League of United Latin Am. Citizens v. Whitley*, No. SA-19-CA-074-FB, 2019 WL 7938511 at *2 (W.D. Tex. Feb. 27, 2019). This was because of the thousands of registrants identified as non-citizens, a vast majority of them were eligible voters. *Id.* Applying this logic to Plaintiffs' request here further counsels against granting the relief Plaintiffs seek so close to the General Election.

"reliable" (*i.e.*, if it does not meet the standard that Plaintiffs invented based on their distorted reading of HAVA's technical election systems testing requirements). *Id.* ¶¶ 1, 33; *see also id.* at ¶¶ 15, 18, 28, 37, 185, 192, 225. This unprecedented claim fails as a matter of law.

Plaintiffs assert, citing literally nothing, that "the currently accepted Federal definition 'to certify' is *to attest that an official measurement is both accurate and the finding of accuracy was reaching in a fully compliant manner*[.]" Compl. ¶ 12 (emphasis in original). But there is no such language in any federal or state law. Indeed, under Texas law, election certification is a ministerial, mandatory duty, not a discretionary process that depends in any way on the "reliability" of the voter rolls.

The certification of elections occurs at the end of the canvassing process, much of which occurs at the precinct level. Tex. Elec. Code § 67.016. At the conclusion of this extensive process, the local authorities' reports of their tabulation, the precinct returns, and the tally lists reflecting the total number of votes for each candidate and office are all delivered to the general custodian of the election records, and a notation of the completion of the canvass is issued. *Id.* The Governor (who is not a named party here) is the official who ultimately certifies elections for statewide offices or ballot issues (including the presidential election) and does so only after the Secretary of State delivers the returns from the county canvass. *Id.* § 67.010. The Governor's duties in this process are prescribed under law, and they are limited: based on the tabulations of the statewide election results prepared by the Secretary of State, "[t]he governor shall certify the tabulations." *Id.* § 67.013(a)–(d); *see also id.* § 67.010. Nowhere does the Texas Election Code authorize the Governor or the Secretary of State or any county canvassing board to question the validity of the ballots cast or the qualifications of the voters who voted.

Every Texas state court to consider election certification issues has confirmed that certification is mandatory. Indeed, *all* cases involve orders *compelling* certification where someone tried to hold up certification. *See Grant v. Ammerman*, 437 S.W.2d 547, 549 (Tex. 1969); *Williamson v. Kempf*, 574 S.W.2d 845, 847 (Tex. App.—Texarkana 1978, writ ref'd n.r.e); *Orth v. Benavides*, 125 S.W.2d 1081, 1083 (Tex. App.—San Antonio 1939, writ dism'd); *In re Robinson*, 175 S.W.3d 824, 827-28 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Beeler v. Loock*, 135 S.W.2d 644, 647 (Tex. App.—Galveston 1939, writ dism'd). As one court put it, "during its progress [certification] is not subject to judicial control other than to require the election and canvassing officials to perform their ministerial duties that have been prescribed by statute. *Williamson*, 574 S.W.2d at 84; *see also Sama v. Sowell*, 519 S.W.2d 526, 527 (Tex. App.—Houston [14th Dist.] 1975, no writ).

Candidates concerned about voting irregularities or voter fraud *must* bring any challenges *after* certification has already occurred. Tex. Elec. Code. §§ 221.003; 221.006 (an election contest made before certification should not impact the canvassing and certification process); *see Williamson* 574 S.W.2d at 848 (If candidates "fe[lt] that voting irregularities or fraud has been committed during the election process, then following the completion of the election process, such dissatisfied party can file suit to contest the election, but not before the statutory requirements for the completion of the election have been met"); *Leslie v. Griffin*, 25 S.W.2d 820, 821 (Tex. Comm'n App. 1930) ("No citizen . . . is given a private right to contest the returns made by the proper officials until after the election is completed."); *Sama*, 519 S.W.2d at 527 (denying election contest before certification was completed); *Willaims v. Sorrell*, 71 S.W.2d 944, 946 (Tex. App.—San Antonio 1934, no writ) (requiring canvassing boards to complete certification before election contest as to legality of voters ensued).

21

Accordingly, even if Plaintiffs had pleaded a valid cause of action, and even if any claims about the upcoming election were ripe, blocking certification would not be a proper remedy. Plaintiffs Have No Right to Mandamus Relief.

Mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary cases." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (citing *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017)). Because mandamus "is one of the most potent weapons in the judicial arsenal," *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation and citation omitted), it is only appropriate when the plaintiff establishes (1) "a clear right to relief"; (2) the defendant has "a clear duty to act"; and (3) "no other adequate remedy exists," *Mendoza-Tarango v. Flores*, 982 F.3d 395, 400 (5th Cir. 2020) (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011)) .

For all the reasons explained above, *supra* Sections III.A–C, Plaintiffs have identified no possible basis for any right to relief, let alone a clear one. Nor have they identified any clear duty that any Defendant is not already following. As explained, any general federal or state law duty to conduct voter roll maintenance is circumscribed by the express and specific limitations of the federal NVRA, including the 90-day quiet period barring systematic removals like those that Plaintiffs request. *See supra* Section III.B; *see also Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013) (NVRA pre-empts contrary state law). With respect to verifying citizenship information, state law provides for no affirmative duty on the part of the State to verify citizenship by sharing and exchanging information *with federal agencies*. *See, e.g.*, Tex. Elec. Code § 16.0332 (authorizing the Secretary of State to enter into an agreement with the Texas Department of Public Safety to verify citizenship information). Nor do federal statutes place any such duty on the State. Neither of the statutes referenced by Plaintiffs, 8 U.S.C. § 1644 and § 1373(c), create any

mandatory duty on the part of state entities to request citizenship information from the Immigration and Naturalization Service (let alone to purge voters on the basis of such information).

Having failed to identify a legal basis for any cause of action at all, Plaintiffs appear to ask the Court to issue sweeping mandamus relief purely on the basis of its own equitable powers. But equity follows the law, and absent a legal entitlement to relief, Plaintiffs are not entitled to mandamus or any other remedy, and this Court would have no power to grant it. *E.g.*, *I.N.S. v. Pangilinan*, 486 U.S. 875, 883 (1988) (Scalia, J.) ("[C]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893))); *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 842 (5th Cir. 2019) ("[A] 'court in equity may not do that which the law forbids.'" (quoting *United States v. Coastal Ref. & Mktg. Inc.*, 911 F.2d 1036, 1043 (5th Cir. 1990))); *see also, e.g.*, *Galveston Causeway Const. Co. v. Galveston, H. & S.A. Ry. Co.*, 284 F. 137, 147 (S.D. Tex. 1922) ("[E]quity follows the law, and ground for sympathy is not ground for equity"), *aff'd*, 287 F. 1021 (5th Cir. 1923). Indeed, every relevant principle regarding the nature and proper scope of equitable relief would stand against Plaintiffs' lawless request.

Plaintiffs are seeking highly disruptive federal court intervention into Texas elections just before a major general election. A plaintiff seeking this kind of extraordinary remedy must have an entitlement that is "entirely clearcut." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). Here, Plaintiffs have not even identified a valid legal basis for such an entitlement. Moreover, election-eve federal court remedies in particular must take into account the burden on voters, candidates, and administrators. *E.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (courts weighing election-eve judicial intervention in election procedures must weigh "considerations specific to election cases" such as voter confusion); *Milligan*, 142 S. Ct. at 881

23

(Kavanaugh, J., concurring) (*Purcell* requires plaintiffs to establish that requested election-eve "changes are feasible without significant cost, confusion, or hardship"). Here, where Plaintiffs seek this Court's "intervention" into nearly every aspect of the 2024 election, Compl. ¶¶ 6–12, those contemplated burdens—disenfranchisement for voters, a massive new mandate to impose novel and illegal voter roll maintenance programs for election administrators, and certification chaos for candidates and the public—would be extreme. Indeed, Plaintiffs seek to deprive innocent voters of the right to vote by removing them from the rolls or stopping the certification of their votes indefinitely, which would be especially inequitable and contrary to the public interest. *E.g.*, *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 220 (W.D. Tex. 2020) ("[P]rotecting the right to vote is of particular public importance.").

Nor is there any actual need to bring an election-eve lawsuit at all; the various obscure allegations about Texas' voter registration database on which Plaintiffs base their Complaint are not new and could have been raised many months or even years ago. *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm.*, 366 F. Supp. 2d 887, 909 (D. Ariz. 2005) (dismissing complaint seeking injunctive relief "just weeks before critical election deadlines"); *Fouts v. Harris*, 88 F. Supp. 2d 1351, 1353 (S.D. Fla. 1999) (dismissing complaint because it was filed after four elections had passed under challenged redistricting plan, 1992, 1994, 1996, and 1998, with only one election remaining before the next Census and noting that court could not grant effective relief because of that). Plaintiffs' indolence, or strategic delay, in waiting to raise their sweeping claims about Texas elections until close to the election is yet another reason why, even if they had come within spitting distance of a valid cause of action, they would not be entitled to equitable relief. *See, e.g.*, *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) (articulating equitable principle that federal court "may dismiss a suit where the plaintiffs' 'lack of diligence is

wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence'" (quoting *Benedict v. City of New York*, 250 U.S. 321, 328 (1919)).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Respectfully submitted this 9th day of October 2024,

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
 Michael Bittner
Texas Bar No. 24064905
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone: +1 (214) 453-6500
tmelsheimer@winston.com
mbittner@winston.com

Ezra D. Rosenberg*
Pooja Chaudhuri*
Heather Szilagyi*
Grace Thomas*
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
gthomas@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL
   RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800
acepedaderieux@aclu.org

Edgar Saldivar
Texas Bar No. 24038188
Thomas Buser-Clancy
Texas Bar No. 24078344
Ashley Harris
Texas Bar No. 24123238
ACLU FOUNDATION OF
   TEXAS, INC.
1018 Preston St.
Houston, TX 77002
Phone: (713) 942-8146
Fax: (915) 642-6752
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
aharris@aclutx.org

Sophia Lin Lakin*
Ari J. Savitzky*
Maura Douglas*
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
asavitzky@aclu.org
mdouglas@aclu.org

George E. Mastoris*
Michelle D. Tuma*

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel. (212) 294-6700
gmastoris@winston.com
mtuma@winston.com

\* motion for admission *pro hac vice*
forthcoming
*Counsel for Proposed Intervenor-Defendants*

\* motion for admission *pro hac vice*
forthcoming

*Attorneys for Intervenor-Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2024, the undersigned filed the document via this  Court's

electronic filing system (CM/ECF), which sent notice of such filing to all counsel of record.

<u>/s/ Thomas M. Melsheimer</u>
Thomas M. Melsheimer
Texas Bar No. 13922550
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Phone: +1 (214) 453-6500
tmelsheimer@winston.com

*Counsel for the Texas State Conference of the*
*NAACP and the League of Women Voters of*
*Texas*

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

UNITED SOVEREIGN AMERICANS, INC.,
BERNARD JOHNSON, AND CITIZENS
DEFENDING FREEDOM

    *Plaintiffs*,

v.

JANE NELSON, in her official capacity as the
Secretary of State of Texas, KEN PAXTON, in his
official capacity as the Attorney General of Texas, and
MERRICK GARLAND, in his official capacity as
Attorney General of the United States

    *Defendants*,

Case No. 2:24-cv-00184

---

**[PROPOSED] ORDER GRANTING TEXAS STATE CONFERENCE OF THE NAACP
AND LEAGUE OF WOMEN VOTERS OF TEXAS' MOTION TO DISMISS THE
COMPLAINT**

   Before the Court is the Motion to Dismiss Plaintiffs' Complaint by Proposed Intervenor-

Defendants Texas State Conference of the NAACP ("Texas NAACP") and the League of Women

Voters of Texas ("LWVTX").  After considering the Motion, the Briefs in Support by both sides,

and the applicable law, the Court finds that Defendants' Motion to Dismiss should be, and hereby

is, GRANTED.

   **SO ORDERED, this _____ day of _____, 2024.**

          */s/* _____
          **HON. MATTHEW J. KACSMARYK
          UNITED STATES DISTRICT JUDGE**