## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., *et al*.<br>            *Petitioners,*<br>    v.<br><br>JANE NELSON, in her Official Capacity as Secretary of State of Texas, *et al*.<br>            *Respondents.* | CIVIL ACTION<br><br>Case No.: 2:24-CV-184-Z<br><br>**PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS MOTION TO DISMISS** |

### Brief in Opposition to Texas Defendants' Motion to Dismiss

i

## <u>TABLE OF CONTENTS</u>

Table of Authorities.............................................................................................................. iii

I.    Summary of the argument..................................................................................... 1

II.   Argument ............................................................................................................... 3

  A.   The Complaint contains allegations sufficient to invoke federal jurisdiction ................... 3

  B.   Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection by virtue of the *Ex parte Young* exception. ...................................................... 10

  C.   Petitioners have stated an appropriate claim under the All Writs Act.............................. 12

III.  Conclusion ......................................................................................................... 17

## Table of Authorities

**Cases**                                                                    **Page(s)**

*Am. Bank & Tr. Co. of Opelousas v. Dent,*
    982 F.2d 917 (5th Cir. 1993) …………………………………...………..……11

*Anderson v. United States,*
    417 U.S. 211 (1974)…………………………………………………...…………14

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.,*
    627 F.3d 547 (5th Cir. 2010)…………………………………...............…………5

*Baker v. Carr,*
    369 U.S. 186 (1962)…………………………………….…………………………4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..……………………………………………….……………12

*CompuSpa, Inc. v. IBM,* 228
    F. Supp. 2d 613 (2002)…………………………………………...…………12

*Cheney v. United States Dist. Ct.,*
    542 U.S. 367 (2004)…………………………………………………………...16

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019) ……………………….…………………………...10

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)…………………………………………….……...…………3

*Dorsey v. Portfolio Equities, Inc.,*
    540 F.3d 333 (5th Cir.2008) …………………………………….......……………12

*Duke Power Co. v. Carolina Environmental Study Group, Inc.,*
    438 U.S. 59 (1978)…………………………………………………...……………4

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ………………………………………….……………………10

*Ex parte Young,*
    209 U.S. 123 (1908)………………………………………….........……..…1, 10, 11

*Federal Election Comm'n v. Akins,*
    524 U.S. 11 (1998)………………………………………...…………….…..…………4

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)……………………………………………………………………..5

*Gill v. Whitford*,
  585 U.S. 48 (2018)…………………………………………………….……..…3

*Gomillion v. Lightfoot*,
  364 U.S. 339 (1960)……………………………………………………...…………14

*Gonzalez v. Kay*,
  577 F.3d 600 (5th Cir. 2009) …………………………….……....……………12

*Gray v. Sanders*,
  372 U.S. 368 (1963)……………………………………………...……..……3, 14

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)…………………………………………….…………………5

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010)………………………………………...….……………16

*In re: Coy*,
  127 U.S. 731 (1888)………………………………….…………………………14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)……………………………………………….……1, 3, 4

*Massachusetts v. Envtl. Prot. Agency*,
  549 U.S. 497 (2007)…………………………………………….…………4

*Oregon v. Mitchell*,
  400 U.S. 112 (1970)………………………………………………………...14

*Reynolds v. Sims*,
  377 U.S. 533 (1964)……………………………………….…………….……14

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)……………………………………………...……3

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)………………………………………………………………5

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
  535 U.S. 635 (2002)……………………………………..……………..2, 10

*Wilbur v. United States*,
    281 U.S. 206 (1930)……………………………………….…………………..16

**Statutes**                                                                **Page(s)**

28 U.S.C. § 1651(a)………………………………………...………………….16

52 U.S.C. § 20501………………………………………………………...………..2

52 U.S.C. §§ 20501(b)(3)-(4)………………………………………………….15

52 U.S.C. § 20507(a)(4)…………………………………………………….…15

52 U.S.C. § 21081(a)(1)(A)(ii)………………………………………...………15

52 U.S.C. § 21081(a)(5)………………………………………………………14

52 U.S.C. § 21083(a)(1)(A)…………………………………………….………15

52 U.S.C. § 20901………………………………………………………………2

Tex. Elec. Code § 31.01…………………………...….……..……..…………...15

Tex. Elec. Code § 31.001…………………………….………………….13, 15


**Other Authorities**                                                       **Page(s)**

U.S. Const. art. I, § 4………………………………………..………….2, 12, 13, 14

U.S. Const. art. I, § 8, cl. 18………………………………....…………….14

U.S. Const. art. III, § 2……………………….................…………….3

I.    **Summary of the argument**

Respondent Texas Secretary of State[1] asserts that this Court lacks subject matter jurisdiction in the above-captioned matter because Petitioners United Sovereign Americans Inc. (hereinafter "USA"), Bernard Johnson, and Citizens Defending Freedom, collectively known as Petitioners, lack Article III standing. A complaint must simply allege standing; standing need not be proven at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing ultimately requires injury, causation, and redressability, all of which are alleged in the Complaint. Qualified voters have constitutionally protected voting rights, and that an agency's failure to adhere to state and federal election laws amounts to a deprivation of that legally protected interest. These principles fit squarely within the purview of Petitioners' allegations. Petitioners alleged actions by Respondent which caused injury to their right to vote. As further explained below, the Complaint appropriately alleges a particularized injury and imminent risk of future harm, rather than a generalized grievance shared by the community. Petitioners respectfully suggest they possess standing to invoke federal jurisdiction. In addition, because the very heart of the Complaint addresses the inaccuracies in voter registration indexes and tabulations, if not corrected, the claims simply cannot be moot because the issues will be ripe for every future federal election until the inaction is corrected.

Respondent also contends that Petitioners' claims are barred by the Eleventh Amendment, which in most instances afford state officials sovereign immunity. However, Eleventh Amendment sovereign immunity is subject to several exceptions, including that established by the Supreme Court in *Ex parte Young*. 209 U.S. 123 (1908). The *Young* exception permits federal lawsuits

---

[1] To the extent the Texas Attorney General and United States Attorney General do not have roles in the time, place, and manner of federal elections, or in their conduct within Texas, Plaintiffs concur that the claim against both Attorneys General should be dismissed.

1

against state agencies where a plaintiff alleges an ongoing violation of federal law while seeking *prospective* relief as a means of addressing that violation. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Here, the *mandamus* relief Petitioners request in the Complaint is prospective, and therefore the doctrine announced in *Young* does not allow Respondent to invoke Eleventh Amendment sovereign immunity as a means of avoiding responsibility for failing to follow Congressional mandates by precluding Petitioners' claims.

Lastly, Respondent contends that Petitioners have failed to state a valid claim under the All Writs Act because the requested relief is not "in aid of" a matter over which this Court has jurisdiction, *mandamus* is not "necessary or appropriate" to resolve Petitioners' claims, and such exceeds the permissible scope of a writ of *mandamus*. As Respondent argues that they need not comply with Congressional mandates simply because they are state officials, this is a case, then, of first impression, and accordingly the cases cited in support of Respondent's argument offer little guidance. By including language in the Elections Clause, U.S. Const., art. I, § 4, the authors or "Framers" of the Constitution reserved to Congress the ultimate authority to regulate federal elections conducted by the several states.  Congress has exercised this power to supersede the power of the states in conducting federal elections through legislation such as the National Voter Registration Act[2] (*hereinafter* "NVRA"), and the Help America Vote Act[3] (*hereinafter* "HAVA"). Further, by enacting the All Writs Act, Congress created an enforcement mechanism empowering federal courts to compel state election agencies to comply with mandates of Congress when Congress chooses to supersede the state in the supervision of federal elections. Petitioners assert that a state election agency, when supervising *federal* elections, becomes quasi-federal by agency,

---

[2] 52 U.S.C. §§ 20501 *et seq*.
[3] 52 U.S.C. §§ 20901 *et seq*.

and thus is subject to Congressional oversight within the jurisdiction of federal courts when carrying out any election-related duties delegated to them by the state legislature to regulate and administer federal elections. This crucial departure from the concepts of dual sovereignty and federalism makes a writ of *mandamus* both appropriate *and* necessary to properly adjudicate Petitioners' claims that state election officials have failed in their duty.

## II.  <u>Argument</u>

### A. The Complaint contains allegations sufficient to invoke federal jurisdiction

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan, 504 U.S. at 560-561.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. See *Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S. at 409.

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders,* 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally

protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing. Generalized grievances in the context of standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote did not amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights…" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id.* In *Massachusetts v. Envtl. Prot. Agency*, the "…EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Id.* at 498-499. Further, the court reasoned that there is a substantial likelihood that the relief requested would prompt the EPA to reduce the risk. *Massachusetts v. E.P.A.*, 549 U.S. 497, 521 (2007); *citing Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S.

59, 79 (1978). Here, the harms implicating voting rights are arguably widespread (as, *arguendo*, are the effects of greenhouse gas emissions). In addition, this Court's involvement is the only solution that would aid in Petitioners request to prompt Respondent to evaluate and correct the voter discrepancies. Thus, Petitioners complaining of election-related injuries from Respondent also have standing to seek review by federal courts under Article III, just as did those seeking relief in the cases cited above.

The Supreme Court has stated that when a plaintiff is a group or organization representing several persons with similar injuries, such "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *see Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d at 550 (5th Cir. 2010) However, the specificity requirements do not mandate identification of all individuals who were harmed if "all the members of the organization are affected by the challenged activity." *Id.* (*quoting Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)).

Respondent's assertion that Petitioners lack standing by virtue of Petitioners' failure to assert a legally cognizable injury, and likelihood of *future* harm in *subsequent* federal elections

administered by Respondent, ignores the factual allegations Petitioners have plainly stated in the Complaint. Petitioners contend they are entirely reasonable in fearing that the demonstrated and pled issues which occurred in the 2022 federal election in Texas will reoccur since Texas election officials, as alleged in the Complaint, have done *nothing* to correct those errors despite notice, again, as specifically alleged in the Complaint.

The Complaint here alleges standing sufficiently to establish subject matter jurisdiction under Article III. Petitioner Bernard Johnson is a Texas voter and congressional candidate for Texas's 19th Congressional District who is directly impacted by the inaccurate voting registration indexes. Due to the inaccuracies, he risks being ineffective in campaigning because he has no choice but to rely on inaccurate data. If these inaccuracies are not corrected, Petitioner Johnson may continue to suffer harm due to diluted votes in the election caused by persons voting who are not eligible to vote, but that Texas has, nevertheless, permitted them to vote. Petitioner, Citizens Defending Freedom, a Texas grassroots organization who spent two years investigating local Texas elections, discovering thousands of ballots that went uncounted, directly affecting members of the organization, and the greater population of Texas. Focusing on Petitioner USA, the interests at stake relate to the heart of USA's mission to ensure all Unites States elections are fair, accurate, and trustworthy, the very heart of their claim. Finally, the claim set forth in this matter is not for an individual of the organization, rather it is for the benefit of all legally registered voters, protecting their votes against the dilution that occurred in 2022, and preventing further voter inaccuracies in future federal elections regulated by the State of Texas in 2024, 2026, 2028, etc..

Turning to the issue of whether Petitioners' injury constitutes simply a generalized grievance shared by the whole community, Petitioners suggest it was not the whole community that sent written inquiries to agents of Respondent requesting transparency as to Texas's

compliance with federal election laws and explanations regarding documented voter and registration irregularities. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls, Petitioners did that. The whole community did not create a comprehensive report on apparent registration and voting violations, Petitioners did. Petitioners, *not* Respondent, informed the whole community of these issues, and the whole community could not have realized them on its own. Petitioners themselves took these actions which distinguishes Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple and specific allegations concerning, *inter alia*, discrepancies in voting records, which suggest that this is not merely a speculative issue, but a very real problem causing Petitioner and Petitioner's members legitimate concerns over whether Texas is counting and considering their votes in such a way that Petitioners' votes are undiluted.

In sum, for purposes of a Motion to Dismiss, the Complaint states a sufficiently plausible cause of action at the early stages of litigation to confer presumptive standing upon Petitioners. Petitioners set forth in the Complaint a series of factual allegations establishing, if true, that the Texas voter registration index has an alarming number of inaccuracies. Petitioners USA and Citizens Defending Freedom notified Respondent regarding the failure in Texas' voting systems and voter registration records. Though Respondent received notice of these apparent errors, she did not take sufficient (or any) actions to investigate the cause for these apparent errors reasonably leading Petitioners to believe that the same or similar apparent errors will recur in 2024, 2026, and in every subsequent federal election as long as Respondent fails to investigate and, where warranted in the exercise of her discretion, correct these anomalies going forward. Thus, the complaint cannot be moot due to the cyclical nature of the election process. The issue is ripe for the court to review because if the errors identified are not corrected, election integrity will continue

to be called into question. Petitioners have identified said anomalies and have pled they brought them to the attention of Respondent and her Texas election officials, the persons who bear the responsibility delegated by the General Assembly to regulate federal elections. No other means exist in the law to require a government official to perform his duties apart from a writ of *mandamus*.

Petitioners have brought this action in an effort to require, through court order, the state of Texas to investigate and take appropriate action concerning the apparent errors Petitioners have brought to Respondent's attention. Petitioners do not seek this Court to order Respondent *how* to perform her job. Petitioners seek court intervention to require Respondent simply to *do* her job and take whatever action *Respondent* considers appropriate in order to comply with Congressional mandates. Petitioners contend the Court ought to order Respondent to report to the Court's satisfaction the reasons for such significant discrepancies and how she has corrected them for 2024 and future federal elections. For example, Respondent should explain to this court how it is possible that in 2022, various Texas county boards of elections could possibly have certified a federal election where more votes were counted than ballots cast as pled in the Petition? Furthermore, the court should require Respondent to explain to its satisfaction how she will address that issue in the coming election and make certain it does not occur in future elections.  It is impossible for move votes to be counted and ballots cast, and yet that is what happened in 2022 in numbers far exceeding the minimum number of errors allowed by Congressional mandate. Respondent objects when Petitioners point this out saying that Petitioners, voters in Texas with a manifest interest in the outcome of their elections for Congress ought not be permitted to complain. Respondent further objects that, while it is undeniable that Congress has enacted laws governing how states *must* conduct federal elections, Respondent cannot be sued in a federal court by state

voters seeking enforcement of the will of Congress. *Infra*. Respondents further object, *infra*. that a writ of *mandamus* and an injunction (while exactly the same remedy under present circumstances) cannot be sought before this Honorable Court based entirely on the nomenclature: that the words "writ of *mandamus*" and "injunction" are not the same words, while completely ignoring they are identical remedies in equity when applied as Petitioners seek the court to approve. Respondent's attacks on Petitioners are not only inconsistent with Supreme Court and Fifth Circuit precedent, but those attacks also defy common sense. Texas voters have a right to have their votes count undiluted by votes that should not be cast. A federal question is before the court concerning how Texas is in non-compliance with a series of Congressional mandates. The federal court exists to decide such questions or how else would the will of Congress be enforced against state officials who refuse to do so? **Petitioners do not seek to relitigate any past election, or place blame on any state official for past elections.** Petitioners simply want Texas to carry out the will of Congress and has only one remaining avenue left to them: to ask the court to *order* Respondent to do what Congress demands going forward from the time of filing, whether that "*order*" is called a writ of mandamus, an injunction, an "Order of the Court," or a combination of numbers and symbols invented by a computer to ensure a secure password—it does not matter what it is called so long as it is issued by the court imposing a prospective remedy to stop an obvious problem. If voters cannot come to a federal court in their home state and complain their vote is being diluted because a state official refuses to enforce the will of Congress and is somehow outside the jurisdiction of the federal court (on an issue that is the very poster child of what the Supremacy Clause is all about), that renders the absurd result that Congress is impotent in the State of Texas. Impotent, because Texas' officials, like Respondent Secretary of State, are simply not answerable to Congress' will when inside a federal courtroom. That is the argument, though more eloquently

stated, that Respondent Secretary of State has raised: "You voters cannot make me follow the law because you are only a handful of citizens. Not just that, the federal judge in Amarillo has no power over me when I am performing my state duties, *even if my duties are carrying out a federal mandate*. And if that is not enough, well, a *mandamus* action is not the same as an injunction action *despite the fact that the relief sought in each under these facts is identical*." Congress never intends an absurd result, but Respondent urges this court to find Congress passed laws that it lacked the power to have enforced by this Honorable Court.

Petitioners suggest they have satisfied the injury-in-fact requirement under Article III, sufficiently to confer subject-matter jurisdiction upon this Court in order to seek the requested relief.

### B. Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection by virtue of the *Ex parte Young* exception.

The Eleventh Amendment affords sovereign immunity to government entities, "as an extension, sovereign immunity precludes suits against state officials or agencies that are effectively suits against the state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Ordinarily, then, citizens are precluded from filing federal lawsuits against state officials. *Edelman v. Jordan*, 415 U.S. 651, 663-69 (1974). One such exception, pursuant to the doctrine announced in *Ex parte Young*, is applicable where "a state official is sued in his official capacity for purely injunctive relief." *Id*. (citing *Young*, 209 U.S. at 155-56). "The inquiry into whether a suit is subject to the *Young* exception does not require an analysis of the merits of the claim." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646, 122 S.Ct. 1753, 152 (2002). Rather, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) *quoting*

10

*Verizon*, 535 U.S. at 645, because in such a situation, "[t]he State has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Ex Parte Young*, 209 U.S. at 160.

In support of her sovereign immunity argument, Respondent only briefly discusses the *Young* doctrine. Respondent avers *Young* is inapplicable to Petitioners' claims on the basis that Petitioners do not seek *injunctive* or *declaratory* relief, completely ignoring the nature of *mandamus*. Petitioners argue that *mandamus* relief and injunctive relief are functionally equivalent in the *Young* context, as both are forms of equitable relief and each form of relief is prospective in nature. Conversely, the *Young* exception is wholly inapplicable where a plaintiff is seeking monetary damages, which Petitioners notably have not done. *Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 920 (5th Cir. 1993 ("*Ex Parte Young* actions must seek only prospective injunctive relief")*. As such, Petitioners contend that the Supreme Court, through *Young* and its progeny, did not mean to apply the exception to plaintiffs seeking declaratory and/or injunctive relief to the exclusion of those requesting other prospective equitable relief such as Petitioners seek here through the more precise vehicle of *mandamus*.

It defies logic that Respondent contends, essentially, that since relief in *mandamus* is not the same as relief by injunction, and the *Young* exception does not apply. Both injunctive relief and *mandamus* relief in the present context would seek this Court to order Respondent to perform its non-discretionary duty, with Petitioners at no time alleging monetary damages. Respondent rests its argument on *injunctive* relief being a different form of relief than *mandamus* relief, but her argument must fail. Under the current factual pattern, the two (2) forms of equitable relief are functionally *identical*.  Accordingly, by application of the *Young* exception, Respondent is not afforded Eleventh Amendment sovereign immunity in this matter.

11

**C.  Petitioners have stated an appropriate claim under the All Writs Act**

In response to a Motion to Dismiss, a Petitioner is not required to prove factual allegations to overcome a 12(b)(6) motion. *CompuSpa, Inc. v. IBM*, 228 F. Supp. 2d 613, 624-625 (2002). When ruling on a motion under Rule 12(b)(6) the court must accept the well-pled allegations of the complaint as true and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(*citing Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir.2008)). "To survive a motion to dismiss, the factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This Court should deny the Respondent's Motion to Dismiss, because this Court has subject matter jurisdiction over Petitioners, and Petitioners have submitted a well pleaded (and documented) complaint.

Contrary to Respondent's motion, Petitioners have *not* asserted a claim for relief specifically under HAVA, nor the NVRA.  Instead, Petitioners ask the Court to require Respondent comply with her obligations under these laws through a writ of *mandamus*, a common law writ specifically authorized by the All Writs Act.  Under the Elections Clause of the United States Constitution, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the sentence at issue. The various states have *presumptive* authority to regulate and administer the election of all elected federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers clearly and unambiguously intended that the Congress retain ultimate authority under the Constitution in the

12

selection of its own members, meaning the power to regulate federal elections. U.S. Const. art. I, § 4.[4] Thus, the Constitution spells out that the default authority to regulate federal elections lies with the several states in the absence of an expression of the will of Congress through a law. This makes the states subordinate to Congress should Congress choose to act. The Framers intentionally intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the virtually sacrosanct principles of dual sovereignty and federalism. Accordingly, the Constitution reserves to Congress the ultimate power to regulate federal elections, while simultaneously delegating the presumptive power to individual state legislatures. In turn, the Texas General Assembly has further delegated the state's power to regulate federal elections to Respondent Secretary of State. Tex. Elec. Code § 31.001. Respondent, though not a federal officer *per se*, Constitutionally and by necessity, became a quasi-federal officer by act of the Texas General Assembly delegating to her its own Constitutionally mandated responsibility to supervise federal elections in Texas. Thus, Respondent is required to carry out both state election statutes passed by the Texas General Assembly *and* federal election statutes passed by Congress, including HAVA and NVRA. In fact, she has no choice but to do so.

While a state official, generally, is insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when

---

[4] While it is true that U.S. Const. art. I, § 4 pertains on its face only to the regulation of the time, place, and manner of the election of members of the United States House of Representatives, the addition of the Seventeenth Amendment in 1913 extended art. I, § 4 to the election of United States senators, previously chosen by the legislatures of the several states. The Seventeenth Amendment further demonstrates an intentional blurring of the concepts of federalism and dual sovereignty. In addition, U.S. Const. art. II, § 1 et seq. relating to the election of members to the Electoral College and the role Congress plays in their election completes the "trifecta" that the means for the selection of *all* elected federal officers is Constitutionally subject to the ultimate authority of Congress notwithstanding federalism or dual sovereignty. The Texas Secretary of State, when supervising all federal elections within the State of Texas is subject to the authority of Congress because with all elected federal officers, Constitutionally, the "buck stops" at the US Capitol.

state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes.[5] *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970). Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Texas otherwise absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. In doing so, Congress effectively, deputized the legislature in Texas to carry out its will.  The legislature then delegated that responsibility, presumed from the wording in the Constitution as amended by Congress, on to Respondent here making Respondent directly answerable to the will of Congress.

Under HAVA, two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall"

---

[5] "…Distortion by fraudulently cast votes…," Petitioners suggest, is another was of saying "diluted."

14

constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in Texas' election laws. Tex. Elec. Code § 31.01. Under Texas election laws, the Secretary of State is the Chief Election Officer who oversees and regulates voter registration procedures and the conduct of elections throughout the state. Tex. Elec. Code § 31.001. Accordingly, the Secretary of State, acting in its capacity as a quasi-federal agency, must ensure compliance with NVRA and HAVA when regulating and administering federal elections. A writ of *mandamus* is the only existing enforcement mechanism through which Petitioners may seek force the Texas Secretary of State to

follow the laws enacted by Congress that impose mandates on how elections must be conducted to ensure elections produce reliable results.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance. Texas voters have no other way to require the Texas Secretary of State follow the very Congressional mandates that are in place to guarantee their vote will be counted with the same value, undiluted, as every other voter's vote. These voters have come to this Honorable Court because their civil right to vote is important to them, and they are convinced that the Texas Secretary of State has ignored the safeguards required by Congress to ensure their votes are properly counted and weighted. Hence the extraordinary remedy of *mandamus* is warranted.

16

### III.    <u>Conclusion</u>

Based on the forgoing, Petitioner respectfully request that this court deny Respondent's

Motion to Dismiss in the above-captioned matter.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: October 30, 2024                   Bruce L. Castor, Jr.
                                         Van der Veen, Hartshorn, Levin, & Lindheim
                                         1219 Spruce St.
                                         Philadelphia, PA 19107
                                         215.422.4194
                                         bcastor@mtvlaw.com
                                         PA I.D. No. 46370
                                         *Attorneys for Petitioners*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2024, a copy of the foregoing Petitioners' Response in Opposition to Respondent's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing though the Court's system.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: October 30, 2024

Bruce L. Castor, Jr.
Counsel for Petitioners

18