IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED SOVEREIGN AMERICANS, INC., BERNARD JOHNSON, and CITIZENS DEFENDING FREEDOM, | § § § § | |
| *Plaintiffs*, | § § | No. 2:24-CV-00184-Z |
| v. | § § | |
| JANE NELSON, *in her official capacity as Secretary of State of Texas*, KEN PAXTON, *in his official capacity as Attorney General of Texas*, and MERRICK GARLAND, *in his official capacity as Attorney General of the United States*, | § § § § § § § | |
| *Defendants.* | § | |

**REPLY BRIEF IN SUPPORT OF THE TEXAS DEFENDANTS' MOTION TO DISMISS**

Plaintiffs asserted private causes of action under NVRA and HAVA in their Complaint,[1] but they now say "[they] have *not* asserted a claim for relief specifically under HAVA, nor the NVRA."[2] They also agree that the Court should dismiss all claims against General Paxton.[3] However Plaintiffs wish to read their Complaint, they have simplified the Court's task in ruling on the Texas Defendants' motion by abandoning all claims except one for mandamus against Secretary Nelson.

By abandoning their NVRA and HAVA claims, Plaintiffs have eliminated any basis for jurisdiction. That is because federal courts cannot grant mandamus directing state officials to perform duties under federal law in the absence of an independent basis for exercising jurisdiction.[4] This point

---

[1] *See, e.g.*, Compl., ¶¶ 141, 216.
[2] Opp., p. 12 (emphasis in original). The Texas Defendants refer to Plaintiffs' *Brief in Opposition* to their motion to dismiss, ECF. 22, as "Opp." and to their opening brief, ECF. 12, as "Br."
[3] *Id.*, p. 1, n. 1. Plaintiffs also appear to abandon all claims against United States Attorney General Garland. *Id.*
[4] *Smith v. Marvin*, 846 F. App'x. 259, 260 (5th Cir. Apr. 1, 2021) (quoting *Moye v. Clerk, Dekalb Cnty. Sup. Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam) (affirming the district court's dismissal of a petition for a writ of mandamus because the plaintiff asserted no other claims for relief)).

alone justifies dismissing this lawsuit, but Plaintiffs also fail to establish Article III's irreducible minimum requirements or show their entitlement to mandamus.

First, standing. Plaintiffs say they bring this lawsuit to request that the Court order Secretary Nelson to follow federal election law to ensure their votes are not diluted by ballots from ineligible voters.[5] The Supreme Court has established that a party's "asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."[6] Nor do Plaintiffs distinguish their claimed vote-dilution injury from generalized grievances with election integrity that conceivably any member of the public could bring, and which therefore lack the particularity needed to establish an injury for purposes of standing.[7]

And regarding mandamus, Plaintiffs say that Secretary Nelson is a federal official when carrying out her responsibilities under NVRA and HAVA.[8] They must say so because they seek mandamus under 28 U.S.C. § 1361, which provides for relief only against "an officer or employee of the United States." Plaintiffs offer absolutely no support for the proposition that Secretary Nelson, or General Paxton, are ever federal officials. Their argument also offends even the most basic understanding of federalism. The Court should dismiss Plaintiffs' lawsuit.

## I.     Plaintiffs Give the Court No Basis for Granting Mandamus.

Plaintiffs appear to think that proceeding based upon a request for mandamus alone frees them from navigating the obstacles to stating a claim under NVRA or HAVA.[9] They are wrong to think so. Plaintiffs' decision to eliminate all claims except for mandamus leaves the Court with no choice but to dismiss this suit. And even assuming mandamus were otherwise available, Plaintiffs fail

---

[5] Opp., pp. 6, 8.
[6] *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (citations and internal quotation marks omitted).
[7] *United States v. Hays*, 515 U.S. 737, 743 (1995) (citations omitted).
[8] Opp., pp. 2–3, 15.
[9] Br. 18–22.

to establish each element needed to plead entitlement to such relief—a point from the Texas Defendants opening brief that Plaintiffs failed to address.[10]

*Mandamus cannot serve as the only basis for jurisdiction.* Plaintiffs' sole remaining claim is a request that the Court issue mandamus to require Secretary Nelson to comply with federal election law.[11] Such a claim is not cognizable unless a litigant presents a basis for the Court to exercise jurisdiction independent from mandamus.[12] Plaintiffs assert no other basis for jurisdiction because they abandoned their NVRA and HAVA claims.[13] Thus, the Court need not consider the remaining "question" of whether Secretary Nelson transforms into a federal official when fulfilling Texas's obligations under federal election law as the State's chief election official.

*The Texas Defendants are not federal officials.* Plaintiffs rest their mandamus arguments on 28 U.S.C. § 1361, which provides for mandamus against "an officer or employee *of the United States* . . . to perform *a duty owed to the plaintiff*."[14] Their argument fails for the obvious reason that the *Texas* Secretary of State, which is a position created by the *Texas* Constitution,[15] is not a federal officer or employee. Plaintiffs attempt to circumvent this glaring obstacle to mandamus by suggesting that Secretary Nelson transforms into a federal official when she carries out Texas's responsibilities under federal election law.[16] Plaintiffs provide no support for this extraordinary claim.

---

[10] Opp., pp. 12–16; *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (explaining that mandamus is only available where "(1) no other adequate means exist to attain the relief, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances.") (emphasis added; citation omitted). Plaintiffs do not genuinely attempt to show mandamus is appropriate here, let alone that their right to the writ is clear and indisputable. Accordingly, the Texas Defendants stand on the arguments in their opening brief. Br., pp. 24–25.
[11] Opp., pp. 9, 12.
[12] *See* 28 U.S.C. § 1651(a) (authorizes federal courts only to "issue all writs necessary or appropriate *in aid of* [its] respective jurisdiction[] and agreeable to the usages and principles of law") (emphasis added); *see also Pennsylvania Bur. of Corr. v. U.S. Marshals Svc.*, 474 U.S. 34, 43 (1985) ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute."); *accord Smith v. Marvin*, 846 F. App'x. 259, 260 (5th Cir. Apr. 1, 2021) (explaining that federal courts do not have jurisdiction to grant mandamus directing state officials to perform their duties under federal law in the absence of another basis for jurisdiction) (quoting *Moye*, 474 F.2d at 1276).
[13] Opp., p. 12.
[14] *Id.* § 1361(a) (emphasis added).
[15] TEX. CONST. art. IV, § 21. As is the *Texas* Attorney General. *Id.*, art. IV, § 22.
[16] Opp. p. 13, n. 4.

3

The Supreme Court's Tenth Amendment precedent also forecloses it: "[T]he Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions."[17] And to acknowledge that "the Federal Government cannot control the State" while maintaining it "can control all of its officers, is to say nothing of significance. Indeed, it merits the description 'empty formalistic reasoning of the highest order.'"[18]

Several courts outside this circuit have found that NVRA presents a special case under the Tenth Amendment. They note that the Elections Clause uniquely provides that "Congress may at any time by Law make or alter such Regulations" as the States adopt regarding the times, places, and manner of federal elections.[19] Neither this Court nor the Fifth Circuit are bound by those decisions.[20]

Nor would those decisions help Plaintiffs if this Court did find them persuasive. As Judge Poser put it in *Edgar*: "The first sentence [of the Elections Clause] requires the states to create and operate [ ] a system . . . of federal voter registration . . . and the second authorizes Congress to alter the state's system—*but it is still the state's system, manned by state officers . . . .*"[21]

## II. Plaintiffs also Fail to Establish Article III's Irreducible Minimum Requirements.

Plaintiffs allege that Secretary Nelson failed to comply with federal law, posing a risk of diluting their votes and those cast by "the greater population of Texas."[22] The Texas Defendants' opening brief challenged whether Plaintiffs had established Article III's minimum requirements of (1) an injury-in-fact, (2) causation, and (3) redressability.[23] But Plaintiffs do not show how the Texas Defendants

---

[17] *New York v. United States*, 505 U.S. 144, 162 (1992) (citing *Coyle v. Smith*, 221 U.S. 559, 565 (1911)).
[18] *Printz v. United States*, 521 U.S. 898, 931 (1997).
[19] *See Association of Comm. Org. for Reform Now v. Edgar*, 56 F.3d 791, 794–95 (7th Cir. 1995); *Voting Rights Coalition v. Wilson*, 60 F.3d 1411, 1414–15 (9th Cir. 1995); *Association of Comm. Org. for Reform Now v. Miller*, 129 F.3d 833, 836–37 (6th Cir. 1997).
[20] *See, e.g., Signal Oil & Gas Co. v. The Barge W–701,* 654 F.2d 1164, 1177 (5th Cir.1981) (cases from different circuits do not control this circuit's construction of state and federal law).
[21] 56 F.3d at 795 (emphasis added).
[22] *See, e.g.*, Opp., pp. 6, 8. Plaintiffs correctly point out that an organization may assert associational standing on behalf of its members when, among other things, those members have standing to sue in their own right. Opp., p. 5. Plaintiffs fail to show that their members have standing.
[23] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

diluted their members' votes, or how that concern would be redressed by ordering Secretary Nelson to comply with federal law.[24] Plaintiffs also failed to adequately show how their injury is anything but speculative.[25] The Texas Defendants stand on the arguments in their opening brief on these points.

Plaintiffs instead spend significant space in their brief arguing that the vote-dilution injury to CDF's and United's members, and Mr. Johnson's risk of campaign ineffectiveness, amount to concrete and particularized injuries. They make three arguments. *First*, Plaintiffs suggest they present a particularized injury because only *qualified* voters are harmed by vote dilution from ballots cast by ineligible voters.[26] *Second*, Plaintiffs argue that only CDF and United monitored Texas's past elections, so they are uniquely harmed.[27] *Third*, Mr. Johnson argues that Secretary Nelson's failure to comply with federal election law caused him to *risk* being ineffective when campaigning for Texas's 19th Congressional District.[28] Each of these arguments is meritless.

*Plaintiffs' vote-dilution injury is unparticularized.* In their opening brief, the Texas Defendants identified decisions from numerous other courts refusing to exercise jurisdiction over lawsuits claiming that a defendant was responsible for a plaintiff's vote-dilution injury.[29] By and large, those courts explained that "ostensible election fraud may conceivably be raised by any [] voter," so plaintiffs' "purported injury of having their votes diluted" does not "state a concrete and particularized injury."[30] Plaintiffs offer the Court two unavailing reasons why it should ignore these decisions.

---

[24] Br., pp. 16–17.
[25] *Id.*, pp. 14–16.
[26] Opp., p. 4.
[27] *Id.*, pp. 6–7.
[28] *Id.*, p. 6.
[29] Br., pp. 1, 12–13, 18.
[30] *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020); *accord ACLU v. Martinez-Rivera*, 166 F. Supp. 3d 779, 803 (W.D. Tex. 2015) ("[C]omplaints of undermined confidence and potential vote dilution are nothing but a generalized grievance about government."); *Martel v. Condos*, 487 F. Supp. 3d 247, 253 (D. Vt. 2020) ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. Oct. 14, 2020) ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing."); *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1000 (D. Nev. 2020) ("[P]laintiffs' claims of a substantial risk of vote dilution 'amount to general grievances that cannot support

5

*First*, Plaintiffs say this lawsuit raises an issue of first impression.[31] Plaintiffs attempt to distinguish this case by claiming the Texas Defendants have said "they need not comply with Congressional mandates simply because they are state officials."[32] Plaintiffs can cite no portion of the Texas Defendants' opening brief in support of this point because the Texas Defendants have not made this point—Plaintiffs simply fabricated it. Nor do Plaintiffs give any reason why this issue would distinguish their vote-dilution injury from the federal decisions rejecting the same standing argument.

*Second*, Plaintiffs suggest that because suspected voting by ineligible voters dilutes the vote of only *qualified* voters, they present an injury particular to an identifiable class of persons—not a generalized grievance. Plaintiffs refer the Court to several Supreme Court decisions, but those cases do not support the proposition that *any person* claiming their vote has been diluted by the acceptance of illegally-cast ballots has standing to sue under all circumstances.[33] They are also distinguishable.

*Federal Election Com'n v. Akins* did not involve a vote-dilution injury.[34] Rather, the Court found that plaintiffs met Article III's injury requirement based up on an informational injury flowing from a political committee's refusal to disclose a list of its donors, campaign contributions, and expenditures for which federal law specifically required disclosure.[35] Nevertheless, the Court also reaffirmed that a claimed "injury to the interest in seeing that the law is obeyed," which Plaintiffs raise here, "deprives [a] case of the concrete specificity" needed to establish standing.[36]

---

a finding of particularized injury . . . .'"); *Wise v. Circosta*, 978 F.3d 93, 104 (4th Cir. 2020) (Motz, J., concurring) ("[P]laintiffs' votes would not count for less *relative to other North Carolina voters*."); *Iowa Voter All. v. Black Hawk Cnty.*, 515 F.Supp.3d 980, 991 (N.D. Iowa 2021) ("Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated from the injury to any other citizen.").
[31] Opp., p. 2.
[32] *Id.*
[33] *Id.*, pp. 3–4.
[34] 524 U.S. 11, 24 (1998).
[35] *Id.* at 21.
[36] *Akins*, 524 U.S. at 24 (citations omitted).

*Gray v. Sanders* involved an Equal Protection Clause challenge to a Georgia county's system for weighting votes counted in a Democratic primary.[37] *Gray* held that Georgia's county system violated the one person, one vote principle because it diluted the voting power of *certain voters* based only on where they happened to live.[38] But Plaintiffs here do not claim a geographically circumscribed injury.

*Baker v. Carr* also involved an Equal Protection Clause challenge to a voting system "disfavor[ing] the voters in the counties in which [the plaintiffs] reside[d], placing them in a position of constitutionally unjustifiable inequality vis-a-vis voters in irrationally favored counties."[39] The Court distinguished their injury from "the right possessed by every citizen to require that the government be administered according to the law."[40]

None of the above cases involved claims of vote-dilution for which a litigant sought "relief on behalf of their member voters that 'no more directly and tangibly benefits [them] than it does the public at large,'" which do not present a particularized injury.[41] Plaintiffs' standing argument fails.

**Plaintiffs fail to adequately allege an election monitoring injury.** Plaintiffs also suppose they present a particularized injury because only CDF and United requested information on Texas's compliance with federal election laws, reviewed voter data to assess the accuracy of voter registration rolls, created a report on suspected registration and voting violations, and informed "the whole community" of election integrity issues.[42] This argument fails for three sets of reasons.

*First*, Plaintiffs point to election monitoring not as an independent form of injury, but as a supposed basis for distinguishing themselves from the rest of the voting public.[43] As they tell it, their members' vote-dilution injury is not a generalized grievance because only CDF and United monitored

---

[37] 372 U.S. 368, 370 (1963).
[38] *Id.* at 379–80.
[39] 369 U.S. 186, 207–08 (1962).
[40] *Id.* at 208 (citations and internal quotation marks omitted).
[41] *Cegavske*, 488 F. Supp. at 1000 (quoting *Lujan*, 504 U.S. at 573–74) (remaining citations omitted).
[42] Opp., pp. 6–7.
[43] *Id.*

7

Secretary Nelson's compliance with federal election law.[44] Plaintiffs offer no support for the proposition that a claimed injury may be narrowed from a generalized grievance into a particularized harm because a litigant voluntarily engaged in unrelated conduct for which they claim no corresponding injury. If accepted, Plaintiffs' poorly-considered argument would displace the Supreme Court's standing jurisprudence altogether, as any litigant could point to some extraneous fact that distinguishes them from the public at large—no matter how irrelevant the fact to their claimed injury.

*Second*, as the Fifth Circuit explained in *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, "general allegations of activities related to monitoring the implementation of the NVRA" cannot support standing unless paired with allegations that those monitoring costs are traceable to a defendants' conduct.[45] Plaintiffs give the Court no reason to believe that Secretary Nelson caused them to take on election monitoring costs based on any of the conduct they claim is inconsistent with federal law. That is because Plaintiffs do not identify any illegal *conduct* by Secretary Nelson, only her alleged failure to comply with federal election law.

*Third*, Plaintiffs make no effort to show that CDF and United "diverted significant resources to counteract the defendant's conduct" in such a way that the conduct "significantly and perceptibly impaired" their ability to provide their services to their members.[46] CDF and United therefore cannot invoke organizational standing.

***Mr. Johnson's campaigning ineffectiveness injury is not "concrete."*** Mr. Johnson claims that Secretary Nelson's alleged noncompliance with federal election law created a risk of his ineffectiveness in campaigning because he had no choice but to rely on *possibly* inaccurate voter data.[47]

---

[44] *Id.*
[45] 178 F.3d 350, 359 (5th Cir. 1999).
[46] *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010) (citation and internal quotation marks omitted). Aside from raising the proposition that organizations *can* have standing when a defendant's actions impede their organizational mission, CDF and United do nothing to show that the Texas Defendants *have* harmed their missions. Opp., pp. 5–6 (citing *Havens Reality Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).
[47] Opp., p. 6.

He further claims that because he must rely on that data, he ran the risk of addressing his campaign efforts to ineligible but registered voters.[48] Mr. Johnson's argument fails for three reasons.

*First*, he gives the Court no reason to find that he faces a genuine risk of campaigning ineffectiveness due to Secretary Nelson's alleged failure to comply with NVRA or HAVA. *Second*, a risk of an injury is not itself an injury suitable for judicial review. Rather, the harm must be "actual" and "imminent" before a federal court can exercise jurisdiction over the possibility of such harm occurring.[49] *Third*, all candidates for Texas's 19th Congressional District faced the same "risk" as he did,[50] so Mr. Johnson was no worse off than his competitors. As such, he suffered no injury.

## CONCLUSION

The Court should dismiss Plaintiffs' claims with prejudice.

Date: November 11, 2024

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

Respectfully submitted,

*/s/ Cole P. Wilson*
**COLE P. WILSON**
Assistant Attorney General
Texas State Bar No. 24122856
Cole.Wilson@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1309 | Fax: (512) 320-0667

**COUNSEL FOR TEXAS SECRETARY OF STATE NELSON AND ATTORNEY GENERAL PAXTON**

---

[48] *Id.*
[49] *Lujan*, 504 U.S. at 560 (internal quotation marks omitted)
[50] *See also* Br., pp. 13–14.

9

**CERTIFICATE OF SERVICE**

  I certify that a copy of the document above was served on all counsel of record who have entered an appearance on November 11, 2024, using the Federal Court CM/ECF system.

                     */s/ Cole P. Wilson*