IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, *et al.*, | |
| Petitioners, | |
| v. | Civil Action No. 2:24-CV-00184-Z |
| JANE NELSON, Secretary of the State of Texas, *et al.*, | |
| Respondents. | |

## **RESPONDENT MERRICK GARLAND'S MOTION TO DISMISS**

LEIGHA SIMONTON
United States Attorney

*/s/ Dawn Whalen Theiss*
DAWN WHALEN THEISS
Assistant United States Attorney
Texas Bar No. 24051755
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214-659-8600
Facsimile:    214-659-8807
Dawn.theiss@usdoj.gov

*Attorneys for Respondent Merrick Garland*

## Table of Contents

I.    Background ............................................................................................... 1

II.   Legal Standard ........................................................................................ 3

III.  Argument and Authorities ....................................................................... 5

    A.    Petitioners Lack Standing to Sue Federal Respondent ................................. 5

        1.    Petitioners fail to establish injury in fact ............................................ 5

        2.    Petitioners do not meet causation or redressability ............................ 8

        3.    Neither CDF nor United meet the requirements for
             organizational or associational standing. .......................................... 10

    B.    The Court Lacks Jurisdiction Over Petitioners' Mandamus Claim ........... 12

    C.    Petitioners' All Writs Act Claim Should Be Dismissed. ........................... 14

IV.   Conclusion ............................................................................................ 15

# Table of Authorities

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*,
    449 U.S. 33 (1980) ................................................................................................. 12

*Arizona v. Biden*,
    40 F. 4th 375 (6th Cir. 2022) ............................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 4

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
    627 F.3d 547 (5th Cir. 2010) ................................................................................ 11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................... 5, 6, 7, 8

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*,
    112 F.3d 1283 (5th Cir. 1997) .............................................................................. 12

*Giddings v. Chandler*,
    979 F.2d 1104 (5th Cir. 1992) ......................................................................... 12, 13

*Graham v. AG, Ga.*,
    110 F.4th 1239 (11th Cir. 2024) ............................................................................ 7

*Heckler v. Ringer*,
    466 U.S. 602 (1984) .............................................................................................. 12

*Hotze v. Hudspeth*,
    16 F.4th 1121 (5th Cir. 2021) ................................................................................ 8

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*,
    82 F.4th 345 (5th Cir. 2023) ................................................................................ 10

*Leisure v. FBI of Columbus*,
    2 F. App'x 488 (6th Cir. 2001) ............................................................................ 13

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................. 5

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................passim

*Newsome v. E.E.O.C.*,
    301 F.3d 227 (5th Cir. 2002) ....................................................................... 12

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ....................................................................... 10

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
    474 U.S. 34 (1985) ...................................................................................... 14

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ......................................................................... 4

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ....................................................................... 12

*Rodriguez v. Rutter*,
    310 Fed. Appx. 623 (5th Cir. 2009) ............................................................... 4

*Scanlan v. Tex. A&M Univ.*,
    343 F.3d 533 (5th Cir. 2003) ......................................................................... 4

*Spokeo Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................................... 5

*Stockman v. Fed. Election Comm'n*,
    138 F.3d 144 (5th Cir. 1998) ......................................................................... 4

*Syngenta Crop Protection, Inc. v. Henson*,
    537 U.S. 28 (2002) ...................................................................................... 15

*Tex. Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ................................................................... 7, 13

*The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
    946 F.3d 649 (5th Cir. 2019) ......................................................................... 9

*United States v. Texas*,
    599 U.S. 670 (2023) ............................................................................ 5, 10, 13

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ...................................................................................... 8

**Statutes**

28 U.S.C. § 1361 .................................................................................... 12, 15

28 U.S.C. § 1651 ................................................................................................ 14

52 U.S.C. § 21081(a)(5) ................................................................................... 14

**Other Authorities**

2015 VVSG, A-20, *available at*
    https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf
    ................................................................................................................ 14

This case alleging election irregularities was brought by two non-profit organizations and one Texas resident ("Petitioners").  Broadly speaking, Petitioners allege that Texas' 2022 federal election did not meet minimum reliability standards, as they define those standards, so the results should not have been certified. Using this premise as their baseline, they argue that if the "2022 election performance is repeated in 2024, [Petitioners] and all Texas voters will suffer damages." ECF No. 5, at 3. They ask this Court to step in take extraordinary action – to issue a writ of mandamus that orders Merrick Garland, the Attorney General of the United States ("Federal Respondent") to take extensive and broad action that would essentially halt Texas' 2024 federal election, which has already occurred, so that Petitioners' allegations can be investigated and the 2024 election can proceed on Petitioners' terms.

Petitioners' claims against the Federal Respondent are flawed from all angles. First and foremost, this Court does not have jurisdiction to entertain Petitioners' claims. No Petitioner has Article III standing, as Petitioners assert only speculative injuries and generalized grievances that are not fairly traceable to Federal Respondent or redressable by this Court. Petitioners' mandamus claim is also jurisdictionally deficient, as Petitioners cannot establish that Federal Respondent has a clear, nondiscretionary duty to act. Beyond these fatal jurisdictional issues, Petitioners' claims are not well-pleaded.

For these reasons, Federal Respondent seeks dismissal for lack of jurisdiction and failure to state a claim upon which relief may be granted.

## I.    Background

This case is among a series of cases filed by Petitioner United Sovereign

Americans, Inc. (United), against state election officials and the Federal Respondent seeking writs of mandamus to prevent allegedly unreliable election results. In this case, the other petitioners are Bernard Johnson and non-profit organization Citizens Defending Freedom (CDF).  ECF No. 5, p. 12.

Petitioners allege that Texas' 2022 federal election had "hundreds of thousands of voter registration apparent errors" uncovered by United Sovereign Americans' "expert data analysts." *Id*. at 36. These alleged errors concern voter registration information, such as addresses, names, registration status, age, and votes counted. *Id*. at 37–42. Using these purported identified errors, United Sovereign Americans computed error rates that Petitioners contend exceed the benchmark error rate applicable to "voting systems" under section 301 of the Help America Vote Act (HAVA) and the U.S. Election Assistance Commission's 2015 Voluntary Voting System Guidelines. *Id*. at 26-29, 42-44. According to Petitioners, the error rates United Sovereign Americans calculated show that the 2022 election results are unreliable, and they further allege that Respondents have not acted to prevent these errors from recurring. *Id*. at 40-49. Petitioners "believe and therefore aver" that these errors "will continue uncorrected" without the requested judicial intervention. *Id*. at 6.

Petitioners ask the Court to issue a writ of mandamus that orders the Federal Respondent to "comply with" and "enforce and police" the National Voter Registration Act (NVRA) and HAVA for implementation in the Texas 2024 General Election.  *Id*. at 52.  The requested writ would order Federal Respondent to "take steps . . . to ensure the apparent errors made during the 2022 elections do not recur" and bring down the error

rates Petitioners computed. *Id*. at 45, 52.

Although Petitioners maintain that they are not challenging the 2022 election results, they make various requests related to that election, asking the Court to: (1) formally recognize that Texas's voter registration rolls contained hundreds of thousands of apparent errors in the 2022 General Election, (2) order Respondents to ministerially correct the apparent errors in the 2022 election, and (3) order Respondents to "ascertain to the Court's satisfaction the reasons why the 2022 errors occurred." *Id*. at 55. Petitioners also ask the Court to order the State to submit voter registration requests to the Department of Homeland Security to "verify citizen or immigration status . . . whenever there exist any reliable indicators that an applicant or registered voter may not be a U.S. citizen." *Id*. Then, citing "permissible causes of action under NVRA and HAVA," Petitioners ask the Court to order that the State of Texas "may not certify the 2024 General Election unless and until the relevant [respondents] have demonstrated to the Court that the 2024 General Election and subsequent elections were conducted in conformity with federal and state law and with fewer than the maximum errors permissible." *Id*. at 56. Last, Petitioners ask the Court to order Respondents to perform their duties as "the law intended," including "investigating, and *where warranted in their discretion*, prosecuting persons or entities for failing to perform their duties in conformity with the law." *Id*. (emphasis added).

Federal Respondent now moves to dismiss.

## II.    Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges whether

subject-matter jurisdiction exists for a plaintiff's claims. "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A Rule 12(b)(6) motion to dismiss challenges whether the plaintiff has sufficiently stated a claim "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In resolving a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Generally, in deciding whether to grant a motion to dismiss, a district court may not "go outside the complaint." *See, e.g.*, *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). There is a recognized exception to that rule: A district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Rodriguez v. Rutter*, 310 Fed. Appx. 623, 626 (5th Cir. 2009).

### III.    Argument and Authorities

**A.    Petitioners Lack Standing to Sue Federal Respondent**

Petitioners fail to satisfy the most basic requirement for any suit to proceed in federal court—Article III standing to sue. Article III of the Constitution confines federal judicial power to "Cases" and "Controversies," which "can exist only if a plaintiff has standing to sue." *United States v. Texas*, 599 U.S. 670, 675 (2023). This "bedrock constitutional requirement" must be met before a court may reach the merits of a party's claim." *Id.* "By ensuring that a plaintiff has standing to sue, federal courts 'prevent the judicial process from being used to usurp the powers of the political branches.'" *Id.* at 676 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

The "irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. As discussed below, Petitioners fail to meet their burden for each element.

### 1.    Petitioners fail to establish injury in fact.

To start, Petitioners' allegations do not amount to injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations, quotation marks omitted). To be "concrete," the injury must be "real and not abstract," such that the plaintiff has "a personal stake in the outcome." *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016); *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To be "particularized," the injury

"must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. And where no actual injury is alleged, the injury must be "certainly impending" to meet imminence. *Clapper*, 568 U.S. at 410. Injury in fact is not met where a plaintiff merely asserts a "generalized grievance" in which "the impact on [the] plaintiff is plainly undifferentiated and common to all members of the public." *Lujan*, 504 U.S. at 575.

Petitioners' alleged injuries do not meet any of these requirements. Petitioners allege they "have been and are currently harmed by the State of Texas voting systems currently and formerly in use in the State of Texas state and federal elections" because the systems violate federal and state election laws, the Constitution, and federal civil rights laws pertaining to voter rights. ECF No. 5, at 17. Petitioners allege that Respondents "have allowed, and continue to allow," these alleged violations. *Id*. This injury is not theirs alone, rather it is shared by "all Texas voters" and, they assert, "would cease to exist, or be relieved" by obtaining their requested relief. *Id*. at 19.

Johnson, the only individual petitioner, alleges injury related to the 2022 election, which isn't being challenged. *Id*. at 15-16. Johnson asserts standing because, he contends, he is "directly affected by the State's failure to correct the errors prevalent in the Texas 2022 General Election" because he is running for federal office in the succeeding federal election in 2024 and therefore believes that his personal interests are harmed by Respondents' failure to act. ECF No. 5, at 14.

But Johnson's allegations are still too generalized to confer standing. At their most specific, Johnson alleges that he has been caused to "spend money campaigning to garner votes based on registrations and voter rolls that may be inaccurate," and that he

used that inaccurate information "to his detriment in making decisions on how to allocate his campaign resources."  *Id*. at p. 17.  These allegations fall short of actual threats to Johnson's "election prospects or campaign coffers" that would potentially be sufficient to confer standing on an election candidate.  *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006); *see also Graham v. AG, Ga.*, 110 F.4th 1239, 1244 (11th Cir. 2024) (determining that no meaningful relief could be provided pertaining to election that had already concluded). Moreover, Petitioners "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

All told, these allegations do not come close to constituting injury in fact. First, rather than being "concrete and particularized," Petitioners' injuries are textbook generalized grievances. *See Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Petitioners do not allege that anything real or personal is at stake for them if the 2024 election proceeds without their interruption. *See* ECF No. 5, at 14-20; *Clapper*, 568 U.S. at 411. All Petitioners say is that they were and will be "harmed" by Texas' "voting systems" because the systems "violate" laws. ECF No. 5, at 17. But "an injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable." *See Lujan*, 504 U.S. at 575. And despite the thousands of registration issues

purportedly "uncovered" by United Sovereign Americans, no Petitioner alleges that these issues impacted their ability to register for the 2024 election. *See Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (contentions that drive-thru voting hurt the "integrity" of the election process was too generalized to warrant standing). As it stands, Petitioners' injuries do not meet the "concrete and particularized" requirements of injury in fact.

Second, Petitioners cannot show their alleged harm is "actual or imminent," as opposed to "conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). As alleged, Petitioners "believe and therefore aver" that the 2024 election will violate various laws, but Petitioners do not base their beliefs in anything tangible, and "[a]llegations of possible future injury do not satisfy the requirements of Article III." ECF No. 5, at 54-55. *Whitmore*, 495 U.S. at 158. Petitioners' allegations rest on "speculative fear," *Clapper*, 568 U.S. at 410, that registration issues will occur and somehow lead to unreliable election results. This "highly attenuated chain of possibilities [] does not satisfy the requirement that threatened injury must be certainly impending," and because Petitioners do not offer anything more, their allegations do not meet imminence. *See id.*

## 2. Petitioners do not meet causation or redressability.

Beyond failing to allege injury in fact, Petitioners cannot establish the remaining elements of standing: causation and redressability. For causation, the injury alleged "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court." *Lujan*, 504 U.S. at 560 (cleaned up). For redressability, "it must be likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision." *Id*. "When a [plaintiff] challenges the defendant's actions with respect to third parties . . . , it is 'substantially more difficult' to establish standing given the causation and redressability problems that invariably arise." *Arizona v. Biden*, 40 F. 4th 375, 383 (6th Cir. 2022) (citing *Lujan*, 504 U.S. at 560–62); *see also The Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (alleged injuries can't be the result of the independent action of some third party that is not before the court").

Here, Petitioners' alleged injuries from Federal Respondent are that Federal Respondent has various enforcement, policing, and prosecution powers that have not been employed, or have not worked, to Petitioners' satisfaction. ECF No. 5, at 32–36, 44, 51–55. Petitioners believe that Respondents "have ignored or dismissed" their concerns about voter registration in Texas. *Id*. at p. 32–35, 40. But Petitioners do not allege that their alleged injuries—fears that the 2024 election results will be unreliable—can be traced to Federal Respondent in any specific way. No Department of Justice enforcement guidelines, policies, or directives are mentioned in the petition, nor do Petitioners provide examples of supposed actions that Federal Respondent has taken or mandatory duties that Federal Respondent has failed to fulfill. Without such allegations—or anything like them—Petitioners' alleged injury is not "fairly traceable" to Federal Respondent.

Petitioners also cannot establish that their injuries are redressable by this Court. The relief they seek against Federal Respondent is a mandamus order that Respondent "perform [] duties as the law intended," to include "investigating, and where warranted in [his] discretion, prosecuting persons, or entities." ECF No. 5, at 55–56. As an initial

matter, it is unclear how such an order "would remedy [Petitioners'] alleged injury," as Petitioners have not alleged that they have suffered any specific injury based on Federal Respondent's supposed inaction. *See Lujan*, 504 U.S. at 569. It is well-established that "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." *Texas*, 599 U.S. at 680. Indeed, Article II provides the Executive Branch discretionary authority to decide "how to prioritize and how aggressively to pursue legal actions," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices in this area." *Id.* at 679. Because Petitioners cannot establish that their requested relief remedies their alleged injuries, or can even be granted by this Court, they lack redressability.

### 3.    Neither CDF nor United meet the requirements for organizational or associational standing.

An organization can establish standing in two ways: on behalf of its members or on its own behalf. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017).

Petitioner CDF asserts "organizational standing." ECF No. 5, p. 15. An organization can establish standing in its own name if it meets the same standing test that applies to individuals. *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345, 351 (5th Cir. 2023). As explained above, CDF falls short of meeting these requirements, and the complaint does not contain any allegations to suggest that CDF, as an organization, suffered harm. Accordingly, any attempt to establish organizational standing must fail.

Instead, CDF seems to assert that it is entitled to standing on behalf of its

members, or "associational standing," by alleging that it "represents a group of Texas registered voters each expecting their vote to be properly counted and weighted," ECF No. 5, at 15. CDF further states that it is "comprised of Texas citizens who have an interest in the elections being administered fairly, properly and accurately." *Id*. at p. 18. An association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). But CDF does not meet these criteria, either, because it has not pleaded any facts regarding its membership structure or whether CDF's members would have standing to sue in their own right. Accordingly, CDF fails to meet the requirements for associational standing, as well.

Moreover, Petitioners do not even attempt to invoke organizational or associational standing as to Petitioner United. The complaint lacks any allegations regarding United's members, its membership structure, or whether its members have suffered any harm. As such, United, for the same reasons as CDF, fails to meet the requirements for organizational or associational standing.

Petitioners cannot meet their burden of establishing standing to sue Federal Respondent. Accordingly, the Court should dismiss their complaint for lack of jurisdiction.

**B.    The Court Lacks Jurisdiction Over Petitioners' Mandamus Claim**

Petitioners' mandamus claim also fails for want of jurisdiction. The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is only available when the plaintiff can establish "a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." *Newsome v. E.E.O.C.*, 301 F.3d 227, 231 (5th Cir. 2002). The duty owed must be plainly defined, nondiscretionary, and free from doubt, and the act must be purely ministerial. *See Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Mandamus is only available if (1) the plaintiff has a clear and indisputable right to the relief sought,(2) the defendant has a clear duty to act, and (3) there is no other adequate remedy available. *Id.*; *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011). Mandamus is not available to review the discretionary acts of officials. *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

Petitioners fail to meet the high bar that has been set for mandamus relief. They do not establish any "duty owed" by Federal Respondent within the meaning of § 1361. *Giddings*, 979 F.2d at 1108. The duty must be "ministerial and so plainly prescribed as to be free from doubt." *Id*.

Petitioners' complaint contains no such allegations. The "duty" they allege is that

Federal Respondent "enforce[s] and police[s]" the NVRA and HAVA in Texas by "investigating, and where warranted in their discretion, prosecuting persons, or entities." ECF No. 5, p. 51-56. Petitioners' allegations, therefore, concede that they ask this Court to enforce a discretionary duty, for which there is no mandamus remedy. *See Giddings*, 979 F.2d at 1108. Indeed, as explained above, investigating and prosecuting are quintessential discretionary decisions. *See Texas*, 599 U.S. at 680. Accordingly, "mandamus is not available to review the discretionary acts of officials." *Giddings*, 979 F.2d at 1108; *see also Seabrook v. Castle*, 659 F.2d 1371, 1375 (5th Cir. 1981) (affirming dismissal of mandamus action because there was no non-discretionary duty on the administrator to make a finding every time some information concerning a possible violation of a state implementation plan is brought to his attention); *Leisure v. FBI of Columbus*, 2 F. App'x 488, 489 (6th Cir. 2001) (affirming dismissal of mandamus action that sought a court order directing the FBI to "address its duties and obligations to protect citizens"). Petitioners thus cannot establish that Federal Respondent owes them a clear nondiscretionary duty, so their mandamus claim fails.

Nor can Petitioners establish a clear right to relief, specifically for their allegations that HAVA has been violated. Petitioners allege violations of HAVA based on the error rate computed by United Sovereign Americans' "expert analysists" that Petitioners claim exceeds HAVA's acceptable error rate. ECF No. 5, p. 26-29. Yet, as Petitioners acknowledge, HAVA's error rate pertains to "voting systems," which refers to the "hardware-related errors," not the registration issues Petitioners identify. 2015 VVSG, A-20, at 79, *available at*

https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG.1.1.VOL.1.FINAL1.pdf;

ECF No. 5, at 9; *see also* 52 U.S.C. § 21081(a)(5) (discussing the "error rate of the voting

system in counting ballots" while excluding errors "attributable to an act of the voter").

The factual errors that Petitioners allege are thus inapposite to the HAVA violations

alleged, so Petitioners cannot establish a "clear right to relief" under HAVA. Petitioners'

mandamus claim should be dismissed for this reason, too.

## C.    Petitioners' All Writs Act Claim Should Be Dismissed.

Last, to the extent Petitioners bring their All Writs Act claim against Federal

Respondent, it should be dismissed. The All Writs Act provides that "[t]he Supreme

Court and all courts established by Act of Congress may issue all writs necessary or

appropriate in aid of their respective jurisdictions and agreeable to the usages and

principles of law." 28 U.S.C. § 1651. The Act enables federal courts to issue such

commands "as may be necessary or appropriate to effectuate and prevent the frustration

of orders it has previously issued in its exercise of jurisdiction otherwise obtained."

*United States v. N.Y. Tel*., 434 U.S. 159, 172 (1977). It does not authorize courts "to issue

ad hoc writs whenever compliance with statutory procedures appears inconvenient or less

appropriate." *Pa. Bureau of Corr. v. U.S. Marshals Serv*., 474 U.S. 34, 43 (1985).

"Where a statute specifically addresses the particular issue at hand, it is that authority,

and not the All Writs Act, that is controlling." *Id*.

Petitioners' All Writs Act claim mirrors their mandamus claim against Federal

Respondent. *See* ECF No. 5, at 44–55. Petitioners seek the same writ of mandamus under

both statutes—one compelling Federal Respondent to enforce and police the NVRA and

HAVA. *Id*. But the All Writs Act does not provide an independent source of jurisdiction, so Petitioners are not separately entitled to mandamus relief under it. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002) (noting "the All Writs Act does not confer jurisdiction under federal courts" so jurisdiction does not lie unless "specifically provide[d]" by Congress). As discussed above, Petitioners cannot establish their mandamus claim under 28 U.S.C. § 1361 because they do not allege a clear, nondiscretionary duty to act. Without jurisdiction under the Mandamus Act, their All Writs Act claim necessarily fails, too, as Petitioners do not assert any other claims in their complaint and, in fact, expressly disclaim other statutory authority for their claims. *See* Complaint, ECF No. 5, at 47, 53 (alleging Petitioners have no remedy other than mandamus). The Court should therefore dismiss Petitioners' All Writs Act claim against Federal Respondent.

## IV.    Conclusion

For these reasons, the Court should grant Federal Respondent's motion and dismiss all claims against Federal Respondent.

Respectfully submitted,

LEIGHA SIMONTON
United States Attorney

*/s/ Dawn Whalen Theiss*
DAWN WHALEN THEISS
Assistant United States Attorney
Texas Bar No. 24051755
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214-659-8600
Facsimile:     214-659-8807
Dawn.theiss@usdoj.gov

*Attorneys for Respondent Merrick Garland*

## CERTIFICATE OF SERVICE

On November 19, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Dawn Whalen Theiss*
DAWN WHALEN THEISS
Assistant United States Attorney